**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
In re
ELETSON HOLDINGS INC., *et al*.,
                              *Debtors*.
------------------------------------------------------
ELETSON HOLDINGS INC.; ELETSON :
CORPORATION; ELETSON CHARTERING
INC.; EMC INVESTMENT CORPORATION;
KASTOS SPECIAL MARITIME
ENTERPRISE; FOURNI SPECIAL
MARITIME ENTERPRISE; KINAROS
SPECIAL MARITIME ENTERPRISE; and
KIMOLOS II SPECIAL MARITIME
ENTERPRISE,
                              *Plaintiffs*,
        -against-

VASSILIS KERTSIKOFF; VASILIS
HADJIELEFTHERIADIS; LASCARINA
KARASTAMATI; KONSTANTINOS
HADJIELEFTHERIADIS; IOANNIS
ZILAKOS; EMMANUEL ANDREOULAKIS;
ADRIANOS PSOMADAKIS; PANOS
PAXINOS; ELENI GIANNAKOPOULOU;
NIKI ZILAKOU; LASSIA INVESTMENT
COMPANY; GLAFKOS TRUST COMPANY;
FAMILY UNITY TRUST COMPANY;
ELAFONISSOS SHIPPING CORPORATION;
KEROS SHIPPING CORPORATION; REED
SMITH LLP; LEX GROUP LIBERIA LLC;
DANIOLOS LAW FIRM; JOHN
MARKIANOS-DANIOLOS; and RIMON P.C.,

                              *Defendants*.
-------------------------------------------------------------x

Chapter 11
Case No. 23-10322 (JPM)
Jointly Administered


Adv. Proc. No. 25-01120 (JPM)

## <u>NOTICE OF DEFENDANT REED SMITH'S MOTION TO DISMISS THE COMPLAINT OR, IN THE ALTERNATIVE, TO COMPEL ARBITRATION</u>

   **PLEASE TAKE NOTICE** that, upon the accompanying Memorandum of Law in Support

of Reed Smith's Motion to Dismiss or, in the Alternative, to Compel Arbitration and the

Affirmation of Marshall R. King and accompanying exhibit, filed concurrently here with and upon

1

all prior pleadings and proceedings had herein, Defendant moves this Court, before the Honorable John P. Mastando, at the United States Bankruptcy Courthouse, One Bowling Green., New York, NY, for an Order dismissing the Complaint dated July 30, 2025 (ECF No. 1) filed by Plaintiffs Eletson Holdings, et al. pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, and 12(b)(6) for failure to state a claim upon which relief can be granted, or in the alternative, compelling arbitration under 9 U.S.C. §§ 3, 4, and granting Defendant such other and further relief as the Court deems just and proper.

Dated: November 24, 2025

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: */s/Marshall R. King*
Marshall R. King
mking@gibsondunn.com
C. Lee Wilson
clwilson@gibsondunn.com

200 Park Avenue, 48th Floor
New York, New York 10166
Tel: 212.351.4000
Fax: 212.351.4035

*Attorneys for Defendant Reed Smith LLP*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
In re

ELETSON HOLDINGS INC., *et al*.,
                                *Debtors*.
-------------------------------------------------------
ELETSON HOLDINGS INC.; ELETSON
CORPORATION; ELETSON CHARTERING
INC.; EMC INVESTMENT CORPORATION;
KASTOS SPECIAL MARITIME
ENTERPRISE; FOURNI SPECIAL
MARITIME ENTERPRISE; KINAROS
SPECIAL MARITIME ENTERPRISE; and
KIMOLOS II SPECIAL MARITIME
ENTERPRISE,
                                *Plaintiffs*,
        -against-

VASSILIS KERTSIKOFF; VASILIS
HADJIELEFTHERIADIS; LASCARINA
KARASTAMATI; KONSTANTINOS
HADJIELEFTHERIADIS; IOANNIS
ZILAKOS; EMMANUEL ANDREOULAKIS;
ADRIANOS PSOMADAKIS; PANOS
PAXINOS; ELENI GIANNAKOPOULOU;
NIKI ZILAKOU; LASSIA INVESTMENT
COMPANY; GLAFKOS TRUST COMPANY;
FAMILY UNITY TRUST COMPANY;
ELAFONISSOS SHIPPING CORPORATION;
KEROS SHIPPING CORPORATION; REED
SMITH LLP; LEX GROUP LIBERIA LLC;
DANIOLOS LAW FIRM; JOHN
MARKIANOS-DANIOLOS; and RIMON P.C.,

                                *Defendants*.
-------------------------------------------------------------x

Chapter 11
Case No. 23-10322 (JPM)
Jointly Administered

Adv. Proc. No. 25-01120 (JPM)

## MEMORANDUM OF LAW IN SUPPORT OF
## REED SMITH'S MOTION TO DISMISS OR,
## <u>IN THE ALTERNATIVE, TO COMPEL ARBITRATION</u>

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................1

FACTUAL BACKGROUND..................................................................................................4

ARGUMENT ........................................................................................................................10

I.     The Court Lacks Subject Matter Jurisdiction Over Plaintiffs' Claims Arising Out of Post-Confirmation Conduct That Lacks a Close Nexus to the Bankruptcy ..................10

II.    Pre-Effective Date Claims Against Reed Smith Should Be Arbitrated and the Balance of the Claims Stayed Pending Arbitration ............................................................13

III.   The Claims Against Reed Smith Should Be Dismissed for Failure to State a Claim........16

     A.     The Complaint Fails to State a Claim for Conversion ...........................................16

     B.     The Complaint Fails to State a Claim for Aiding and Abetting Conversion .........21

     C.     The Complaint Fails to State a Claim for Breach of Contract ...............................24

     D.     The Complaint Fails to State a Claim for Tortious Interference ...........................27

CONCLUSION.....................................................................................................................30

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Abreu*,
527 B.R. 570 (Bankr. E.D.N.Y. 2015)......................................................................29

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................10, 30

*Atuahene v. City of Hartford*,
10 F. App'x 33 (2d Cir. 2001) ...............................................................................18

*In re Bayou Hedge Funds Inv. Litig.*,
472 F. Supp. 2d 528 (S.D.N.Y. 2007)....................................................................22

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544, 570 (2007).........................................................................................10

*Berman v. Sugo LLC*,
580 F. Supp. 2d 191 (S.D.N.Y. 2008)................................................................20, 21

*In re Bernard L. Madoff Inc. Securities LLC*,
458 B.R. 87 (S.D.N.Y. 2011)...................................................................................18

*Brownstone Inv. Grp., LLC v. Levey*,
514 F. Supp. 2d 536 (S.D.N.Y. 2007)......................................................................15

*Cantor v. Am. Banknote Corp.*,
2007 WL 3084966 (S.D.N.Y. Oct. 22, 2007).........................................................11

*In re Cardali*,
2010 WL 4791801 (Bankr. S.D.N.Y. Nov. 18, 2010) ............................................14

*Carter v. HealthPort Techs., LLC*,
822 F.3d 47 (2d Cir. 2016)........................................................................................9

*Cavadi v. Bank of Am., N.A.*,
2008 WL 901403 (D.N.H. Apr. 1, 2008)................................................................24

*Celotex Corp. v. Edwards*,
514 U.S. 300 (1995)..................................................................................................10

*In re CIT Group Inc.*,
2012 WL 831095 (Bankr. S.D.N.Y. Mar. 9, 2012) ................................................14

*Consol. Edison Co. of N.Y. v. UGI Utils.*,
423 F.3d 90 (2d Cir. 2005).........................................................................................9

*In re Eletson Holdings, Inc., et al.*,
No. 23-10322 (JPM) (Dec. 10, 2024) .......................................................................6

*In re Ener1, Inc.*,
   558 B.R. 91 (Bankr. S.D.N.Y. 2016) ...................................................................11

*In re Fleming Cos., Inc.*,
   325 B.R. 687 (Bankr. D. Del. 2005) ....................................................................14

*Four Finger Art Factory, Inc. v. Dinicola*,
   2001 WL 21248 (S.D.N.Y. Jan. 9, 2001) ............................................................29

*In re Frontier Ins. Group, Inc.*,
   585 B.R. 685 (Bankr. S.D.N.Y. 2018), *aff'd*, 598 B.R. 87 (S.D.N.Y. 2019) ...................24, 25

*In re Gen. Media, Inc.*,
   335 B.R. 66 (Bankr. S.D.N.Y. 2005) ........................................................10, 11, 12

*In re George Washington Bridge Bus Station Dev.*,
   2022 WL 4653117 (Bankr. S.D.N.Y. Sept. 30, 2022) .............................26, 27, 29

*Gillet v. Roberts*,
   57 N.Y. 28 (1874) ...............................................................................................21

*Glob. View Ltd. Venture Cap. v. Great Cent. Basin Expl., L.L.C.*,
   288 F. Supp. 2d 473 (S.D.N.Y. 2003) ............................................................17, 18

*Grgurev v. Licul*,
   229 F. Supp. 3d 267, 286 (S.D.N.Y. 2017) .........................................................17

*In re Hagerstown Fiber Ltd. P'ship*,
   277 B.R. 181 (Bankr. S.D.N.Y. 2002) ...........................................................13, 14, 15

*Health-Chem Corp. v. Baker*,
   915 F.2d 805 (2d Cir. 1990) ...............................................................................28

*High Falls Brewing Co., LLC v. Bos. Beer Corp.*,
   513 F. App'x 12 (2d Cir. 2013) ..........................................................................28

*House of Europe Funding I, Ltd., v. Wells Fargo Bank, N.A.*,
   2014 WL 1383703 (S.D.N.Y. Mar. 31, 2014) .....................................................26

*In re JMK Constr. Grp., Ltd.*,
   502 B.R. 396 (Bankr. S.D.N.Y. 2013) ...........................................................16, 17, 20

*Johnson v. Nextel Communications, Inc.*,
   660 F.3d 131 (2d Cir. 2011) ...............................................................................24

*In re KG Winddown, LLC*,
   632 B.R. 448 (Bankr. S.D.N.Y. 2021) ................................................................27

*Kirch v. Liberty Media Corp.*,
   449 F.3d 388 (2d Cir. 2006) ...............................................................................27

*Kirschner v. Bennett*,
   648 F. Supp. 2d 525 (S.D.N.Y. 2009) ............................................................16, 23

*Krys v. Pigott*,
749 F.3d 117 (2d Cir. 2014)...........................................................................................23

*In re Lehr Constr. Corp.*,
2014 WL 2198803 (Bankr. S.D.N.Y. May 27, 2014)....................................................30

*Lopez v. Fenn*,
90 A.D.3d 569 (2d Dep't 2011)......................................................................................19

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992).........................................................................................................9

*Madison Models, Inc. v. Casta*,
2003 WL 21978628 (S.D.N.Y. Aug. 20, 2003)..............................................................19

*Makarova v. United States*,
201 F.3d 110 (2d Cir. 2000).............................................................................................9

*Markatos v Citibank, N.A.*,
760 F. Supp. 3d 70 (S.D.N.Y. 2024)..............................................................................25

*Mayor & City Council of Baltimore v. BP P.L.C.*,
2021 WL 735244 (S.D.N.Y. Feb. 24, 2021)..................................................................26

*MBNA Am. Bank, N.A. v. Hill*,
436 F.3d 104 (2d Cir. 2006)......................................................................................15, 16

*Mercator Corp. v. Windhorst*,
159 F. Supp. 3d 463 (S.D.N.Y. 2016)............................................................................25

*Mission Prod. Holdings, Inc. v. Tempnology, LLC*,
587 U.S. 370 (2019).......................................................................................................14

*In re MTE Holdings LLC*,
2021 WL 3743201 (Bankr. D. Del. Aug. 17, 2021) ......................................................24

*Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*,
723 F.3d 192 (2d Cir. 2013)...........................................................................................17

*Newburger, Loeb & Co. v. Gross*,
563 F.2d 1057 (2d Cir. 1977).........................................................................................23

*Ottah v Bracewell LLP*,
2021 WL 5910065 (S.D.N.Y. Dec. 10, 2021), *aff'd*, 2022 WL 16754378 (Fed.
Cir. Nov. 8, 2022) ..........................................................................................................29

*Prospect Funding Holdings, LLC v. Vinson*,
256 F. Supp. 3d 318 (S.D.N.Y. 2017)............................................................................28

*Regions Bank v. Wieder & Mastroianni, P.C.*,
423 F. Supp. 2d 265 (S.D.N.Y. 2006)............................................................................19

*Reis, Inc. v. Spring11 LLC*,
2016 WL 5390896 (S.D.N.Y. Sept. 26, 2016)...............................................................20

*In re Residential Cap., LLC,*
   536 B.R. 756 (Bankr. S.D.N.Y. 2016) .................................................................................15

*Rimu Cap. Ltd. v. Ader,*
   2025 WL 1268342 (S.D.N.Y. May 1, 2025) ........................................................................22

*Rise Dev. Partners, LLC v. Signature Bank,*
   2024 WL 4555758 (S.D.N.Y. Oct. 22, 2024) ......................................................................22

*In re Riverside Nursing Home,*
   144 B.R. 951 (S.D.N.Y. 1992) ............................................................................................15

*Rozsa v. May Davis Grp., Inc.,*
   152 F. Supp. 2d 526 (S.D.N.Y. 2001) .................................................................................18

*S.A. Mineracao Da Trindade-Samitri v. Utah Int'l, Inc.,*
   745 F.2d 190 (2d Cir. 1984) ...............................................................................................14

*In re Singer Co., N.V.,*
   2001 WL 984678 (S.D.N.Y Aug. 21, 2007) ..................................................................15, 16

*SOL-MM III LLC v. JPMorgan Chase Bank, N.A.,*
   2025 WL 936414 (S.D.N.Y. Mar. 27, 2025), *on reconsideration in part on
   other grounds*, 2025 WL 1295467 (S.D.N.Y. May 5, 2025) ................................................30

*SPV Osus Ltd. v. UBS AG,*
   882 F.3d 333 (2d Cir. 2018) ...............................................................................................23

*State of New York v. Seventh Regiment Fund,*
   98 N.Y.2d 249 (2002) .........................................................................................................19

*Stewart v. Hudson Hall LLC,*
   2020 WL 8732875 (S.D.N.Y. Oct. 19, 2020) ......................................................................25

*Swan Media Group, Inc. v Staub,*
   841 F. Supp. 2d 804 (S.D.N.Y. 2012) .................................................................................25

*T.D. Bank, N.A. v. JP Morgan Chase Bank, N.A.,*
   2011 WL 13305367 (E.D.N.Y. May 13, 2011) ....................................................................21

*Taboola, Inc. v. Ezoic Inc.,*
   2020 WL 1900496 (S.D.N.Y. Apr. 17, 2020) ......................................................................27

*TheECheck.com, LLC v. NEMC Fin. Servs. Grp. Inc.,*
   2017 WL 2627912 (S.D.N.Y. June 16, 2017) ................................................................18, 22

*United Coal Co., LLC v. Xcoal Energy & Res.,*
   2024 WL 4533349 (S.D.N.Y. Oct. 21, 2024) ......................................................................28

*United States v. Bond,*
   762 F.3d 255 (2d Cir. 2014) .................................................................................................9

*Vasquez v. Hong Kong and Shanghai Banking Corp. Ltd.,*
   2019 WL 2327810 (S.D.N.Y. May 30, 2019) ......................................................................21

*Victory State Bank v. EMBA Hylan, LLC*,
    169 A.D.3d 963 (2d Dep't 2019) ..................................................................25

*Wellington Shields & Co. LLC v. Breakwater Inv. Mgmt. LLC*,
    2016 WL 5414979 (S.D.N.Y. Mar. 18, 2016) ..............................................27

*In re Wonderwork, Inc.*,
    611 B.R. 169 (Bankr. S.D.N.Y. 2020) .........................................................24

*Zamora v. FIT Int'l Grp. Corp.*,
    834 F. App'x 622 (2d Cir. 2020) ..................................................................22

**Statutes**

9 U.S.C. § 3 ...................................................................................................10, 13

9 U.S.C. § 4 ...................................................................................................10, 13

28 U.S.C. § 157 ...................................................................................................15

**Rules**

Federal Rule of Bankruptcy 7012 ...................................................................9, 10

Federal Rule of Civil Procedure 12(b)(1) ...........................................................9

Federal Rule of Civil Procedure 12(b)(6) .........................................................10

## PRELIMINARY STATEMENT

Plaintiffs' claims against Reed Smith LLP ("Reed Smith") must be dismissed because the Court lacks jurisdiction to hear most of them, many are subject to a binding arbitration agreement, and they all fail to state a claim in any event. Strikingly, Plaintiffs fail to allege that *Reed Smith in particular* did anything to harm Plaintiffs. Instead, Plaintiffs treat all 20 "Defendants" as one unit, or else group Reed Smith together with many other law firm and attorney defendants, disparagingly labelled the "Fake EHI Attorneys." The few non-conclusory allegations that do mention Reed Smith are irrelevant to stating a claim or do not allege harm to Plaintiffs (or both).

The entire Complaint should be dismissed with prejudice, as Plaintiffs cannot, as a matter of law, make a claim against Reed Smith for the relief sought.

*First*, Plaintiffs' claims for conversion of funds (Count I), aiding and abetting conversion of funds (Count II), and tortious interference with contract (Count IV) must be dismissed because the Court lacks subject matter jurisdiction over these post-confirmation disputes. Plaintiffs' claims lack the required close nexus to the Plan[1] because none of these state law claims arise under it or require the Court to interpret it. Based on this Court's rulings, Eletson Holdings Inc. ("Holdings") has emerged from bankruptcy, and the Court does not have jurisdiction to hear unrelated business disputes simply because Holdings was, at one time, a debtor undergoing Chapter 11 restructuring. That conclusion applies even more forcefully to the claims brought by the many non-debtor Plaintiffs.

*Second*, with respect to Plaintiffs' claims for conversion of personal property (Count I), aiding and abetting conversion of personal property (Count II), and breach of contract (Count III),

---

[1] The "Plan" refers to the Petitioning Creditors' Revised Joint Chapter 11 Plan of Reorganization of Eletson Holdings Inc. and its Affiliated Debtors, filed on September 19, 2024 at dkt. 1132 and as confirmed by the Court on November 4, 2024 at dkt. 1223.

which arise out of pre-Effective Date conduct, the Court must stay the adversary proceeding and compel arbitration because those claims are subject to a binding arbitration provision in Holdings' engagement letter with Reed Smith. The broad arbitration provision applies here and the claims at issue are not core because their outcome will neither affect the allocation of assets, nor, because it has already emerged from bankruptcy, Holdings' ability to reorganize.

*Third*, even if subject matter jurisdiction exists, and even if the arbitration provision in Reed Smith's engagement letter were not applicable, every one of Plaintiffs' causes of action fails to state a claim against Reed Smith upon which relief may be granted. Frankly, Plaintiffs' claims against Reed Smith are so devoid of merit that the only reasonable explanation here is Plaintiffs' retaliation following a lengthy and contentious bankruptcy proceeding. Reed Smith is hardly mentioned in Plaintiffs' Complaint, and where it is, the allegations are merely legal conclusions. Plaintiffs have not alleged any *facts* showing that Reed Smith was involved in—or even aware of—the alleged wrongdoing underlying Plaintiffs' claims.

For example, Plaintiffs do not allege Reed Smith was involved in or even aware of any efforts to change the payment instructions for certain Charterparty Payments, upon which Plaintiffs' money-based conversion and aiding and abetting claims are based. Indeed, Plaintiffs directly attribute these actions to the Former Directors and Officers ("D&Os") and Shareholder defendants, *not* Reed Smith. While Plaintiffs allege on "information and belief" that Reed Smith was paid with the converted funds, they fail to allege anything about the funds, including how much money was converted, where the funds were deposited or from whom, and when the conversion took place. This dooms their claims under New York law.

The Complaint likewise fails to plead a claim of conversion or aiding and abetting conversion of documents against Reed Smith because it does not allege specific or identifiable

documents in Reed Smith's possession that it is withholding from Plaintiffs. To the contrary, Plaintiffs expressly admit that "Defendant Vasilis Hadjieleftheriadis"—*not* Reed Smith—"is in possession of the Converted Personal Property." Compl. ¶ 119. Reed Smith cannot have converted property it is not even alleged to have.

Plaintiffs' aiding and abetting conversion claims also fail to set forth any allegations demonstrating that Reed Smith substantially assisted or even knew about any alleged underlying conversion. Instead, Plaintiffs vaguely allege that Reed Smith and the other attorney defendants brought "the appearance of legality and legitimacy to the rogue and unauthorized actions of the Former D&Os and the Former Shareholders." Compl. ¶ 211. Whatever that ambiguous allegation is intended to mean, Plaintiffs do not even allege that Reed Smith *represented* the Former D&Os and Shareholders in connection with the transactions or conduct at issue, nor could they. And if the mere "appearance of legality and legitimacy" inherent in retaining counsel were enough to support a claim for aiding and abetting, every law firm would be vicariously liable for actions of their clients regardless of whether they have knowledge or control. That is not the law.

Plaintiffs' breach of contract claim is deficient for the simple reason that Plaintiffs allege no contract with Reed Smith. While courts interpret reorganization plans using principles of contract interpretation, the fact that Reed Smith fits within the definition of a "Related Party" under the Plan here does not confer a substantive right upon the former debtor to sue it for breach of a "contract" that Reed Smith did not sign or agree to. And even if there were a contract to which Reed Smith is a party (there isn't), Plaintiffs still fail to allege that Reed Smith is in breach of any obligations thereunder because they acknowledge Reed Smith is not in possession of the requested documents or information, and that the address of record ("AOR") has already been updated. Further, Plaintiffs have essentially ignored the proximate cause requirement of a breach of contract

claim, instead claiming in a conclusory manner that Reed Smith's breach has somehow resulted in "at least $63.5 million" in unexplained damages without any allegations that but for Reed Smith's actions Plaintiffs would have received the requested documents and not suffered that alleged harm.

Finally, Plaintiffs' claim that Reed Smith tortiously interfered with the Novum Charterparty Contracts may be the most strained of all. The Complaint includes no non-conclusory allegations that Reed Smith was aware of the contracts or the Former D&Os' and Shareholders' alleged efforts to change payment instructions, nor do Plaintiffs allege that Reed Smith took any steps at all to procure a breach of the contracts.

Plaintiffs' claims against Reed Smith should be dismissed in their entirety, or in the alternative Plaintiffs should be compelled to arbitrate those claims subject to arbitration and the remainder should be stayed pending arbitration.

## FACTUAL BACKGROUND

The non-conclusory facts alleged in the Complaint as well as the procedural history of the bankruptcy make clear that Reed Smith did nothing more than act as zealous counsel to its clients. Certainly, the Complaint alleges no facts showing that Reed Smith did anything actionable.

## I. Bankruptcy History and Confirmation

On March 7, 2023, certain creditors of Holdings, Eletson Finance (US) LLC, and Agathonissos Finance LLC (the "Debtors") filed involuntary petitions against the Debtors in this Court. Compl. ¶ 37. The case was converted to Chapter 11 in September 2023. *Id.* ¶ 39.

Reed Smith represented the Debtors in the bankruptcy proceedings. Competing plans were proposed. *Id.* ¶¶ 40–42. On November 4, 2024, the Court entered a Confirmation Order confirming the Plan proposed by a group of 10 creditors (the "Petitioning Creditors") over the objection of the Debtors. *Id.* ¶ 44. On November 19, 2024, the Petitioning Creditors filed a notice of Effective Date. *Id.* ¶ 45.

Prior to the notice of the Effective Date, on November 11, 2024, the First Instance Court of Piraeus in Greece (the "Piraeus Court") issued an order appointing a provisional board (the "Provisional Board") for "temporary management" of Holdings. *Id.* ¶ 66.

## II. Plaintiffs' Information Requests

Plaintiffs allege that following confirmation, the Petitioning Creditors contacted Reed Smith to request certain documents and information, such as "constituent documents, loan agreements, employment agreements, and an employee roster, among other things" (the "Due Diligence Documents and Information"). *Id.* ¶ 63. Plaintiffs also allege that the Petitioning Creditors requested that Reed Smith "put the Petitioning Creditors in touch with key personnel to begin discussions regarding the Employee Incentive Plan under the Plan." *Id.* Plaintiffs allege that in response to these "information requests," "Reed Smith declined to provide any of the information and documents" because "there is no provision in the Plan or the Confirmation Order allowing the Plan Proponents to 'direct' the Debtor prior to the Effective Date." *Id.* ¶ 118. Plaintiffs also allege that Reed Smith responded to Petitioning Creditors explaining that "it could not provide documents under the control of non-Debtor subsidiaries because it did not represent those subsidiaries." *Id.* Importantly, Plaintiffs allege that "Defendant Vasilis Hadjieleftheriadis"— *not* Reed Smith—"is in possession" of the Due Diligence Documents and Information (which Plaintiffs refer to as "Converted Personal Property"), and that the relevant materials "are located in 'on-site files' at his office in Piraeus, Greece." *Id.* ¶ 119.

## III. Updating the Address of Record and Sanctions Motions

Plaintiffs allege that "Reed Smith and the other Defendants also refused to update or assist in updating the Liberian International Ship & Corporate Registry ('LISCR') to reflect the change of ownership that occurred on the Plan's Effective Date." *Id.* ¶ 71. Plaintiffs allege that on November 12, 2024, Petitioning Creditors emailed Reed Smith requesting that it and the Debtors

identify the designated individual at Holdings' existing AOR on file with LISCR, and to instruct LISCR to update its AOR. *Id*. ¶ 72. The next day, at a November 13, 2024 hearing, Reed Smith explained to the Bankruptcy Court that it was advised that requesting a change to the AOR would violate Liberian law. *Id.* On November 17, 2024, Reed Smith submitted a declaration stating that "Liberian counsel [i.e., Lex Group] had advised the directors of Holdings to refrain from taking any action regarding the change to the Address of record." *Id.* ¶ 73.

In response, Plaintiff Holdings filed a motion for sanctions. *Id.* ¶ 75. Reed Smith opposed the motion and explained, again, that it could not assist in updating the AOR because Liberian counsel had advised that doing so would violate Liberian law, which in turn would be inconsistent with the provisions in the Plan requiring compliance with applicable foreign law. *In re Eletson Holdings, Inc., et al.*, No. 23-10322 (JPM), dkt. 1287 (Dec. 10, 2024).

On January 24, 2025, this Court issued an oral decision (the "Consummation Decision") ordering the "'former shareholders, officers, directors, [and] counsel' of Holdings to 'assist in amending the AOR and updating the corporate governance documents, including the amended articles of incorporation with LISCR.'" *Compl.* ¶ 77. The Consummation Decision was followed by a written order on January 29, 2025 (the "Consummation Order"). *Id.* ¶ 76. Plaintiffs allege the Consummation Order "required Defendants to work in good faith to facilitate the Plan's consummation in full." *Id.* ¶ 78. Reed Smith submitted a certification regarding its compliance on February 24, 2025. Certification of Reed Smith LLP, dkt. 1475 (Feb. 24, 2025). Plaintiff Holdings then brought several additional sanctions motions alleging that Defendants had violated the Consummation Order. Compl. ¶¶ 80–85. This culminated in the Court's issuance of an order of noncompliance against "'the purported Provisional Board,' Mr. Hadjieleftheriadis, the Former Majority Shareholders, and the AOR." *Id.* ¶ 86. The Court did not issue sanctions against Reed

Smith and otherwise denied the sanctions motions. *See* Sanctions Order, dkt. 1495 (Feb. 27, 2025); Sanctions Order, dkt. 1537 (Mar. 13, 2025); Sanctions Order, No. 23-10322 (JPM), dkt. 1716 (July 8, 2025); Judgment, dkt. 1836 (Sept. 22, 2025).

On March 13 and 19, 2025, more than six months ago, LISCR updated the relevant AORs. Compl. ¶¶ 87, 89.

## IV. Foreign Recognition Proceedings

The Complaint sets forth allegations regarding foreign proceedings, alleging that Defendants have obstructed the Plan in those proceedings. Specifically, the Complaint alleges efforts to oppose recognition of the Confirmation Decision and Order in Liberia and Greece in January and February 2025, *id.* ¶¶ 90–98; commencement of an action in Liberia challenging the change to the AOR in March 2025, *id.* ¶¶ 99–103; Marshall Islands proceedings, *id.* ¶ 104; and a German petition, *id.* ¶¶ 105–06. Plaintiffs do *not* allege Reed Smith was involved in any of these proceedings. Nor do they allege Reed Smith was involved in any public statements issued by the Former D&Os. *See id.* ¶ 107–10. While Plaintiffs allege that "as of December 10, 2024, the Provisional Board purportedly directed Reed Smith to protect the purported interests of Holdings pending recognition of the Confirmation Order in Liberia and Greece," *id.* ¶ 191, Plaintiffs do not allege any action taken by Reed Smith in response to the alleged direction.

## V. Novum Charterparties

Plaintiffs allege that, prior to bankruptcy, Holdings entered into contracts with Novum Energy Trading Corp. ("Novum") for the provision by Holdings of vessels for a period of three years (the "Charterparty Contracts"). *Id.* ¶ 120. Plaintiffs then allege that, after the Effective Date, the Former D&Os (but *not* Reed Smith) took steps to change the payment instructions to cause the payments due under the Charterparty Contracts ("Charterparty Payments") to remit to

an account in the name of Eletson Corporation. *Id.* ¶¶ 120–34. Plaintiffs set forth many paragraphs concerning the alleged details of this diversion, none of which mention Reed Smith.

Plaintiffs allege that, due to the "competing claims for payment," and rejection by receiving banks, Novum has paid the outstanding balance to an account controlled by the Former D&Os. *Id.* ¶ 179. Plaintiffs also allege on "information and belief" that Novum has continued to make monthly Charterparty Payments to the account controlled by the Former D&Os. *Id.* ¶ 180. Again, Plaintiffs allege nothing about Reed Smith.

## VI.    Oaktree Dispute

Plaintiffs also allege that, due to "nonpayment and insolvency defaults" allegedly related to the conflicting payment instructions, they were denied the ability to exercise an option to purchase vessels leased under an agreement with Oaktree Capital Management ("Oaktree"), an investment firm affiliated with OCM Maritime Thames LLC, a party to Plaintiff Kastos's leaseback transaction. *Id.* ¶ 184–85. Plaintiffs also allege that Oaktree issued Guaranty Demands, requesting documents and information and claiming that Holdings is in default. *Id.* ¶ 187. Once more, Plaintiffs allege nothing here about Reed Smith.

## VII.   Lack Of Alleged Involvement By Reed Smith

As demonstrated above and discussed further below, Plaintiffs do not actually allege Reed Smith in particular did anything actionable. All Plaintiffs allege, and only on "information and belief," is that "the Fake EHI Attorneys"—a lumped-together group of unrelated law firms and attorneys, including Reed Smith—have "been knowingly paid with the converted funds" belonging to Holdings. *Id.* ¶ 198. Plaintiffs likewise allege that the "Fake EHI Attorneys" know "the Former D&Os have unlawfully converted Holdings' property and have refused to turn the Converted Funds and/or the Converted Personal Property over to Holdings' true owners," and that through the Fake EHI Attorneys' unspecified "efforts to help the Former D&Os in their quest to

-8-

avoid the Confirmation Order's requirements and to obstruct implementation of the Plan," they have "substantially assisted Former D&Os' conversion of Holdings' property." *Id.* ¶ 199. Plaintiffs do *not* identify any funds or property held by *Reed Smith*, or any actionable conduct by *Reed Smith*, or explain how *Reed Smith* supposedly knew of or assisted any wrongdoing. Plaintiffs could not even be bothered to make their entirely conclusory allegations specific to Reed Smith, instead grouping them together with the other named law firm and attorney defendants.

**LEGAL STANDARD**

A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1), made applicable by Bankruptcy Rule 7012, "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) Fed. R. Civ. P. 12(b)(1); Fed. R. Bankr. 7012. Plaintiffs bear the burden of establishing that this Court has subject matter jurisdiction over their claims. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *see also Makarova*, 201 F.3d at 113 ("A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists"). "Subject matter jurisdiction is a threshold question that must be resolved ... before proceeding to the merits." *United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) (citation omitted). "The absence of subject matter jurisdiction is non-waivable; before deciding any case," the Court is required to determine that the case is properly within its subject matter jurisdiction. *Consol. Edison Co. of N.Y. v. UGI Utils.*, 423 F.3d 90, 103 (2d Cir. 2005) (citation omitted). A court may consider facts beyond the Complaint when a motion pursuant to Rule 12(b)(1) is fact-based. *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016).

Pursuant to the Federal Arbitration Act, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition [the Court]

for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Upon determination that the matter is referable to arbitration, the Court must enter a stay of the proceedings. *Id*. § 3.

To survive a motion to dismiss under Rule 12(b)(6), made applicable by Bankruptcy Rule 7012, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted); Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. 7012 "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While all well-pleaded factual allegations should be accepted as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## ARGUMENT

### I. The Court Lacks Subject Matter Jurisdiction Over Plaintiffs' Claims Arising Out of Post-Confirmation Conduct That Lacks a Close Nexus to the Bankruptcy

The Court should dismiss Plaintiffs' claims for conversion of funds (Count I), aiding and abetting conversion of funds (Count II), and tortious interference with contract (Count IV) for lack of subject matter jurisdiction. Each of these claims arises out of alleged post-confirmation conduct and lacks a close nexus to the bankruptcy proceedings because they do not relate to effectuation of the Chapter 11 proceeding.

"The jurisdiction of the bankruptcy courts, like that of other federal courts, is grounded in, and limited by, statute." *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995). "Section 1334 does not expressly limit the bankruptcy court's jurisdiction following plan confirmation. Nevertheless, courts that have addressed the question have ruled that once confirmation occurs, the bankruptcy court's jurisdiction shrinks." *In re Gen. Media, Inc.*, 335 B.R. 66, 73 (Bankr. S.D.N.Y. 2005)

(citation omitted). Further, following confirmation, the "distinction between core and non-core jurisdiction may not be particularly relevant." *Id.* at 74. Instead, courts have applied the "close nexus" test to post-confirmation jurisdictional questions.

To establish subject matter jurisdiction post-confirmation, two requirements must be met: (1) "the matter must have a close nexus to the bankruptcy plan or proceeding"; and (2) "the plan must provide for the retention of jurisdiction over the dispute." *Id.* at 73–74. While the Plan here includes a broad retention provision, the language conferring jurisdiction over Adversary Proceedings is expressly limited to those that are "pending on the Effective Date." Plan at 11.1(b). For this reason alone, the Court should find it does not have jurisdiction over the present proceeding, which was filed after the Effective Date. Further, even if the Court finds the Plan retains jurisdiction, that alone does not confer jurisdiction. *See Cantor v. Am. Banknote Corp.*, 2007 WL 3084966, at *3 (S.D.N.Y. Oct. 22, 2007) (dismissing claim for lack of subject matter jurisdiction despite retention provision where there was no "close nexus" to plan).

Here, Plaintiffs' post-confirmation claims lack a "close nexus" to the bankruptcy case and do not "relate[] back to the effectuation of the Chapter 11 proceeding." *In re Ener1, Inc.*, 558 B.R. 91, 95 (Bankr. S.D.N.Y. 2016) (citation omitted). Under the "close nexus" test, a matter falls within the bankruptcy court's jurisdiction, post-confirmation, if it would affect "the interpretation, implementation, consummation, execution or administration of the confirmed plan." *In re Gen. Media, Inc.*, 335 B.R. at 73. In *General Media*, the court found that the claims lacked a "close nexus" to the plan because "[n]one of the claims arise under the Plan or require the Court to interpret it" and "the property of the various estates vested in the respective reorganized debtors on the Effective Date" such that "any recovery will inure solely to the benefit of the plaintiff." *Id.* at 74–75. "A bankruptcy court cannot hear a post-confirmation dispute simply because it might

conceivably increase the recovery to creditors, because the rationale could endlessly stretch a bankruptcy court's jurisdiction." *Id.* at 75 (quotations and citations omitted).

Here, the conversion of funds, aiding and abetting conversion of funds, and tortious interference with contract claims must be dismissed because they do not require the Court to interpret the Plan and, even if successful, will not have any impact on the estate.

*First*, the claims do not require interpretation of the Plan. For example, Plaintiffs do not allege why the Plan is relevant to the determination of their claim concerning whether the Former D&Os improperly changed the payment instructions on the Novum Charterparty Contracts. The crux of Plaintiffs' argument is that another actor (a Former D&O of its pre-reorganization predecessor) changed payment instructions on a contract with a third party. Nothing about that alleged tort requires the Court to look to the Plan. The Plan does not include details on what the operative payment instructions should be, nor does it have information on how a party could change the payment instructions. For that information, the Court needs to look to the contract between Holdings and Novum, not to the Plan.

*Second*, the outcome of Plaintiffs' claims will not impact the Plan or the estate because, even if successful, any recovery will go solely to Plaintiffs rather than creditors in the bankruptcy proceedings. *See id.* at 75 (granting motion to dismiss for lack of subject matter jurisdiction when post-confirmation claims would go only to the reorganized debtor).

The only connection between Plaintiffs' post-confirmation claims and this Court is that Holdings is a former debtor that has emerged from Chapter 11. This is an insufficient basis for the Court to exercise jurisdiction over these post-confirmation claims. Simply put, this Court does not have jurisdiction to adjudicate tort claims occurring post-confirmation simply because one of the Plaintiffs was once a Debtor. And insofar as these claims are also being brought by Plaintiffs

who were not Debtors, there is no argument whatsoever for jurisdiction over post-confirmation claims by non-debtors against other non-debtors.

## II. Pre-Effective Date Claims Against Reed Smith Should Be Arbitrated and the Balance of the Claims Stayed Pending Arbitration

Plaintiffs' remaining claims—conversion of personal property (Count I), aiding and abetting conversion of personal property (Count II), and breach of contract (Count III)—arise out of pre-Effective Date conduct. As a result, they are subject to the arbitration clause in Reed Smith's contract with Holdings and the Court must stay the current proceedings and compel arbitration. *See* 9 U.S.C. §§ 3, 4. Further, in the event the Court denies Reed Smith's motion to dismiss the remaining claims pursuant to Rule 12(b)(1) or 12(b)(6), the Court should, in its discretion, stay proceedings on Plaintiffs' other claims against Reed Smith pending arbitration. *See In re Hagerstown Fiber Ltd. P'ship*, 277 B.R. 181, 202 (Bankr. S.D.N.Y. 2002) (court has discretion to stay balance of claims when some are subject to arbitration provision; "[b]road stay orders are particularly appropriate if the arbitrable claims predominate the lawsuit and the non-arbitrable claims are of questionable merit") (citation omitted).

On January 27, 2023, Holdings and Reed Smith entered into a contract for provision of legal services which applied to Reed Smith's representation of Holdings in its dispute with bondholders and the resulting bankruptcy proceedings (the "Reed Smith Engagement Letter"). *See* Ex. 1. The Reed Smith Engagement Letter contains a broad arbitration clause pursuant to which "[a]ny controversy, claim or dispute arising out of or relating to our agreement, or the breach thereof, shall be settled by expedited and streamlined, binding arbitration administered by the JAMS in New York City." Because the Engagement Letter, and therefore the arbitration clause, remained operative up to and until the Plan went into effect, it governs the pre-Effective Date conduct alleged in the Complaint. *See* Compl. ¶ 63 (October 30, 2024), ¶ 64 (November 12, 2024),

¶ 72 (November 12, 2024), ¶ 73 (November 17, 2024). Further, Plaintiffs are bound by the Debtor's pre-bankruptcy agreement for pre-Effective Date conduct, regardless of whether the contract was later rejected. *See Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 587 U.S. 370, 372, 378–79 (2019) ("rejection of a contract" in bankruptcy proceedings "operates not as a rescission but as a breach" and therefore "all the rights that would ordinarily survive a contract breach… remain in place"). "It is well established that 'rejection of a contract, or even breach of it, will not void an arbitration clause.'" *In re CIT Group Inc.*, 2012 WL 831095, at *1 n.1 (Bankr. S.D.N.Y. Mar. 9, 2012) (quoting *In re Fleming Cos., Inc.*, 325 B.R. 687, 693–94 (Bankr. D. Del. 2005)); *see also In re Hagerstown*, 277 B.R. at 199 ("Where the trustee sues as successor to the debtor, he is bound by an arbitration clause in the debtor's pre-petition contract.").

The arbitration clause applies to "[a]ny []claim or dispute arising out of *or relating to our agreement*." *See* Ex. 1 (emphasis added). Holdings' allegations of wrongdoing by Reed Smith concerning the provision of "diligence information," Compl. ¶ 63, and alleged "obstruct[ion] of the Plan," *id.* ¶ 64, plainly "relat[e] to" Holdings' engagement of Reed Smith as counsel in the bankruptcy proceedings. Without Reed Smith's representation of Holdings, Reed Smith would not have had any involvement in Plaintiffs' requests for documents. *See In re Cardali*, 2010 WL 4791801, at *6 (Bankr. S.D.N.Y. Nov. 18, 2010) ("a clause referring to arbitration 'any controversy or claim between [the parties] arising out of or relating to' an agreement [is] broad, justifying a presumption of arbitrability") (citation omitted); *S.A. Mineracao Da Trindade-Samitri v. Utah Int'l, Inc.*, 745 F.2d 190, 194 (2d Cir. 1984) ("arbitration should be ordered unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute") (quotations and citation omitted).

There is a presumption in favor of enforcing arbitration clauses. *In re Residential Cap., LLC*, 563 B.R. 756, 766 (Bankr. S.D.N.Y. 2016) (finding there is "a federal policy favoring arbitration agreements…[and] any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration") (quoting *MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 107 (2d Cir. 2006) and *Brownstone Inv. Grp., LLC v. Levey*, 514 F. Supp. 2d 536, 549 (S.D.N.Y. 2007)). In considering whether to enforce an arbitration clause contained in a pre-petition contract, bankruptcy courts undertake a two-step inquiry. The first step is to determine if the proceeding is core. "If the proceeding is non-core, the inquiry ends and the bankruptcy court lacks discretion to refuse arbitration." *In re Hagerstown*, 277 B.R. at 202. Second, even if the proceeding is core, the court must determine "whether arbitration would jeopardize Bankruptcy Code policy." *Id.*

Here, because the claims at issue are not core, the inquiry ends and the Court should stay or dismiss the claims against Reed Smith and compel arbitration. Under 28 U.S.C. § 157, "bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11." *In re Riverside Nursing Home*, 144 B.R. 951, 955 (S.D.N.Y. 1992). "For a case or proceeding to arise under title 11, the relief sought must be based on a right created by title 11." *Id.* "A matter arises in a case under title 11 if it is a proceeding that, by its nature, could only arise in a bankruptcy case and has no existence outside of the bankruptcy." *Id.* Neither is the case here. The claims against Reed Smith do not "directly implicate a provision of title 11 of the United States Code" and instead are "based upon rights created by state law." *Id.* Likewise, the claims do not "arise in a case under title 11" because "absent a bankruptcy," Plaintiffs could have advanced their common law claims in state court. *Id.* The outcome of this proceeding against Reed Smith will not "affect the allocation of assets," nor, because the Plan has already been confirmed, will it impact the "ability to reorganize." *See In re*

*Singer Co., N.V.*, 2001 WL 984678, at *6 (S.D.N.Y Aug. 21, 2007).  Because the proceeding is non-core, the Court must enforce the arbitration provision in the Reed Smith Engagement Letter with respect to Counts I, II and III against Reed Smith.

Finally, even if the Court finds the claims to be core, because Holdings has emerged from bankruptcy, and therefore any claims "cannot affect an ongoing reorganization," the Court should, in its discretion, compel arbitration of the pre-Effective Date claims.  *See MBNA Am. Bank*, 436 F.3d at 109–10 (finding that although the claims brought pursuant to the Bankruptcy Code were core, "arbitration…would not seriously jeopardize the objectives of the Bankruptcy Code" because the "bankruptcy case is now closed" and therefore the claim "cannot affect an ongoing reorganization").

### III.    The Claims Against Reed Smith Should Be Dismissed for Failure to State a Claim

#### A.    The Complaint Fails to State a Claim for Conversion

In order to state a claim for conversion, Plaintiffs must allege that "(1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights."  *In re JMK Constr. Grp., Ltd.*, 502 B.R. 396, 413 (Bankr. S.D.N.Y. 2013) (quoting *Kirschner v. Bennett*, 648 F. Supp. 2d 525, 540 (S.D.N.Y. 2009)).  Here, Plaintiffs' claim fails because they do not allege facts supporting these elements.

##### 1.    The Complaint Fails to Allege Reed Smith Converted Funds

###### a.    The Funds Are Not Identified with Sufficient Specificity

To begin with, Plaintiffs do not adequately allege Reed Smith converted any funds, let alone "specifically identif[iable] funds[.]"  *In re JMK Constr. Grp.*, 502 B.R. at 414 (citation omitted).  Plaintiffs spend dozens of paragraphs describing the alleged actions of the former D&Os

and Shareholders with respect to the Novum Charterparty Contracts and efforts to change payment instructions, Compl. ¶¶ 120–183, but they conspicuously fail to plead any facts showing that *Reed Smith* came into possession or control of "specifically identif[iable] funds" *owned* by Plaintiffs.

A claim for conversion requires the funds to be owned by plaintiffs, not simply *owed* to them. *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 204 (2d Cir. 2013) (affirming dismissal of conversion claim because "Plaintiffs never had ownership, possession, or control of the wages in question prior to the alleged conversion"). While the Complaint alleges that certain Defendants diverted certain funds owed under certain contracts, it fails to allege Plaintiffs had ownership, possession, or control of the funds prior to the alleged conversion.

Further, a claim for conversion of money must identify the funds "in the same manner as a specific chattel, such as when a customer of a bank deposits funds into an account at the bank[.]" *In re JMK Constr. Grp.*, 502 B.R. at 414; *see also Grgurev v. Licul*, 229 F. Supp. 3d 267, 286 (S.D.N.Y. 2017) ("Where the property is money, it must be specifically identifiable…[and] if the allegedly converted money is incapable of being described or identified in the same manner as a specific chattel, it is not the proper subject of a conversion action.") (citation omitted). Reference to an amount of money is *not* enough to satisfy this requirement. *See Glob. View Ltd. Venture Cap. v. Great Cent. Basin Expl., L.L.C.*, 288 F. Supp. 2d 473, 480 (S.D.N.Y. 2003) (dismissing conversion claim with prejudice where complaint "merely refer[red] to unspecified 'monies and assets ... in an amount in excess of $75,000.'").

Plaintiffs' allegations do not satisfy this test. They merely allege, "[u]pon information and belief, the Former D&Os and the Former Shareholders have paid some of the Converted Funds to the Fake EHI Attorneys." Compl. ¶ 205. Plaintiffs do not even allege that Reed Smith in particular, as opposed to other attorney defendants, received anything, much less anything specific.

*See TheECheck.com, LLC v. NEMC Fin. Servs. Grp. Inc.*, 2017 WL 2627912, at *2 (S.D.N.Y. June 16, 2017) ("A complaint fails to give fair notice when it 'lump[s] all the defendants together in each claim and provid[es] no factual basis to distinguish their conduct.'") (quoting *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001)).  The Complaint also fails to allege any specifics about the allegedly converted Charterparty Payments other than that Plaintiffs have "suffered damages of at least $63.5 million." *Id.* ¶ 207.  Plaintiffs do not allege how this sum was calculated, or what portion of it, if any, was paid to Reed Smith.  As the Court held in *Global View Ltd. Venture Cap.*, allegations like these are insufficient.  288 F. Supp. 2d at 480 (dismissing claim for "amount in excess of $75,000" where there was no "indication of an identifiable fund or otherwise segregated amount" nor did the Complaint include "any description of the alleged transfer or transfers from which the Court could infer a specifically identified fund of money").  Plaintiffs must, but do not, allege a specific amount of money received unlawfully by Reed Smith, the bank account where the funds were received, which account it was deposited to or from, and the specific transfers or deposits to Reed Smith that constitute converted funds.  Each of these failures is fatal to their conversion claim.  *See In re Bernard L. Madoff Inc. Sec. LLC*, 458 B.R. 87, 133 (S.D.N.Y. 2011) (dismissing conversion claim based on vague and unsubstantiated allegations regarding unspecified monies and assets without any indication of an identifiable fund or segregated amount); *Rozsa v. May Davis Grp., Inc.*, 152 F. Supp. 2d 526, 534 (S.D.N.Y. 2001) (dismissing conversion claim because "the complaint fails to allege that the funds were in a specifically identifiable account, as required to sustain a conversion claim").

> **b.** **Simple Receipt of Allegedly Converted Funds Is Insufficient to Plead a Claim; Plaintiffs Fail to Allege Reed Smith Made Any Affirmative Act in Furtherance of the Conversion**

Independently fatal to this claim, the Complaint is devoid of any allegations that Reed Smith took any affirmative act to deprive Plaintiffs of access to the allegedly converted funds, or

that Reed Smith knew or should have known that payments it may have received as fees—payments the Complaint fails to identify in any event—had been converted.

The Complaint fails to allege Reed Smith's knowledge of any efforts to change the payment instructions for the Novum Charterparty Contracts at all, much less an "affirmative act" in furtherance of a change to the instructions. *Madison Models, Inc. v. Casta*, 2003 WL 21978628, at *6 (S.D.N.Y. Aug. 20, 2003) (dismissing "conversion cause of action … [that] alleges no affirmative act by the Moving Defendants."); *Lopez v. Fenn*, 90 A.D.3d 569, 572 (2d Dep't 2011) (affirming dismissal and noting conversion requires "engage[ment] in '[s]ome affirmative act—asportation ..., [or] denial of access to the rightful owner") (citing *State v. Seventh Regiment Fund*, 98 N.Y.2d 249, 260 (2002)).

The Complaint spends dozens of paragraphs alleging the process by which the Former D&Os allegedly went about changing payment information in order to divert funds. Compl. ¶¶ 122–183. But in each of these allegations, it is the Former D&Os who allegedly took steps to convert payments under the Charterparty Contracts, *not* Reed Smith. Reed Smith is not mentioned a single time in the description of this alleged scheme.

While Plaintiffs assert a bald conclusion that "some of the Converted Funds" were paid to unspecified "Fake EHI Attorneys," *id.* ¶ 205, they fail to identify a single transaction, wire transfer, or bank account where Reed Smith allegedly received "Converted Funds," nor do they allege any affirmative act by Reed Smith to exercise dominion over the funds, or any fact showing that Reed Smith had knowledge that any funds it received (if any) were being withheld from their rightful owner. *See Regions Bank v. Wieder & Mastroianni, P.C.*, 423 F. Supp. 2d 265, 269 (S.D.N.Y. 2006) ("[T]here is no conversion unless the [defendant] knew or should have known that the deposited funds were being taken or withheld from their owner[.]").

## 2. The Complaint Fails to Allege Reed Smith Converted Non-Monetary Property

Plaintiffs' claim for conversion of property likewise fails. *First*, Plaintiffs admit the documents at issue are in someone else's possession, *not* Reed Smith's. Compl. ¶ 119. *Second*, they do not identify any "specific identifiable" documents that allegedly were converted. Relatedly, Plaintiffs' requests for "information" cannot support a claim of conversion under New York law. *See Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 206 (S.D.N.Y. 2008) ("[T]o the extent Counter–Plaintiffs allege conversion of good will or any intangible assets, the claim must be dismissed because a cause of action for conversion of intangible property is not actionable under New York law.").

### a. Plaintiffs Admit Someone Else Has the Purportedly Converted Due Diligence Documents and Information

The Complaint does not identify any documents that Reed Smith has in its possession that it has not provided to Plaintiffs, the central element of any conversion claim. *See* Compl. ¶¶ 117–19. To the contrary, Plaintiffs acknowledge that the files are in another party's possession. Plaintiffs allege: "Upon information and belief, Defendant Vasilis Hadjieleftheriadis is in possession of the Converted Personal Property, which are located in 'on-site files' at his office in Piraeus, Greece." *Id.* ¶ 119. Reed Smith cannot be liable for converting property it does not have.[2]

### b. The Due Diligence Documents Are Not Identified With Sufficient Specificity and "Information" Is Not Subject to a Conversion Claim

Plaintiffs also do not identify any "specific identifiable" documents that are the subject of their conversion claim. *See In re JMK Constr. Grp.*, 502 B.R. at 413. Plaintiffs allege that

---

[2] Relatedly, Plaintiffs have also failed to allege the Due Diligence Documents and Information are not obtainable from another source. *See Reis, Inc. v. Spring11 LLC*, 2016 WL 5390896, at *10 (S.D.N.Y. Sept. 26, 2016) (granting motion to dismiss conversion claim over data because conversion requires "the exercise of unauthorized dominion and control to the *complete exclusion* of the rightful possessor") (emphasis added) (citation omitted). The allegedly converted Due Diligence Documents and Information are generally described as compilations of company information. Compl.

"[s]hortly after the Court entered the Confirmation Order," they requested "various documents and information from Reed Smith." Compl. ¶ 117. But while Plaintiffs set forth in a request to Reed Smith their wish list of documents and information, *id.* ¶¶ 117–19, nowhere in the Complaint do they allege *which* documents (if any) Reed Smith *actually had in its possession and withheld*. *See T.D. Bank, N.A. v. JP Morgan Chase Bank, N.A.*, 2011 WL 13305367, at *5 (E.D.N.Y. May 13, 2011) (dismissing conversion claim "where the defendant does not have the disputed property 'in any way under his control or in his possession' – 'mere words' asserting ownership do not constitute a conversion") (quoting *Gillet v. Roberts*, 57 N.Y. 28, 32 (1874)).

Additionally, to the extent Plaintiffs' requests concern information and not concrete documents, their conversion claim is not actionable under New York law. *See Berman*, 580 F. Supp. 2d at 206 ("a cause of action for conversion of intangible property is not actionable under New York law"); *see, e.g.*, Compl. ¶ 119 (defining "Converted Personal Property" as "all such documents *and information*" listed in requests) (emphasis added).

## B.   The Complaint Fails to State a Claim for Aiding and Abetting Conversion

Plaintiffs also fail to allege Reed Smith aided and abetted conversion. To state a claim for aiding and abetting, Plaintiffs must allege facts showing "(1) the existence of a primary violation; (2) knowledge of this violation on the part of the aider and abettor; and (3) substantial assistance by the aider and abettor in the achievement of the primary violation." *Vasquez v. Hong Kong & Shanghai Banking Corp. Ltd.*, 2019 WL 2327810, at *15 (S.D.N.Y. May 30, 2019). Even assuming Plaintiffs could plead a primary violation as to other Defendants, they have not alleged facts supporting the second or third element of this claim, much less both of them.

---

¶ 118. Plaintiffs do not allege that Reed Smith controlled this information or that Plaintiffs could not obtain it from another party or without Reed Smith's assistance.

*First*, Plaintiffs have not alleged facts showing that Reed Smith had knowledge of any conversion. Under New York law, "claims for…aiding and abetting conversion…require a plaintiff to demonstrate that the defendant had 'actual knowledge' of the misconduct." *Zamora v. FIT Int'l Grp. Corp.*, 834 F. App'x 622, 627 (2d Cir. 2020) (citation omitted) (summary order); *see Rise Dev. Partners, LLC v. Signature Bank*, 2024 WL 4555758, at *4–5 (S.D.N.Y. Oct. 22, 2024) (dismissing aiding and abetting claims where plaintiffs "alleged nothing to show that the defendants had actual knowledge of [alleged] conduct or took 'affirmative steps' to enable it").

Plaintiffs fail to allege that Reed Smith had "actual knowledge" of the former D&Os' and Shareholders' alleged conduct. The Complaint includes only conclusory allegations that the "Fake EHI Attorneys" were "aware" that property was allegedly converted. Compl. ¶ 199. Plaintiffs plead no *facts*, as they must, showing conduct by Reed Smith that would evidence actual knowledge. *Krys v. Pigott,* 749 F.3d 117, 130 (2d Cir. 2014) ("conclusory" allegations of knowledge cannot support a claim for aiding and abetting fraud); *Rimu Cap. Ltd. v. Ader*, 2025 WL 1268342, at *20 (S.D.N.Y. May 1, 2025) (holding "constructive knowledge" insufficient to allege aiding and abetting liability); *see TheECheck.com*, 2017 WL 2627912, at *2 (dismissing complaint where allegations "generally attribute misconduct to the 'Defendants' collectively" and fail to "differentiate between the five defendants."). For example, the Complaint lacks any allegation that Reed Smith knew specific steps the former D&Os and Shareholders took to change payment instructions or withhold documents from Plaintiffs. Nor does the Complaint allege any facts that Reed Smith communicated with the former D&Os and Shareholders about the transfers. Simply because Reed Smith represented entities affiliated with the Former D&Os and Shareholders in a separate proceeding does not mean Reed Smith therefore has knowledge of all of their business dealings. *See*, *e.g.*, *In re Bayou Hedge Funds Inv. Litig.*, 472 F. Supp. 2d 528,

533 (S.D.N.Y. 2007) (legal advocacy on behalf of a client does not imply actual knowledge of the client's alleged wrongdoing); *Newburger, Loeb & Co. v. Gross*, 563 F.2d 1057, 1080 (2d Cir. 1977) ("Under New York law an attorney generally cannot be held liable to third parties for actions taken in furtherance of his role as counsel unless it is shown that he did something either tortious in character or beyond the scope of his honorable employment.") (quotations and citation omitted).

*Second*, and equally fatal, Plaintiffs have not alleged any facts showing that Reed Smith provided substantial assistance to the former D&Os' and Shareholders' purported conversion of the Charterparty Payments or the Due Diligence Documents and Information. To plead "substantial assistance," Plaintiffs must allege facts showing "the injury" resulting from the primary violation was "a direct or reasonably foreseeable result of" Reed Smith's "conduct." *See SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 345 (2d Cir. 2018) (quotations and citation omitted). Plaintiffs therefore must allege Reed Smith "actively participated" in the perpetration of the wrongful act and not just that it provided legal representation to its client. *Id.*; *Kirschner*, 648 F. Supp. 2d at 533, 544–45 (finding no substantial assistance where plaintiffs failed to show law firm proximately caused underlying conversion by drafting agreements and advising on "tax and corporate governance" related to the conversion).

Plaintiffs have failed to meet this burden. Nowhere in the Complaint do Plaintiffs allege that Reed Smith was involved in or participated in any changes to the payment instructions. *See* Compl. ¶¶ 117–19. Instead, Plaintiffs rely exclusively on the "Fake EHI Attorneys'" position as counsel for entities affiliated with the Former D&Os and Shareholders and effectively claim the law firm is liable for its mere association. While Plaintiffs allege Reed Smith "provid[ed] the appearance of legality and legitimacy to the rogue and unauthorized actions of the Former D&Os and the Former Shareholders," *id.* ¶ 211, "substantial assistance" requires more than mere legal

representation.  And even if Reed Smith's representation of parties connected with the Former

D&Os and Shareholders in the bankruptcy context brought "appearances" of "legality," Plaintiffs

have failed to allege how such "appearances" in fact "assisted" the other Defendants' conversion.

### C.     The Complaint Fails to State a Claim for Breach of Contract

To allege a breach of contract, Plaintiffs must plead facts sufficient to show "(1) the

existence of a contract, (2) performance by the party seeking recovery, (3) breach by the defendant,

and (4) damages."  *In re Wonderwork, Inc.*, 611 B.R. 169, 216 (Bankr. S.D.N.Y. 2020) (citing

*Johnson v Nextel Commc'ns., Inc.*, 660 F.3d 131, 142 (2d Cir. 2011)).

### 1.     Plaintiffs Fail to Allege the Existence of a Contract

There is no contract between Plaintiffs and Reed Smith.  Plaintiffs' breach of contract claim

is premised on the existence of a contract supposedly created by the Court's November 4, 2024

order confirming the Plan.  Compl. ¶ 44.  But a court order does not create a contract upon which

a breach may be pursued in a separate lawsuit.  While Courts have often interpreted language in

Chapter 11 plans using contract principles, it is "by analogy," and for purposes of interpretation

only.  *See, e.g.*, *In re Frontier Ins. Group, Inc.*, 585 B.R. 685, 693 (Bankr. S.D.N.Y. 2018), *aff'd*,

598 B.R. 87 (S.D.N.Y. 2019) ("References to chapter 11 plans as contracts or agreements—while

useful for purposes of interpreting plans … are only by analogy, however.") (citation omitted).

The plan is not a contract that can be enforced with a breach of contract claim.  Rather, the plan is

binding through statutory authority and common law claim preclusion.  *Id.*; *Cavadi v. Bank of Am.,

N.A.*, 2008 WL 901403, at *3 (D.N.H. Apr. 1, 2008) (rejecting plaintiff's argument that there

existed a private right of action for violation of a court order because the order "created a

constructive contract" and noting "the appropriate method for dealing with a party's alleged

violation of a court order is not to seek contract damages for violation of an imaginary covenant,

but rather to invoke the court's contempt powers"); *In re MTE Holdings LLC*, 2021 WL 3743201,

at *7 (Bankr. D. Del. Aug. 17, 2021) (holding appropriate method of seeking enforcement of court order is through a sanctions motion, as codified, in the bankruptcy context, in 11 U.S.C. § 105(a)).

But even if the Plan were a contract, Reed Smith *is not a signatory* to it. *Mercator Corp. v. Windhorst*, 159 F. Supp. 3d 463, 469 (S.D.N.Y. 2016) (finding parties cannot be liable for breach of contract where they were "non-signatories" and there are no allegations the contract was "assumed or … assigned") (citation omitted); *Victory State Bank v. EMBA Hylan, LLC*, 169 A.D.3d 963, 965 (2d Dep't 2019) ("[o]ne cannot be held liable under a contract to which he or she is not a party"). In cases interpreting a plan as a contract, the parties are, at most, the debtor and its creditors. *In re Frontier Ins. Grp.*, 585 B.R. at 693 ("[i]t is often stated that a chapter 11 plan is a new contract between the debtor and its creditors, albeit one signed only by the plan proponent").

In reality, this claim is just a disguised (and untimely) motion for reconsideration of the Court's previous orders denying Plaintiffs' motions for sanctions against Reed Smith. *See, e.g.*, Compl. ¶¶ 75, 119 (alleging Plaintiffs arguments concerning Reed Smith's "refusal … to provide the documents and information responsive to [Petitioning Creditors'] requests" and refusal to assist in updating the AOR were raised in Plaintiffs' sanctions motion). It must be dismissed.

### 2. Plaintiffs Fail to Allege Reed Smith is in Breach

Even if the Plan were a contract, the Complaint also fails to adequately allege breach. *Markatos v Citibank, N.A.*, 760 F. Supp. 3d 70, 86 (S.D.N.Y. 2024) (dismissing breach of contract claim where plaintiff insufficiently pled breach); *Swan Media Grp., Inc. v Staub*, 841 F. Supp. 2d 804, 807 (S.D.N.Y. 2012) (same).

The Complaint is so devoid of allegations regarding Reed Smith specifically, as opposed to all "Defendants" or the "Fake EHI Attorneys," that it is difficult even to ascertain the specific conduct Plaintiffs allege amounts to a breach. *See Stewart v. Hudson Hall LLC*, 2020 WL

8732875, at *8 (S.D.N.Y. Oct. 19, 2020) (dismissing complaint based on group pleading which rendered the complaint "deficient in advising as to which Defendant's" actions were implicated"), *report and recommendation adopted*, 2021 WL 735244 (S.D.N.Y. Feb. 24, 2021). But it appears Plaintiffs complain that Reed Smith failed to comply with provisions of the Plan requiring Related Parties to "cooperate in good faith to implement and consummate the Plan" by not providing the Due Diligence Documents and Information. Compl. ¶ 214. Such a claim is legally flawed for the reasons set forth in Section III.A.2. The Complaint merely alleges that Reed Smith stated that it could not provide documents or information not in its possession or control, and that it declined to take affirmative action to assist in updating the AOR given conflicting legal advice from foreign counsel. *See id.* ¶¶ 72, 118. Such advocacy in the face of conflicting interpretations cannot amount to a deviation from the duties imposed by the Plan.

### 3. Plaintiffs Fail to Allege Reed Smith's Breach Caused Damages

Plaintiffs also fail to plead any facts plausibly demonstrating Reed Smith's purported breach of contract was the "but for" cause of Plaintiffs' damages. *See House of Europe Funding I, Ltd.*, *v. Wells Fargo Bank, N.A.*, 2014 WL 1383703, at *10–11 (S.D.N.Y. Mar. 31, 2014) (dismissing breach of contract claim because "conclusory" allegations of "financial harm" are insufficient to allege plaintiffs "bore any of the loss" from defendant's breach). Plaintiffs allege "Defendants have not fulfilled their obligations under the Plan" and failed "to cooperate in good faith to implement and consummate the Plan[,]" but do not specify losses, costs, or missed opportunities amounting to "in excess of $63.5 million." Compl. ¶ 214–15. Plaintiffs do not allege how Reed Smith's alleged failure to provide Due Diligence Documents or Information or failure to provide assistance in updating the AOR (which, in fact, has been updated since March 2025, *see id.* ¶¶ 87, 89) proximately resulted in any monetary damages.

**D.    The Complaint Fails to State a Claim for Tortious Interference**

To state a claim for tortious interference with contract, Plaintiffs must allege: "(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third-party's breach of the contract without justification; (4) actual breach of the contract; and (5) damages resulting therefrom." *In re KG Winddown, LLC*, 632 B.R. 448, 491 (Bankr. S.D.N.Y. 2021) (quoting *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006). Plaintiffs fail to plead facts supporting the second, third, or fifth element, and therefore the claim must be dismissed.

**1.    The Complaint Fails to Allege Reed Smith Had Knowledge of Plaintiffs' Contracts With Novum Charterparties**

Nowhere in the Complaint do Plaintiffs allege facts showing that Reed Smith knew about the Novum Charterparty Contracts. Instead, they rely on a blanket allegation as to all of "the Defendants" and insufficiently allege knowledge in a single, conclusory statement. *See* Compl. ¶ 219 ("Defendants have had actual knowledge of the existence of the contracts and had actual knowledge of the specific terms relating to the banking instructions."). The Complaint must, but fails to, allege that Reed Smith *in particular* had knowledge of the Novum Charterparty Contracts. *Taboola, Inc. v. Ezoic Inc.*, 2020 WL 1900496, at *10 (S.D.N.Y. Apr. 17, 2020) (dismissing counterclaim because plaintiffs' "conclusory assertions of knowledge" of the contract were insufficient). Without more, Plaintiffs allegation merely presents a legal conclusion that cannot overcome a motion to dismiss. *In re George Washington Bridge Bus Station Dev.*, 2022 WL 4653117, at *12 (Bankr. S.D.N.Y. Sept. 30, 2022) (granting motion to dismiss claim for tortious interference of contract because plaintiff's "allegations are too conclusory and speculative"). A defendant cannot be liable for interfering with a contract it does not know exists. *See Wellington Shields & Co. LLC v. Breakwater Inv. Mgmt. LLC*, 2016 WL 5414979, at *4 (S.D.N.Y. Mar. 18,

2016) (tortious interference defendant must have "actual knowledge of the terms of the contract and of the contractual obligation that was allegedly breached").

### 2.    The Complaint Fails to Allege Any Facts Supporting Reed Smith's "Intentional Procurement" of Any Breach of Contract

There are likewise no allegations in the Complaint that Reed Smith wrongfully acted to procure Novum's alleged breach.  "To satisfy this element, it is not enough that a defendant engaged in conduct with a third-party that happened to constitute a breach of the third party's contract with the plaintiff; instead a plaintiff must allege facts showing that 'the defendant's *objective* was to procure such a breach.'"  *United Coal Co., LLC v. Xcoal Energy & Res.*, 2024 WL 4533349, at *7 (S.D.N.Y. Oct. 21, 2024) (quoting *Prospect Funding Holdings, LLC v. Vinson*, 256 F. Supp. 3d 318, 328 (S.D.N.Y. 2017)) (emphasis in original); *see also High Falls Brewing Co., LLC v. Bos. Beer Corp.*, 513 F. App'x 12, 13 (2d Cir. 2013) (affirming denial of motion for leave to amend claim of tortious interference where proposed amended complaint did not allege that "the target of [defendant's] conduct was [the third party's] contractual arrangements with" the plaintiff) (citation omitted) (summary order); *see also Health-Chem Corp. v. Baker*, 915 F.2d 805, 809 (2d Cir. 1990) ("[T]o be actionable, the interference must be intentional and not incidental to some other lawful purpose.").

Here, the Plaintiffs make no non-conclusory allegations concerning Reed Smith's objective.  Indeed, Plaintiffs do not allege that Reed Smith acted *at all* to procure a breach of the Charterparty Contracts.  The Complaint contains only the conclusory allegation that all "Defendants" intentionally procured Novum's alleged breaches of contract.  Compl. ¶ 220.  That conclusory assertion, devoid of any factual allegations, is again insufficient to meet the pleading standard.

In *In re George Washington Bridge*, this Court dismissed a tortious interference claim with prejudice where plaintiff made similarly conclusory allegations. 2022 WL 4653117, at *12–13. The Court held the complaint "includes no allegation" that the alleged breach "was done at the [defendant]'s instruction," "that [defendant] conceived of a plan" to deprive plaintiff of payment, or that defendant "ever even suggested" that payment be withheld. *Id.* The same is true here. The Complaint contains no allegations regarding how Reed Smith participated in the alleged "scheme." Compl. ¶ 220. Nor do Plaintiffs plead, as required, that Reed Smith acted with malicious intent. *See Four Finger Art Factory, Inc. v. Dinicola*, 2001 WL 21248, at *7 (S.D.N.Y. Jan. 9, 2001) (dismissing tortious interference claim because "an attorney…that induce[s] a breach of contract while acting within the scope of an agency relationship and is not motivated by personal gain…[can]not [be] liable…for tortious interference with contract"); *In re Abreu*, 527 B.R. 570, 586 (Bankr. E.D.N.Y. 2015) (granting motion to dismiss on grounds that "conclusory allegations" attorneys "colluded" with defendants was insufficient to show the requisite "bad faith" or "personal gain" required to allege tortious interference claim).

It is clear that Plaintiffs are unhappy with the legal representation Reed Smith has provided to its clients over the years and throughout the bankruptcy proceedings. But that is simply not enough to support a claim against the law firm, particularly with respect to completely unrelated business transactions. Courts considering allegations of a law firm's tortious interference have held that representation of a firm's clients, without a showing of fraud or bad faith, cannot support a claim for tortious interference with contract. *In re Abreu*, 527 B.R. at 585 ("Attorneys are not liable to third parties for tortious interference with contract based on actions taken on behalf of, and advice given to, their clients, absent a showing of fraud or bad faith.") (citation omitted); *Ottah v Bracewell LLP*, 2021 WL 5910065, at *10 (S.D.N.Y. Dec. 10, 2021), *aff'd*, 2022 WL 16754378

(Fed. Cir. Nov. 8, 2022) (granting motion to dismiss where plaintiff's claims were predicated on "mere disagreement with the legal advice [the law firm] rendered to its" client).

### 3. The Complaint Fails to Allege Reed Smith Proximately Caused Plaintiffs' Damages

Plaintiffs have also failed to meet their burden of pleading that "the purported breach would not have occurred 'but for' the activities of the defendant." *In re George Washington*, 2022 WL 4653117, at *12 (citation omitted); *see also SOL-MM III LLC v. JPMorgan Chase Bank, N.A.*, 2025 WL 936414, at *27 (S.D.N.Y. Mar. 27, 2025), *on reconsideration in part on other grounds*, 2025 WL 1295467 (S.D.N.Y. May 5, 2025) (plaintiff failed to allege tortious interference where it only alleged "breaches…had occurred" and not that defendant was "but for" cause of the alleged breach).

Plaintiffs allege that "[h]ad Defendants not acted wrongfully in committing the above-referenced tortious acts of interference, the contracts would not have been breached" and as a result "Plaintiffs have suffered damages of at least $63.5 million from the tortious interference." Compl. ¶¶ 221–22. But again, given that Plaintiffs do not even allege what Reed Smith in particular allegedly did with respect to the Novum Charterparty Contracts, it follows that they have failed to adequately plead that Reed Smith's (unspecified) conduct was a proximate cause of any damages. Instead, Plaintiffs again rely on only the "bare recitation" of the elements of the cause of action. *Iqbal*, 556 U.S. at 678; *see also In re Lehr Constr. Corp.*, 2014 WL 2198803, at *5 (Bankr. S.D.N.Y. May 27, 2014) (dismissing tortious interference claim for failure to allege more than conclusory statement that defendant was a "proximate cause" of damages suffered).

## CONCLUSION

For the foregoing reasons, Plaintiffs' claims against Reed Smith should be dismissed with prejudice.

Dated: November 24, 2025

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: */s/Marshall R. King*
Marshall R. King
mking@gibsondunn.com
C. Lee Wilson
clwilson@gibsondunn.com

200 Park Avenue, 48th Floor
New York, New York 10166
Tel: 212.351.4000
Fax: 212.351.4035

*Attorneys for Defendant Reed Smith LLP*