**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------------x
In re

ELETSON HOLDINGS INC., *et al.*,

                      Debtors.[1]

------------------------------------------------------------------------------x
ELETSON HOLDINGS INC.; ELETSON CORPORATION;
ELETSON CHARTERING INC.; EMC INVESTMENT
CORPORATION; KASTOS SPECIAL MARITIME
ENTERPRISE; FOURNI SPECIAL MARITIME ENTERPRISE;
KINAROS SPECIAL MARITIME ENTERPRISE; and
KIMOLOS II SPECIAL MARITIME ENTERPRISE,

                      Plaintiffs,

    -against-

VASSILIS KERTSIKOFF; VASILIS HADJIELEFTHERIADIS;
LASCARINA KARASTAMATI; KONSTANTINOS
HADJIELEFTHERIADIS; IOANNIS ZILAKOS; EMMANUEL
ANDREOULAKIS; ADRIANOS PSOMADAKIS; PANOS
PAXINOS; ELENI GIANNAKOPOULOU; NIKI ZILAKOU;
LASSIA INVESTMENT COMPANY; GLAFKOS TRUST
COMPANY; FAMILY UNITY TRUST COMPANY;
ELAFONISSOS SHIPPING CORPORATION; KEROS
SHIPPING CORPORATION; REED SMITH LLP; LEX
GROUP LIBERIA LLC; DANIOLOS LAW FIRM; JOHN
MARKIANOS-DANIOLOS; and RIMON P.C.,

                      Defendants.

------------------------------------------------------------------------------x

Chapter 11
Case No. 23-10322 (JPM)
Jointly Administered

Adv. Proc. No. 25-01120 (JPM)

## <u>MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF RIMÔN PC TO DISMISS THE COMPLAINT</u>

---

[1] The Court has ordered this footnote to be included in this caption: "Prior to November 19, 2024, the Debtors in these cases were: Eletson Holdings Inc., Eletson Finance (US) LLC, and Agathonissos Finance LLC. On [March 5, 2025], the Court entered a final decree and order closing the chapter 11 cases of Eletson Finance (US) LLC and Agathonissos Finance LLC. Commencing on [March 5, 2025], all motions, notices, and other pleadings relating to any of the Debtors shall be filed in the chapter 11 case of Eletson Holdings Inc. The Debtor's mailing address is c/o Herbert Smith Freehills Kramer (US) LLP, 1177 Avenue of the Americas, New York, New York 10036" (*In re Eletson Holdings Inc.,* Case No. 1:23-bk-10322 (Bankr. S.D.N.Y.), ECF 1515 ¶ 7).

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................... 1

RELEVANT BACKGROUND ................................................................................................ 3

ARGUMENT ........................................................................................................................... 6

I.          THE LEGAL STANDARD ....................................................................................... 6

II.         PLAINTIFFS' CLAIMS MUST BE DISMISSED BECAUSE THE COURT DOES
            NOT HAVE SUBJECT MATTER JURISDICTION ................................................ 8

III.        PLAINTIFFS' CLAIMS MUST BE DISMISSED BECAUSE THEY ARE
            BARRED BY THE NOERR-PENNINGTON DOCTRINE .................................... 10

IV.         PLAINTIFFS' CLAIMS MUST BE DISMISSED BECAUSE THE COMPLAINT
            IS AN IMPERMISSIBLE GROUP PLEADING ...................................................... 13

V.          PLAINTIFFS' CLAIM FOR CONVERSION SHOULD BE DISMISSED ............ 14

VI.         PLAINTIFFS' CLAIM FOR AIDING AND ABETTING CONVERSION SHOULD
            BE DISMISSED ....................................................................................................... 19

VII.        PLAINTIFFS' CLAIM FOR BREACH OF CONTRACT SHOULD BE
            DISMISSED ............................................................................................................. 24

VIII.       PLAINTIFFS' CLAIM FOR TORTIOUS  INTERFERENCE WITH CONTRACT
            SHOULD BE DISMISSED ...................................................................................... 27

CONCLUSION ...................................................................................................................... 30

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*18th Ave. Realty, Inc.*, No. 03-14480(RDD),
  2010 WL 1849403 (Bankr. S.D.N.Y. May 7, 2010) ............................................................... 25

*Advanced Knowledge Tech, LLC v. Fleitas*,
  No. 21-CV-992 (PKC), 2021 WL 6126966 (S.D.N.Y. Dec. 28, 2021) .................................... 19

*Aetna Casualty & Surety Co. v. Glass*,
  75 A.D.2d 786, 428 N.Y.S.2d 246 (1st Dept. 1980) ............................................................... 14

*Agfa Corp. v. United Marketing Grp., Inc.*,
  No. 02 CIV. 8468 (LAP), 2003 WL 21555087 (S.D.N.Y. July 10, 2003) ............................... 12

*Annabi v. New York University*,
  No. 22-CV-3795 (LJL), 2023 WL 6393422 (S.D.N.Y. Sept. 29, 2023) .................................. 24

*Aramony v. United Way*,
  949 F. Supp. 1080 (S.D.N.Y. 1996) ....................................................................................... 15

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................................. 7

*Atuahene v. City of Hartford*,
  10 Fed. App'x. 33 (2d Cir. 2001) ............................................................................................ 13

*Bank of Am. Corp. v. Lemgruber*,
  385 F. Supp. 2d 200 (S.D.N.Y. 2005) ..................................................................................... 14

*Banks v. Corr. Servs. Corp.*,
  475 F. Supp. 2d 189 (E.D.N.Y 2007) ...................................................................................... 13

*Bath Petroleum Storage, Inc. v. Mkt. Hub Partners, L.P.*,
  229 F.3d 1135 (2d Cir. 2000) ............................................................................................ 11, 12

*Bel Air Tollgate Pshp v. Bel Air Square Joint Venture (In re Bel Air Square Joint Venture)*,
  No. 95-1404, 1996 WL 19152 (2d Cir. Jan. 16, 1996) ........................................................... 25

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................................. 7

*Berdeaux v. OneCoin Ltd.*,
  561 F. Supp. 3d 379 (S.D.N.Y. 2021) ..................................................................................... 21

*Berman v. Morgan Keegan & Co., Inc.*,
  No. 10 Civ. 5866 (PKC), 2011 WL 1002683 (S.D.N.Y. Mar. 14, 2011) ............................... 19

*Bigio v. Coca-Cola Co.*,
  675 F.3d 163 (2d Cir. 2012) ............................................................................................... 22, 24

*Brown v. City of Oneonta, New York*,
  235 F.3d 769 (2d Cir. 2000) .................................................................................................... 13

*Brown v. Twitter, Automattic Inc.*,
  No. 19 CIV. 6328 (KPF), 2021 WL 3887611 (S.D.N.Y. Aug. 31, 2021) ............................... 14

*CAC Grp., Inc. v. Maxim Grp., LLC*,
  No. 12 CIV. 5901 KBF, 2012 WL 4857518 (S.D.N.Y. Oct. 10, 2012) ................................... 24

*Cal. Motor Transp. Co. v. Trucking Unlimited*,
  404 U.S. 508 (1972) ................................................................................................................ 11

*Cantor v. Am. Banknote Corp.*,
  No. 06 CIV. 1392 (PAC), 2007 WL 3084966 (S.D.N.Y. Oct. 22, 2007) ................................... 8
*Carter v. HealthPort Techs., LLC*,
  822 F.3d 47 (2d Cir. 2016) ....................................................................................................... 6
*Cavadi v. Bank of Am., N.A.*,
  No. CV-07-224-PB, 2008 WL 901403 (D.N.H. Apr. 1, 2008) ................................................ 25
*Celotex Corp. v. Edwards*,
  514 U.S. 300 (1995) ................................................................................................................. 8
*Cerveceria Modelo, S.A. De C.V. v. USPA Accessories LLC*,
  No. 07 CIV. 7998 (HB), 2008 WL 1710910 (S.D.N.Y. Apr. 10, 2008) .................................. 28
*Chemtex, LLC v. St. Anthony Enterprises, Inc.*,
  490 F. Supp.2d 536 (S.D.N.Y. 2007) ...................................................................................... 19
*Citizens United v. Schneiderman*,
  882 F.3d 374 (2d Cir. 2018) .................................................................................................... 18
*Consol. Edison Co. of N.Y. v. UGI Utils.*,
  423 F.3d 90 (2d Cir. 2005) ....................................................................................................... 6
*Cruz v. TD Bank, N.A.*,
  855 F. Supp. 2d 157 (S.D.N.Y. 2012) ..................................................................................... 14
*Daly v. Castro Llanes*,
  30 F. Supp. 2d 407 (S.D.N.Y. 1998) ......................................................................................... 7
*Demirovic v. Ortega*,
  No. 15 CV 327 (CLP), 2016 WL 11472745 (E.D.N.Y. Sept. 15, 2016) ................................... 7
*DiVittorio v. Equidyne Extractive Indus., Inc.*,
  822 F.2d 1242 (2d Cir. 1987) ............................................................................................ 13, 14
*Drawsand v. F.F. Properties, L.L.P.*,
  866 F. Supp.2d 1110 (N.D. Cal. 2011) .................................................................................... 11
*ESI, Inc. v. Coastal Power Production, Co.*,
  995 F. Supp. 419 (S.D.N.Y. 1998) .......................................................................................... 15
*First Nationwide Bank v. Gelt Funding Corp.*,
  27 F.3d 763 (2d Cir. 1994) ...................................................................................................... 13
*Freeman v. Lasky, Haas & Cohler*,
  410 F.3d 1180 (9th Cir. 2005) ................................................................................................. 11
*Frontier Ins. Group, Inc.*,
  585 B.R. 685 (Bankr. S.D.N.Y. 2018) ................................................................................ 25, 26
*GE Oil & Gas, LLC v. Turbine Generation Servs., LLC*,
  No. 18-CV-7555 (VEC), 2019 WL 2008575 (S.D.N.Y. May 7, 2019) ..................................... 9
*Geron v. Reifer (In re Eight-115 Assocs., LLC)*,
  650 B.R. 43 (Bankr. S.D.N.Y. 2023) ....................................................................................... 14
*Giles v. Phelan, Hallinan & Schmieg, L.L.P.*,
  No. CIV.A. 11-6239 JBS/K, 2013 WL 2444036 (D.N.J. June 4, 2013) ................................... 11
*Global View Ltd. Venture Capital v. Great Cent. Basin Exploration, L.L.C.*,
  288 F. Supp.2d 473 (S.D.N.Y. 2003) ...................................................................................... 18
*Hi Bar Cap. LLC v. Getter*,
  No. 22-CV-1743 (ENV) (RML), 2025 WL 2989120 (E.D.N.Y. Oct. 12, 2025) ...................... 18
*Hofmann v. Long Island Univ.*,
  No. 22-393-CV, 2024 WL 3262819 (2d Cir. July 2, 2024) ...................................................... 15

iii

*House of Europe Funding I, Ltd., v. Wells Fargo Bank, N.A.*,
    No. 13 CIV. 519 RJS, 2014 WL 1383703 (S.D.N.Y. Mar. 31, 2014) ...................................... 27
*Hyper Bicycles, Inc. v. Acctel, Ltd.*,
    No. 22CV3308 (DLC), 2023 WL 2267041 (S.D.N.Y. Feb. 28, 2023) .................................... 15
*In re Adelphia Commc'ns Corp.*,
    324 B.R. 492 (Bankr. S.D.N.Y. 2005) ................................................................................... 22
*In re Agape Litig.*,
    773 F. Supp. 2d 298 (E.D.N.Y. 2011) .............................................................................. 20, 21
*In re Crude Oil Commodity Litig.*, No. 06 CIV.,
    6677 (NRB), 2007 WL 1946553 (S.D.N.Y. June 28, 2007) ................................................... 14
*In re Ditech Holding Corp.*,
    606 B.R. 544 (Bankr. S.D.N.Y. 2019) ................................................................................... 26
*In re Elysium Health-Chromadex Litig.*,
    354 F. Supp. 3d 330 (S.D.N.Y. 2019) .................................................................................... 12
*In re Ener1, Inc.*,
    558 B.R. 91 (Bankr. S.D.N.Y. 2016) .................................................................................... 8, 9
*In re Gen. Media, Inc.*,
    335 B.R. 66 (Bankr. S.D.N.Y. 2005) ............................................................................. 8, 9, 10
*In re George Washington Bridge Bus Station Dev. Venture LLC*,
    No. 19-13196 (DSJ), 2022 WL 4653117 (Bankr. S.D.N.Y. Sept. 30, 2022) ........................... 30
*In re Level 8 Apparel, LLC*,
    No. 16-13164 (JLG), 2021 WL 279620 (Bankr. S.D.N.Y. Jan. 26, 2021)................................ 22
*In re Levelbest, LLC*,
    No. 19-11673, 2023 WL 187631 (Bankr. N.D.N.Y. Jan. 13, 2023).......................................... 26
*In re MTE Holdings LLC*,
    No. 19-12269 (CTG), 2021 WL 3743201 (Bankr. D. Del. Aug. 17, 2021) .............................. 26
*In re Parade Place, LLC*,
    508 B.R. 863 (Bankr. S.D.N.Y. 2014) ..................................................................................... 9
*International Minerals & Resources, S.A. v. Pappas*,
    96 F.3d 586 (2d Cir. 1996) .................................................................................................... 28
*Jews for Jesus, Inc. v. Jewish Community Relations Council of New York*,
    968 F.2d 286 (2d Cir. 1992) .................................................................................................. 28
*Kaufman LLC v. Est. of Feinberg*,
    No. 3:17-CV-958 (VAB), 2024 WL 2113537 (D. Conn. May 11, 2024) ................................. 12
*Kirschner v. Bennett*,
    648 F. Supp. 2d 525 (S.D.N.Y. 2009) .............................................................................. 20, 22
*Klatch-Maynard v. Sugarloaf Twp.*,
    No. 3:06-cv-845, 2010 WL 5789390 (M.D. Pa. Nov. 8, 2010) ............................................... 11
*Kolbeck v. LIT Am., Inc.*,
    939 F. Supp. 240 (S.D.N.Y. 1996) ........................................................................................ 20
*L-7 Designs, Inc. v. Old Navy, LLC*,
    647 F.3d 419 (2d Cir. 2011) ..................................................................................................... 7
*Lerner v. Fleet Bank, N.A.*,
    459 F.3d 273 (2d Cir. 2006) ................................................................................. 20, 22, 23, 24
*Leveraged Leasing Admin. Corp. v. PacifiCorp Capital, Inc.*,
    87 F.3d 44 (2d Cir. 1996)....................................................................................................... 14

*Louisiana Health Serv. & Indem. Co. v. Celgene Corp.*,
   No. 23-CV-7871 (ER), 2025 WL 1056668 (S.D.N.Y. Apr. 8, 2025) ......................................... 12
*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) .................................................................................................................... 6
*Makarova v. United States*,
   201 F.3d 110 (2d Cir. 2000) ........................................................................................................ 6
*Manbro Energy Corp. v. Chatterjee Advisors, LLC*,
   No. 20 CIV. 3773 (LGS), 2021 WL 2037552 (S.D.N.Y. May 21, 2021) ................................ 28
*McKenzie-Morris v. V.P. Recs. Retail Outlet, Inc.*,
   No. 1:22-CV-1138-GHW, 2022 WL 18027555 (S.D.N.Y. Dec. 30, 2022) .............................. 28
*Medtech Prods. Inc. v. Ranir, LLC*,
   596 F. Supp. 2d 778 (S.D.N.Y. 2008) ...................................................................................... 30
*Mills v. Polar Molecular Corp.*,
   12 F.3d 1170 (2d Cir. 1993) ...................................................................................................... 13
*Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp.*,
   531 F. Supp. 3d 673 (S.D.N.Y. 2021) ...................................................................................... 13
*Nesbeth v. New York City Mgmt. LLC*,
   No. 17 Civ. 8650 (JGK), 2019 WL 110953 (S.D.N.Y. Jan. 4, 2019) ...................................... 13
*Oddo Asset Mgmt. v. Barclays Bank PLC*,
   19 N.Y.3d 584 (N.Y. 2012) ...................................................................................................... 28
*Orlando v. Nxt-ID Inc.*,
   No. 20-CV-1604 (MKV), 2021 WL 1143766 (S.D.N.Y. Mar. 23, 2021) ................................ 15
*Papasan v. Allain*,
   478 U.S. 265 (1986) .................................................................................................................... 7
*Plusgrade L.P. v. Endava Inc.*,
   No. 21-cv-01530 (MKV), 2023 WL 2402879 (S.D.N.Y. Mar. 8, 2023) .................................. 13
*Primetime 24 Joint Venture v. Nat'l Broad. Co.*,
   219 F.3d 92 (2d Cir. 2000) ........................................................................................................ 11
*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus*. Inc.,
   508 U.S. 49 (1993) .................................................................................................................... 12
*Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.)*,
   980 F.2d 110 (2d Cir. 1992) ........................................................................................................ 9
*Ray v. Ray*,
   799 F. App'x 29 (2d Cir. 2020) ................................................................................................ 18
*Rise Dev. Partners, LLC v. Signature Bank*,
   No. 23-CV-4242 (JGK), 2024 WL 4555758 (S.D.N.Y. Oct. 22, 2024) ................................... 21
*Rosen v. Chowaiki & Co. Fine Art Ltd. (In re Chowaiki & Co. Fine Art)*,
   593 B.R. 699 (Bankr. S.D.N.Y. 2018) ........................................................................................ 7
*Rupert v. Bond*,
   No. 12-CV-05292-LHK, 2013 WL 5272462 (N.D. Cal., Sept. 17, 2013) ................................ 11
*Schottenstein v. Lee*,
   No. 22-CV-1197 (DLC), 2023 WL 4363002 (S.D.N.Y. July 6, 2023) ..................................... 18
*Shields v. Citytrust Bancorp, Inc.*,
   25 F.3d 1124 (2d Cir. 1994) ........................................................................................................ 8
*Silverman Partners, L.P. v. First Bank*,
   687 F. Supp. 2d 269 (E.D.N.Y. 2010) ........................................................................................ 7

v

*Singh v. NYCTL* 2009-A Tr.,
  683 F. App'x 76 (2d Cir. 2017)............................................................................... 11
*Solow v. Stone*,
  994 F. Supp. 173 (S.D.N.Y.) .................................................................................... 7
*SPV Osus Ltd. v. UBS AG*,
  882 F.3d 333 (2d Cir. 2018)............................................................................. 22, 24
*State St. Glob. Advisors Tr. Co. v. Visbal*,
  431 F. Supp. 3d 322 (S.D.N.Y. 2020) ..................................................................... 28
*T.F.T.F. Capital Corp. v. Marcus Dairy, Inc.*,
  312 F.3d 90 (2d Cir. 2002)....................................................................................... 11
*Taboola, Inc. v. Ezoic Inc.*,
  No. 17 CIV. 9909 (PAE) (KNF), 2020 WL 1900496 (S.D.N.Y. Apr. 17, 2020)...................... 30
*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ................................................................................................... 3
*United States v. Bond*,
  762 F.3d 255 (2d Cir. 2014)....................................................................................... 6
*Up State Tower Co., LLC v. Town of Cheektowaga*,
  No. 24-165-CV, 2025 WL 444207 (2d Cir. Feb. 10, 2025) ..................................... 24
*Walker v. City of New York*,
  974 F.2d 293 (2d Cir. 1992)....................................................................................... 6
*Wyse v. Metro. Com. Bank*,
  No. 24 CIV. 9108 (PAE), 2025 WL 2208161 (S.D.N.Y. Aug. 4, 2025) ............... 21, 22
*Yamashita v. Scholastic Inc.*,
  936 F.3d 98 (2d Cir. 2019)....................................................................................... 18
*Zamora v. FIT Int'l Grp. Corp.*,
  834 F. App'x 622 (2d Cir. 2020)......................................................................... 20, 21
*Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC*,
  No. 17-cv-307(PKC), 2021 WL 4460547 (S.D.N.Y. Sept. 29, 2021) ..................... 19

**Statutes**

11 U.S.C. § 105(a) ....................................................................................................... 26
28 U.S.C.A. §1334....................................................................................................... 8

**Rules**

Federal Rule of Bankruptcy Procedure 7012.............................................................. 1
Federal Rule of Civil Procedure 12(b)................................................................... 1, 6
FRCP 8 ................................................................................................................. 13, 15
FRCP 9 ......................................................................................................... 7, 13, 15, 20

Defendant Rimôn PC ("Rimôn") respectfully submits this memorandum of law in support of its motion to dismiss the complaint ("Complaint" or "Cplt.") filed by plaintiffs Eletson Holdings Inc. ("Reorganized Holdings"), Eletson Corporation, Eletson Chartering Inc., EMC Investment Corporation, Kastos Special Maritime Enterprise, Fourni Special Maritime Enterprise, Kinaros Special Maritime Enterprise, and Kimolos II Special Maritime Enterprise ("Plaintiffs") in the above-captioned adversary proceeding pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) made applicable by Federal Rule of Bankruptcy Procedure 7012(b)(1) and 7012(b)(6).

## INTRODUCTION

Plaintiffs (only one of whom is a debtor in bankruptcy) attempt to bring claims against Rimôn solely because Rimôn filed a Notice of Appeal (which appeal is now being considered by the Second Circuit), made other unspecified filings and arguments on behalf of its client, and was allegedly paid for providing legal services.  In other words, Plaintiffs improperly want to try to convert a law firm representing a certain client and making arguments with which Plaintiffs disagree into an actionable claim.  The essence of Plaintiffs' claim is that Rimôn's client cannot be represented and make legal arguments either in the United States or anywhere else in the world. These improper claims follow Plaintiff Reorganized Holdings' failed attempt to have this Court sanction Rimôn, and defendants Reed Smith and the Daniolos Law Firm in the bankruptcy case. The Court rejected those sanctions motions against Rimôn, Reed Smith and the Daniolos Law Firm and should similarly reject these claims.

At the very least, this attempt to turn advocacy into wrongdoing is barred by the Noerr-Pennington doctrine, which protects the constitutional right to petition the courts.  But, beyond that, the claims against Rimôn are not subject to this Court's jurisdiction and do not state any claim against Rimôn.  In fact, there is one, and only one, specific allegation against Rimôn – Rimôn filed a Notice of Appeal on January 16, 2025.  The Complaint otherwise makes a small number of

1

conclusory allegations about four law firm defendants including Rimôn as a group but with no specificity at all. There are also a number of allegations against "Defendants" which appears to include all Defendants. Not only is that improper, but it is clear that all those allegations cannot possibly include Rimôn because they either pre-date Rimôn's involvement in this matter or deal with issues with which Rimôn had no interaction whatsoever. There is no plausible allegation that Rimôn did anything wrong or caused any harm to Plaintiffs. The claims against it should be dismissed with prejudice for at least the following reasons:

*First*, this Court has no subject matter jurisdiction over these post-confirmation claims by multiple plaintiffs, only one of whom is a debtor, against 20 defendants, none of whom are creditors. Plaintiffs' claims do not have a "close nexus" to the bankruptcy case and do not relate back to the effectuation of the Chapter 11 plan or implicate the Chapter 11 proceeding.

*Second*, Plaintiffs' claims against Rimôn for filing documents and making arguments in Court in legal proceedings are barred by the Noerr-Pennington doctrine which protects actions that petition courts and are incidental to petitioning behavior.

*Third,* Plaintiffs' claims should be dismissed as an impermissible group pleading that fails to give Rimôn fair notice of the claims against it and by whom.

*Fourth*, Plaintiffs have not plausibly alleged a claim for conversion against Rimôn because they have not adequately alleged in a non-conclusory fashion that Rimôn exercised unauthorized domination over any purportedly converted property, that Rimôn had any connection to the alleged Converted Personal Property or the charterparty contracts or Oaktree or Novem, or that Rimôn specifically knowingly received an identifiable segregated converted amount of money.

*Fifth*, Plaintiffs have not plausibly alleged a claim for aiding and abetting because they have not adequately alleged actual knowledge by Rimôn of any conversion or that Rimôn

substantially assisted anyone in committing any conversion.

*Sixth*, Plaintiffs' breach of contract claim against Rimôn fails because there is no plausible allegation of a contract with Rimôn since the Plan is not a contract nor is it a contract to which Rimôn is a party and there is no adequate allegation of breach, causation, or damages.

*Finally*, the claim for tortious interference with contractual relations against Rimôn must be dismissed because there is no plausible allegation of Rimôn's involvement with the alleged contract of Kastos and Fourni and certainly no adequate allegation of knowledge of these contracts, intentional procurement of breach, and damages.

## RELEVANT BACKGROUND

Solely for purposes of this motion, Rimôn accepts as true the Complaint's allegations as supplemented by documents referenced in the Complaint or of which the Court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (courts "accept all factual allegations in the complaint as true" and may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.").

Plaintiffs' 200+ paragraph Complaint asserts four claims for relief against twenty defendants including Rimôn for (a) breach of contract based upon the Debtors' confirmed plan of reorganization (the "Plan"), (b) conversion, (c) aiding and abetting conversion, and (d) tortious interference with contract.

Other than the caption and the definition of the parties, the Complaint's 200+ paragraphs only mention Rimôn specifically once. In paragraph 59 of the Complaint, Plaintiffs allege that "[o]n January 16, 2025, Reed Smith and Rimôn filed a Notice of Appeal of the Appeal Dismissal Stipulation Order purportedly on behalf of Holdings, Eletson Finance (US) LLC, and Agathonissos Finance LLC. Holdings did not retain Reed Smith or Rimôn and did not authorize either Reed Smith or Rimôn to file a Notice of Appeal on Holdings' behalf" (Cplt. ¶ 59). Importantly, this

January 16 filing was long after (a) March 7, 2023, when certain creditors of Holdings, Eletson Finance (US) LLC, and Agathonissos Finance LLC (the "Debtors") filed involuntary petitions against the Debtors in this Court (Cplt. ¶ 37); (b) the case was converted to Chapter 11 proceeding in September 2023 (*id.* ¶39); (c) November 4, 2024 when the Court entered a Confirmation Order confirming the Plan over the objection of the Debtors (*id.* ¶44); and (d) the Effective Date of the Plan, which was allegedly November 19, 2024 (*id.* ¶45). Equally important, and omitted by Plaintiffs, when the issues raised in the Notice of Appeal were appealed to the United States Court of Appeals for the Second Circuit, Plaintiff Reorganized Holdings moved to dismiss the appeal making the same claim about who represents Eletson Holdings as discussed in the Complaint (*id.* ¶¶60-61). The Second Circuit permitted the appeal to proceed, and explained:

> Also before this panel is a motion to dismiss or remand, filed by a movant described in the motion as "Appellant Eletson Holdings, Inc." For present purposes, we do not decide whether that description of the movant is accurate. It is hereby ORDERED that the motion to intervene is GRANTED. It is further ORDERED that the motion to dismiss or remand is DENIED, without prejudice to the parties raising their arguments regarding who controls Eletson Holdings, Inc., and what effect that control has on the appeal before the merits panel.

*In re Eletson Holdings Inc.*, Case No: 25-0176 (2d Cir.) ECF 50.1.

Other than that lone specific allegation about Rimôn, Plaintiffs lump Rimôn, along with defendants Reed Smith LLP ("Reed Smith"), Lex Group Liberia LLC, and the Daniolos Law Firm (the "Law Firm Defendants") into Plaintiffs' inflammatory definition of "Fake EHI Attorneys." Plaintiffs claim that the Law Firm Defendants "substantially assisted" the alleged conversion of Plaintiffs' property in violation of the Plan and the Confirmation Order by representing their respective clients by making "various filings and arguments seeking to overturn the Confirmation Order and/or to obstruct implementation of the Plan." Cplt. ¶197. Even the Law Firm Defendants as an undifferentiated group only appear in the allegations twelve times (often as part of a

conclusory allegations and with little specific information) in paragraphs 189, 193-194, 197-199, 205, 210-211.   Two times, Plaintiffs allege conclusorily "upon information and belief" (and without any basis for that information and belief) that the Law Firm Defendants "have been knowingly paid with the converted funds" and that "to the extent the [Law Firm Defendants'] purported client has any funds at all to pay for the substantial legal assistance it has obtained over the past eight months since the Effective Date, those funds are rightfully the property of reorganized Holdings itself…." Cplt. ¶¶198, 205.  The Complaint does not allege any specific facts regarding Rimôn's conduct, either specifically or as part of the Law Firm Defendants.

The 200+ plus paragraph Complaint though includes many allegations that pre-date the alleged involvement of Rimôn (on January 16, 2025) or that explicitly do not include any allegation about Rimôn (even as part of the group of Law Firm Defendants) about (a) events leading to the Chapter 11 cases and the chapter 11 cases through November 19, 2024 (*id.* ¶¶36-45); (b) the effect of confirmation (id. ¶¶46-54); (c) the early stages of the confirmation appeal (*id.* ¶¶55-58); (d) alleged immediate attempts to "obstruct the plan" (*id.* ¶¶62-64); (e) the minority shareholders petition for appointment of a provisional board (*id.* ¶¶65-70); (f) issues related to updating LISCR in Liberia (id. ¶¶71-75); (g) issues with the "Ordered Parties" from the Second Sanctions Motion (id. ¶¶81-89); (h) opposition to recognition of the plan in Liberia and Greece (*id.* ¶¶90-98); (i) other LISCR Actions in Liberia (*id.* ¶¶99-103); (j) proceedings in the Marshall Islands and Germany (id. ¶¶104-106); (k) statements by certain individual defendants (*id.* ¶¶107-110); (l) different sanctions orders against other defendants (*id.* ¶¶112-115); and (m) allegations of refusing to turn over property of the estate, changing bank instructions related to charterparties, and issues with Oaktree and Novum  (*id.* ¶¶116-188).  Rimôn could not play a role in events that occurred prior to its alleged involvement in this matter and is not alleged to have played any role in the rest.

The Complaint discusses various sanctions motions in the bankruptcy case. The Court can take judicial notice that "Reorganized" Holdings (as it was called in those motions) sought sanctions against Rimôn, Reed Smith, and the Daniolos Law Firm and that the Court did not find Rimôn, Reed Smith or the Daniolos Law Firm in contempt and did not issue sanctions against any of them in what Plaintiffs' identify as the Consummation Order (Cplt. ¶76), the February Sanctions Order (*id.* ¶86), the Third Sanctions Order (*id.* ¶114) and the Fourth Sanctions Order (*id.* ¶115). *See In re Eletson Holdings, Inc., et al.,* No. 23-10322 (JPM), ECF 1402, 1495, 1537, and 1716.

## ARGUMENT

### I.    THE LEGAL STANDARD

A case is properly dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), made applicable by Bankruptcy Rule 7012, "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists". *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *see also Makarova,* 201 F.3d at 113. "Subject matter jurisdiction is a threshold question that must be resolved ... before proceeding to the merits." *United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014). "The absence of subject matter jurisdiction is non-waivable. *Consol. Edison Co. of N.Y. v. UGI Utils.*, 423 F.3d 90, 103 (2d Cir. 2005). A court may consider facts beyond the complaint when a motion pursuant to Rule 12(b)(1) is fact-based. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016).

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (made applicable by Bankruptcy Rule 7012) for failure to state a claim for relief, a court must accept as true all material facts alleged in the complaint and draw all reasonable inferences in favor of the plaintiffs. *See Walker v. City of New York*, 974 F.2d 293, 298 (2d Cir. 1992). However, the court

6

it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not sufficient factual allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)*; see also Rosen v. Chowaiki & Co. Fine Art Ltd. (In re Chowaiki & Co. Fine Art)*, 593 B.R. 699, 710-12 (Bankr. S.D.N.Y. 2018).

As Bankruptcy Judge (now District Judge) Vyskocil stated in *Chowaiki* "[a] complaint states a claim that is facially plausible when the factual content pleaded therein is sufficient to "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and requires more than a sheer possibility that a defendant has acted unlawfully. *Chowaiki*, 593 B.R. at 711. "Plausibility" involves a number of considerations, including (a) the full factual picture presented by the complaint and the particular cause of action and its elements, and (b) the existence of alternative explanations so obvious that they render plaintiffs' inferences unreasonable. *See L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011) (citing *Iqbal*, 556 U.S. at 678). Courts are "not required to draw unreasonable inferences or to credit legal conclusions at odds with plaintiff's own factual allegations." *Solow v. Stone*, 994 F. Supp. 173, 181 (S.D.N.Y.), *aff'd*, 163 F.3d 151 (2d Cir. 1998).

The FRCP 9(b) heightened pleading standard applies to conversion claims. *Demirovic v. Ortega*, No. 15 CV 327 (CLP), 2016 WL 11472745, at *10-11 (E.D.N.Y. Sept. 15, 2016), *aff'd*, 771 F. App'x 111 (2d Cir. 2019); *Silverman Partners, L.P. v. First Bank*, 687 F. Supp. 2d 269, 288 (E.D.N.Y. 2010) (applying Rule 9(b) to breach of fiduciary duty, conversion, and unjust enrichment claims); *Daly v. Castro Llanes*, 30 F. Supp. 2d 407, 414 (S.D.N.Y. 1998) (finding claim

of conversion "subject to the pleading requirements of Rule 9(b)"). Plaintiff must (1) "specify"

the fraudulent statements, "(2) identify the speaker, (3) state where and when the statements were

made, and (4) explain why the statements were fraudulent." *Shields v. Citytrust Bancorp, Inc.*, 25

F.3d 1124, 1127–28 (2d Cir. 1994) (affirming dismissal) (quotation omitted).

## II.    PLAINTIFFS' CLAIMS MUST BE DISMISSED BECAUSE THE COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION

"Bankruptcy courts, like other federal courts, have limited subject matter jurisdiction." *In

re Ener1, Inc.*, 558 B.R. 91, 95 (Bankr. S.D.N.Y. 2016) (citing *Celotex Corp. v. Edwards*, 514 U.S.

300, 307 (1995)). Although 28 U.S.C.A. §1334 does not contain an express limitation on a

bankruptcy court's jurisdiction post plan confirmation, courts have held that, after confirmation,

"the bankruptcy court's jurisdiction shrinks." *In re Gen. Media, Inc.*, 335 B.R. 66, 73 (Bankr.

S.D.N.Y. 2005) (citation omitted). Post-confirmation, the "close nexus" test replaces the core and

non-core distinction with regard to jurisdiction, and post-confirmation subject matter jurisdiction

requires that (a) "the matter must have a close nexus to the bankruptcy plan or proceeding", and

(b) "the plan must provide for the retention of jurisdiction over the dispute." *Id.* Broad plan

jurisdiction retention provisions (like here) are insufficient to confer jurisdiction without a "close

nexus." *See Cantor v. Am. Banknote Corp.*, No. 06 CIV. 1392 (PAC), 2007 WL 3084966, at *3

(S.D.N.Y. Oct. 22, 2007) (dismissal despite retention provision as there was no "close nexus").

A matter has a "close nexus" sufficient to confer post-confirmation jurisdiction when it

would affect "the interpretation, implementation, consummation, execution, or administration of

the confirmed plan." *In re Gen. Media, Inc.*, 335 B.R. at 73. In *General Media*, none of the claims

arose under the confirmed plan or required the Court to interpret it for those claims. *Id.* at 74-75.

Thus, and because "any recovery [would] inure solely to the benefit of the plaintiff [the reorganized

debtor]" and not to the creditors, the Court dismissed the claim. *Id.* Indeed, the court concluded

that, even if a recovery could inure to the benefit of creditors, a "bankruptcy court cannot hear a post-confirmation dispute simply because it might conceivably increase the recovery to creditors, because the rationale could endlessly stretch a bankruptcy court's jurisdiction." *Id.* at 75.

Here, except for Plaintiff Reorganized Eletson, none of the other Plaintiffs were parties to the bankruptcy case and are not mentioned in the Plan or Confirmation Order. Consequently, the Court lacks subject matter jurisdiction over their claims. *See In re Parade Place, LLC*, 508 B.R. 863, 872 (Bankr. S.D.N.Y. 2014) (the "Court lacks subject matter jurisdiction . . . to hear a monetary claim by the Church (a non-debtor) against Valley (also a non-debtor), since that claim could not have any conceivable effect on the bankruptcy estates…."); *GE Oil & Gas, LLC v. Turbine Generation Servs., LLC*, No. 18-CV-7555 (VEC), 2019 WL 2008575, at *5 (S.D.N.Y. May 7, 2019) ("this Court lacks 'relating to' jurisdiction" and "no other basis for jurisdiction appears viable"); *Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.)*, 980 F.2d 110, 114 (2d Cir. 1992) ("The test for determining whether litigation has a significant connection with a pending bankruptcy [to confer bankruptcy jurisdiction] is whether its outcome might have any conceivable effect on the bankrupt estate.") (cleaned up). Indeed, as demonstrated below, since Plaintiffs' conversion, aiding and abetting, and tortious interference claims lack a sufficiently "close nexus" to the bankruptcy case and do not relate to the effectuation of the Plan or the Chapter 11 proceeding, it is impossible for those claims to have any relation to the Chapter 11 case when they involve claims by non-debtors against non-creditors.

Moreover, the conversion, aiding and abetting, and tortious interference with contract claims as asserted by Plaintiff Reorganized Holdings, also lack a "close nexus" to the bankruptcy case and do not "relate[] back to the effectuation of the Chapter 11 proceeding." *In re Ener1,* 558 B.R. at 95. None of those claims require the Court to interpret the Plan and each arose, if at all,

9

post-confirmation.  For example, no Plan provisions are implicated by Plaintiffs' contention that the former directors and officers (the "Former D&Os") improperly changed the payment instructions on the Novum charterparty contracts.  The Plan is silent with regard to those payment instructions or how they could be changed.  The contract between Holdings and Novum, not the Plan, governs those actions.  Further, even if Plaintiffs are somehow successful, any recovery will go solely to Plaintiffs rather than to the creditors.  *See In re Gen. Media*, 335 B.R. at 75.

One of the Plaintiffs, Reorganized Holdings, is a former debtor that has emerged from Chapter 11.  That is the only connection between Plaintiffs' post-confirmation claims and the Bankruptcy Court.  But, this is insufficient for the Court to exercise jurisdiction to adjudicate post-confirmation claims.  This is particularly true with regard to the sparse allegations against Rimôn.  As demonstrated below, the Complaint has factual allegations concerning Rimôn in support of the substantive claims and certainly none that support subject matter jurisdiction. Moreover, the Plan itself limits jurisdiction over adversary proceedings to those "pending on the Effective Date" (Plan at 11.1(b)) which precedes Rimôn's alleged involvement.

The Complaint should be dismissed with prejudice for lack of subject matter jurisdiction.

## III.   PLAINTIFFS' CLAIMS MUST BE DISMISSED BECAUSE THEY ARE BARRED BY THE NOERR-PENNINGTON DOCTRINE

Plaintiffs allege that Rimôn filed a Notice of Appeal (Cplt. ¶59) and, together with the other Law Firm Defendants made "various filings and arguments".  *Id.* ¶197.  Plaintiffs' allegations against Rimôn, sparse and conclusory as they are, amount to nothing more than a claim that Rimôn appeared in various courts on behalf of a client to pursue appeals from different orders of this Court.  This despite the fact that Plaintiff Reorganized Holdings tried and failed to get this Court to sanction Rimôn and the other Law Firm Defendants in the bankruptcy case for representing their clients.  In fact, claims of wrongdoing based on representing a party in a litigation are

protected by the Noerr-Pennington Doctrine, improper, and must be dismissed.

The Noerr-Pennington Doctrine protects parties from liability for "efforts to influence governmental action through litigation[,] lobbying," and all other "petitioning activity." *Singh v. NYCTL 2009-A Tr.*, 683 F. App'x 76, 77 (2d Cir. 2017) (affirming dismissal of RICO, GBL § 349, and state law claims due to Noerr-Pennington). It "generally immunizes from liability a party's commencement of a prior court proceeding." *T.F.T.F. Capital Corp. v. Marcus Dairy, Inc*., 312 F.3d 90, 93 (2d Cir. 2002) (citing *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972)); *see also Bath Petroleum Storage, Inc. v. Mkt. Hub Partners, L.P.,* 229 F.3d 1135, 1 (2d Cir. 2000) (tbl.) ("Noerr Pennington immunity is applicable to RICO actions and to state-law claims such as fraud and tortious interference"); *Primetime 24 Joint Venture v. Nat'l Broad. Co*., 219 F.3d 92, 100 (2d Cir. 2000) (courts have "extended Noerr–Pennington to encompass concerted efforts incident to litigation," and Noerr–Pennington applies to "good faith litigation to protect a valid copyright"); *Rupert v. Bond*, No. 12-CV-05292-LHK, 2013 WL 5272462, at *8 (N.D. Cal., Sept. 17, 2013) (holding that Noerr–Pennington barred plaintiff's claims against defendants "for their conduct representing parties in a court proceeding."); *Drawsand v. F.F. Properties, L.L.P.,* 866 F. Supp.2d 1110, 1127 (N.D. Cal. 2011) (same); *Klatch-Maynard v. Sugarloaf Twp.*, No. 3:06-cv-845, 2010 WL 5789390, at *1, *12 (M.D. Pa. Nov. 8, 2010), *report and recommendation adopted,* No. 3:06-CV-845, 2011 WL 532168 (M.D. Pa. Feb. 8, 2011) ("a complaint which merely alleges that lawyers agreed to file a lawsuit simply does not state a colorable constitutional claim" and "consistent with the First Amendment, that all persons have a right to petition the courts for the redress of grievances"); *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1186 (9th Cir. 2005) (affirming dismissal of claims against lawsuit because of Noerr-Pennington); *Giles v. Phelan, Hallinan & Schmieg, L.L.P.*, No. CIV.A. 11-6239 JBS/K, 2013 WL 2444036, at *6 (D.N.J. June 4,

2013) ("the Noerr–Pennington doctrine bars Plaintiffs' RICO claims arising out of Defendants' prosecution of the Ocean County Superior Court foreclosure action"). Thus, claims that a law firm filed a Notice of Appeal and made other legal arguments and filings are clearly barred.

The only narrow exception would be if there were an allegation that the litigation was a "sham", which means that "the behavior was 'objectively baseless in the sense that no reasonable [person] could realistically expect success on the merits.'" *Bath Petroleum Storage, Inc.,* 229 F.3d 1135, at *1 (quoting *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus.* Inc., 508 U.S. 49, 51 (1993)); *see also In re Elysium Health-Chromadex Litig.*, 354 F. Supp. 3d 330, 336 (S.D.N.Y. 2019), *as amended* (Feb. 7, 2019); *Kaufman LLC v. Est. of Feinberg*, No. 3:17-CV-958 (VAB), 2024 WL 2113537, at *15 (D. Conn. May 11, 2024). "The sham exception should be construed narrowly so as to avoid intrusion upon, or a chilling of, one's right to petition under the First Amendment." *In re Elysium*, 354 F. Supp. 3d at 336; *Prof'l Real Estate Investors,* 508 U.S. at 56 (1993).

In any event, there is no such allegation here nor could there be given that the Second Circuit denied a motion to dismiss the appeal filed by Rimôn. *See, e.g., Louisiana Health Serv. & Indem. Co. v. Celgene Corp.*, No. 23-CV-7871 (ER), 2025 WL 1056668, at *27 (S.D.N.Y. Apr. 8, 2025) (dismissing for Noerr-Pennington immunity "because the suits were not a sham"); *Agfa Corp. v. United Marketing Grp., Inc.,* No. 02 CIV. 8468 (LAP), 2003 WL 21555087, at * 3 (S.D.N.Y. July 10, 2003) (dismissing for Noerr-Pennington immunity finding no allegation in the complaint that the lawsuit was objectively baseless or a "sham").

Plaintiffs' claims against Rimôn fall squarely within *Noerr-Pennington* as Plaintiffs' claims are about filing a notice of appeal as well as making other filings and arguments. These claims attack the ability to petition the Court – a protected activity that cannot be the basis for liability.

Plaintiffs' claims against Rimôn should be dismissed with prejudice on this basis.

## IV.    PLAINTIFFS' CLAIMS MUST BE DISMISSED BECAUSE THE COMPLAINT IS AN IMPERMISSIBLE GROUP PLEADING

A complaint that merely lumps individual defendants together and recites the elements of claims is called an impermissible "group pleading" and cannot survive a motion to dismiss. *See, e.g., Plusgrade L.P. v. Endava Inc*., No. 21-cv-01530 (MKV), 2023 WL 2402879, at *3 (S.D.N.Y. Mar. 8, 2023) (dismissing group pleading); *Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp.,* 531 F. Supp. 3d 673, 728 (S.D.N.Y. 2021) (group pleading violates FRCP 8(a) as it "fails to give each defendant fair notice of the claims against it"); *Nesbeth v. New York City Mgmt. LLC,* No. 17 Civ. 8650 (JGK), 2019 WL 110953, at *3 (S.D.N.Y. Jan. 4, 2019) (dismissing claim as group pleading); *Atuahene v. City of Hartford*, 10 Fed. App'x. 33, 34 (2d Cir. 2001) (affirming dismissal as Plaintiff "lump[ed] all the defendants together in each claim and provid[ed] no factual basis to distinguish their conduct").  Under either FRCP 8 or FRCP 9, a plaintiff must distinguish each defendant's particular role and provide facts showing how each defendant was allegedly involved in order to enable defendants to understand the claims against them. *See e.g., Banks v. Corr. Servs. Corp.*, 475 F. Supp. 2d 189, 202 (E.D.N.Y 2007); *Atuahene*, 10 Fed. App'x. at 34.

Those pleading principles "appl[y] with even greater force in a fraud case governed by the more stringent pleading requirements of Fed. R. Civ. P. 9(b)." *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994); *Brown v. City of Oneonta*, *New York,* 235 F.3d 769 (2d Cir. 2000).  When multiple defendants are involved, the complaint is required to specifically describe each defendant's alleged participation. *DiVittorio v. Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1247 (2d Cir. 1987).  FRCP  9 is not satisfied by vaguely attributing the alleged fraudulent conduct to the acts of the "defendants." *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993); *DiVittorio*, 822 F.2d at 1247; *Geron v. Reifer (In re Eight-115*

*Assocs., LLC)*, 650 B.R. 43, 56-57 (Bankr. S.D.N.Y. 2023); *In re Crude Oil Commodity Litig.*, No. 06 CIV. 6677 (NRB), 2007 WL 1946553, at *6 (S.D.N.Y. June 28, 2007).

Here, Plaintiffs' allegations against Rimôn are as part of an impermissible group pleading. Rimôn is included with the Law Firm Defendants with the only specific allegation against Rimôn being that it filed a notice of appeal. All claims against Rimôn should be dismissed with prejudice.

## V.    PLAINTIFFS' CLAIM FOR CONVERSION SHOULD BE DISMISSED

To plead a conversion claim, a plaintiff must allege "'[i] the property subject to conversion is a specific identifiable thing; [ii] plaintiff had ownership, possession[,] or control over the property before its conversion; and [iii] defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights.'" *Brown v. Twitter, Automattic Inc.*, No. 19 CIV. 6328 (KPF), 2021 WL 3887611, at *9 (S.D.N.Y. Aug. 31, 2021) (dismissing conversion claim) (quotation omitted); *Bank of Am. Corp. v. Lemgruber*, 385 F. Supp. 2d 200, 222–24 (S.D.N.Y. 2005) (dismissing; "[c]onversion is defined as "an unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights."). An action for conversion can be maintained only by the true owner of the property. *See, e.g., Leveraged Leasing Admin. Corp. v. PacifiCorp Capital, Inc.,* 87 F.3d 44, 50 (2d Cir. 1996) (citing *Aetna Casualty & Surety Co. v. Glass,* 75 A.D.2d 786, 428 N.Y.S.2d 246 (1st Dept. 1980)).

Money in certain circumstances can be the subject of a conversion claim. But, when "the property is money, it must be specifically identifiable and be subject to an obligation to be returned or to be otherwise treated in a particular manner." *Cruz v. TD Bank, N.A.*, 855 F. Supp. 2d 157, 174 (S.D.N.Y. 2012), *aff'd and remanded*, 742 F.3d 520 (2d Cir. 2013). Under New York law, a claim for conversion of a specifically identifiable sum of money must allege that he had "ownership, possession or control of the money before its conversion." *Orlando v. Nxt-ID Inc.,*

No. 20-CV-1604 (MKV), 2021 WL 1143766, at *6 (S.D.N.Y. Mar. 23, 2021) (quoting *ESI, Inc. v. Coastal Power Production, Co.,* 995 F. Supp. 419, 433 (S.D.N.Y. 1998); *Aramony v. United Way,* 949 F. Supp. 1080, 1086 (S.D.N.Y. 1996). When a plaintiff brings a claim for conversion of money, "an action will lie ... where there is a specific, identifiable fund and an obligation to return or otherwise treat in a particular manner the specific fund in question." *Hofmann v. Long Island Univ.*, No. 22-393-CV, 2024 WL 3262819, at *2 (2d Cir. July 2, 2024) (affirming dismissal of conversion "for at least two reasons", *inter alia*, lack of allegation for "specific, identifiable fund"). Funds are specifically identifiable when the funds constitute a "specific sum" that is "determinate and reflects an ascertained amount." *Hyper Bicycles, Inc. v. Acctel, Ltd.*, No. 22CV3308 (DLC), 2023 WL 2267041, at *6 (S.D.N.Y. Feb. 28, 2023) (conversion claim dismissed) (citation omitted).

Plaintiffs' conversion claim fails since Plaintiffs do not allege any facts from which the Court can ascertain whether a conversion actually occurred. This is particularly true concerning Rimôn against whom there is a single specific allegation that it filed an appeal. In fact, the conversion claim against all defendants and certainly against Rimôn is so deficient that it does not satisfy the requirements of FRCP 8 much less the more stringent requirements of FRCP 9(b).

***First***, Plaintiffs do not allege that Rimôn exercised unauthorized dominion over the vaguely identified property in question, to the alteration of its condition or to the exclusion of Plaintiffs' rights. Plaintiffs only allegations of dominion and control by any defendant are in Paragraph 201 alleging that "(i) Plaintiffs' post-Effective Date property, including Charterparty Payments due under the Novum Charterparties, was improperly diverted into bank accounts under the dominion and control of one or more of the Former D&Os and not into accounts under the dominion and control of any of the Plaintiffs; and (ii) the Converted Personal Property, which is critical to Plaintiffs' ability to operate their businesses, was not turned over to the Plaintiffs." Then,

15

in paragraph 203, Plaintiffs allege that "the Former D&Os and the Former Shareholders have exercised dominion over the Converted Funds and the Converted Personal Property, and have treated the Converted Funds and the Converted Personal Property as if they were the owners of the Converted Funds and the Converted Personal Property." These allegations are not against Rimôn at all. There is no allegation that Rimôn exercised any dominion or control over any purportedly converted property. The conversion claim should be dismissed.

*Second*, Plaintiffs definition of purported "Converted Personal Property" consists of "various documents and information [requested] from Reed Smith in an attempt to satisfy the waivable condition precedent to the Effective Date that 'the Debtors' assets, including … the Debtors' books and records, shall have been transferred to Reorganized Holdings." Cplt. ¶117. Rimôn is not alleged to have been in possession of such documents and information and was not alleged to have been directed to produce either. Rimôn is not alleged to have converted any of the "Converted Personal Property." In fact, Plaintiffs allege "upon information and belief, Defendant Vasilis Hadjieleftheriadis is in possession of the Converted Personal Property". Cplt. ¶119.

Moreover, the First Sanctions Motion discussed in paragraph 119 was filed on November 25, 2024, which was approximately two months *prior* to the allegation of Rimôn's filing a Notice of Appeal on January 16, 2025. Rimôn was not included in the First Sanctions Motion and, thus, is not part of the Consummation Order. In any event, it is clear that portion of the conversion claim relating to the "Converted Personal Property" must be dismissed as against Rimôn.

*Third*, the allegations in Complaint ¶¶120-188, the second portion of the conversion claim about the alleged improper activities of the Debtors' Former D&Os regarding various charterparty contracts and interactions with Oaktree and Novum related to the purported "Converted Funds" do not implicate or mention Rimôn by name or even generally implicate or mention the Law Firm

Defendants. Many of the events pre-date Rimôn's alleged involvement in the issues raised in the

Complaint. In a few places, Plaintiffs' intentionally and carelessly use the term "Defendants",

often for generic conclusory statements. In any event, it is clear that none of those allegations can

be an actionable allegation against Rimôn based simply upon their timing and Rimôn's admitted

lack of involvement. That portion of the conversion claim related to charterparty contracts and

interactions with Oaktree and Novum must also be dismissed against Rimôn.

**Fourth**, although Plaintiffs sloppily make the conclusory allegation about "one or more

Defendants" that "more than half a year's worth of revenue (the 'Converted Funds') [have] been

paid … to bank accounts under the control of one or more Defendants … as a result of the Former

D&Os' and the Former Shareholders' improper authorized actions" (Complaint ¶202), the

Complaint does not allege that Rimôn directed or received any of such payments. As noted above,

there is no allegation that Rimôn had any involvement in this issue at all. Plaintiffs also make no

attempt to identify any specific fund or funds that constitute their $63.5 million demand as required

by prevailing precedent as established above. Further, none of the allegations set forth in Plaintiffs'

conversion claim allege that Rimôn actually converted anything. Indeed, Plaintiffs' assertion that

"[t]he Defendants have not complied with demands for the turnover or return of the [undefined]

converted property" (Complaint ¶203) is clearly inapplicable to Rimôn in the absence of any

specific allegation that Rimôn (a) converted that property, and (b) is actually in possession of it.

What Plaintiffs do allege, "upon information and belief", is that, as a group, the Law Firm

Defendants purportedly received some of the Converted Funds from the Former D&Os and the

Former Shareholders. Cplt. ¶198. Again, Plaintiffs do not specify the basis for their "information

and belief" which is insufficient. *See, e.g., Yamashita v. Scholastic Inc.*, 936 F.3d 98, 107 (2d Cir.

2019) (even if pleading upon information and belief, must "marshal more than unsubstantiated

suspicions"); *Ray v. Ray,* 799 F. App'x 29, 31 n. 2 (2d Cir. 2020) (Plaintiff does not have "carte
blanche to make baseless assumptions about otherwise permissible conduct."); *Citizens United v.
Schneiderman*, 882 F.3d 374, 384 (2d Cir. 2018) (affirming dismissal under 12(b)(6)) "upon
information and belief" are not "magic words," and "[a] litigant cannot merely plop 'upon
information and belief' in front of a conclusory allegation and thereby render it non-conclusory.").
Thus, the Complaint fails to adequately plead a claim of conversion against Rimôn and should be
dismissed with prejudice. *Schottenstein v. Lee*, No. 22CV1197 (DLC), 2023 WL 4363002, at *2
(S.D.N.Y. July 6, 2023) (dismissing conversion claim and noting that in determining whether
"funds are 'specifically identifiable' courts have considered 'whether the money was segregated,
the number of transfers involved (or the degree of separation from the plaintiff seeking recovery),
and whether the defendant from which recovery was sought was implicated in the bad acts
alleged.'") (quotation omitted).

Plaintiffs also do not identify the specific amounts that each particular Law Firm Defendant
(including Rimôn) allegedly received, when the allegedly Converted Funds were received, or from
whom they were received or any of the other pleading requirements, including the exercise of
dominion. This too dooms the conversion claim. *See, e.g., Global View Ltd. Venture Capital v.
Great Cent. Basin Exploration, L.L.C.,* 288 F. Supp.2d 473, 480 (S.D.N.Y. 2003) (dismissing
conversion claim where "complaint merely refer[red] to unspecified monies and assets ... in an
amount in excess of $75,000" and where there was "no indication of an identifiable fund or
otherwise segregated amount, nor ... any description of the alleged transfer or transfers from which
the Court could infer a specifically identified fund of money"); *Hi Bar Cap. LLC v. Getter*, No.
22-CV-1743 (ENV) (RML), 2025 WL 2989120, at *6 (E.D.N.Y. Oct. 12, 2025) (conversion claim
dismissed for failure to identify a tangible or specifically identifiable sum of money); *Advanced*

*Knowledge Tech, LLC v. Fleitas*, No. 21-CV-992 (PKC), 2021 WL 6126966, at \*6 (S.D.N.Y. Dec. 28, 2021) (conversion claim that failed to allege a specific, identifiable fund but rather alleged that the allegedly converted funds were among "specific monies meant for Plaintiff" dismissed for lack of specificity).

Plaintiffs have failed to state a claim for conversion against Rimôn.  Plaintiffs plead no facts that even suggest that Rimôn was involved in the alleged conversions.  Quite the contrary is true.  The Complaint alleges that "the Former D&Os and the Former Shareholders have improperly converted the Converted Funds and the Converted Personal Property, causing Plaintiffs damages" (Cplt. ¶209).  Rimôn is never mentioned and, based upon the facts alleged by Plaintiffs, Rimôn was never in a position to convert any of Plaintiffs' property or funds and did not do so. The conversion claim should be dismissed, and for many of the same reasons, the claim for aiding and abetting conversion should also be dismissed as explained below.

## VI.    PLAINTIFFS' CLAIM FOR AIDING AND ABETTING CONVERSION SHOULD BE DISMISSED

To state an aiding and abetting claim, a plaintiff must allege "(1) the existence of a primary violation; (2) knowledge of this violation on the part of the aider and abettor; and (3) substantial assistance by the aider and abettor in the achievement of the primary violation." *Berman v. Morgan Keegan & Co., Inc.*, No. 10 Civ. 5866 (PKC), 2011 WL 1002683, at \*13 (S.D.N.Y. Mar. 14, 2011), *aff'd*, 455 F. App'x 92 (2d Cir. 2012) (quotation omitted); *see also Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC,* No. 17-cv-307(PKC), 2021 WL 4460547, at \*16 (S.D.N.Y. Sept. 29, 2021), *amended*, No. 17-CV-307 (PKC), 2021 WL 4710787 (S.D.N.Y. Oct. 7, 2021); *Chemtex, LLC v. St. Anthony Enterprises, Inc.* 490 F. Supp.2d 536, 546 (S.D.N.Y. 2007).  Even if Plaintiffs have alleged conversion by some other defendant or defendants, Plaintiff have failed to plausibly and sufficiently allege that Rimôn had actual knowledge of any conversion and/or that Rimôn

substantially assisted in any such conversion.

*First*, "New York common law, which controls the analysis here, has not adopted a constructive knowledge standard for imposing aiding and abetting liability.  Rather, New York courts and federal courts in this district, have required actual knowledge." *Kolbeck v. LIT Am., Inc.*, 939 F. Supp. 240, 246 (S.D.N.Y. 1996), *aff'd*, 152 F.3d 918 (2d Cir. 1998); *see also Zamora v. FIT Int'l Grp. Corp.*, 834 F. App'x 622, 627 (2d Cir. 2020) (aiding and abetting requires "'actual knowledge'" of the misconduct at issue."); *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292 (2d Cir. 2006) ("actual knowledge is required to impose liability on an aider and abettor under New York law").  Mere "constructive knowledge" of the purported misconduct does not satisfy the "actual knowledge" inquiry.  *Zamora*, 834 F. App'x at 627; *In re Agape Litig.*, 773 F. Supp. 2d 298, 309–13, 325–26 (E.D.N.Y. 2011) (aiding and abetting conversion).  A plaintiff must allege facts demonstrating that the defendant had "actual knowledge of the underlying harm" (*i.e.*, the alleged conversion) or was willfully blind to it.  *See, e.g., Kirschner v. Bennett*, 648 F. Supp. 2d 525, 544 (S.D.N.Y. 2009).  When, as here, allegations sound in fraud, a plaintiff must plead facts raising a strong inference of actual knowledge as required by FRCP 9(b).  *See Zamora*, 834 F. App'x at 627.

Conclusory allegations that a defendant knew, should have known, or must have known about the alleged conversion or fraudulent conduct are flatly insufficient.  *See Zamora*, 834 F. App'x at 627-28.  Consequently, failure to adequately allege actual knowledge of the alleged conversion requires dismissal of the claim.  *See generally In re Agape Litig.*, 773 F. Supp. 2d at 308 ("Statements alleging that that a defendant 'should have known that something was amiss with [ ] transactions,' even if pled with conclusory statements that the defendant 'actually knew something notwithstanding ... [are] insufficient to support an aiding-and-abetting claim under New York law.'") (quotation omitted); *see also Rise Dev. Partners, LLC v. Signature Bank*, No. 23-CV-

4242 (JGK), 2024 WL 4555758, at *4-5 (S.D.N.Y. Oct. 22, 2024) (dismissing aiding and abetting claims where plaintiffs "alleged nothing to show that the defendants had actual knowledge of [alleged] conduct or took 'affirmative steps' to enable it"); *Wyse v. Metro. Com. Bank*, No. 24 CIV. 9108 (PAE), 2025 WL 2208161, at *20 (S.D.N.Y. Aug. 4, 2025) ("[A]s in the context of pleading a primary violation, pleading knowledge for purposes of an aiding and abetting claim requires allegations of facts that give rise to a 'strong inference' of actual knowledge."); *Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 411 (S.D.N.Y. 2021).

Here, there is no specific allegation about any actual knowledge that Rimôn had of any alleged conversion (there is only one specific allegation about Rimôn at all). There are conclusory insufficient and irrelevant allegations about certain knowledge of the Law Firm Defendants (which includes Rimôn), namely that (a) the Law Firm Defendants "are aware of the Court's Confirmation Order" and its use of the term "Related Parties" and certain obligations of that order (Cplt. ¶¶193-197); (b) "upon information and belief", the Law Firm Defendants have "been knowingly paid with the converted funds" with no factual basis provided for this conclusory speculation about any Law Firm Defendant (*id.* ¶198); and (c) the Law Firm Defendants "are also aware that the Former D&Os have unlawfully converted Holdings' property and have refused to turn the Converted Funds and/or the Converted Personal Property over to Holdings' true owners." (*id.* ¶198).

Knowledge of the Confirmation Order is not knowledge of any wrongdoing. Conclusory statements that have no support about knowledge of payments and purported wrongdoing by the Former D&O's are clearly insufficient to plausibly allege actual knowledge by Rimôn of any wrongdoing. *See, e.g., Zamora*, 834 F. App'x at 627-28; *In re Agape Litig.*, 773 F. Supp. 2d at 308; *Wyse*, 2025 WL 2208161, at *21 ("Generalized "labels and conclusions," however, "will not do." With those put aside, the Complaint does not plead specific facts plausibly supporting that [defendant] had actual knowledge of [the] allegedly fraudulent conduct).

21

Moreover, there is not a single allegation that Rimôn knew about or was involved in any of the alleged actions that purport to be any wrongdoing here. Rimôn is accused of making filings and arguments in Court and nothing else. As detailed above, Rimôn is not alleged to have been involved in the unspecified "Defendants'" purported conversion of either Personal Property or Converted Funds at all (other than in the conclusory group allegations). The aiding and abetting conversion claim should be dismissed against Rimôn with prejudice on this basis.

**Second,** there is no plausible non-conclusory allegation that Rimôn "substantially assisted the primary wrongdoer." *In re Level 8 Apparel, LLC,* No. 16-13164 (JLG), 2021 WL 279620 (Bankr. S.D.N.Y. Jan. 26, 2021) ("Mere inaction does not amount to 'substantial assistance' for purposes of fixing aiding and abetting liability"); *In re Adelphia Commc'ns Corp.*, 324 B.R. 492, 501 (Bankr. S.D.N.Y. 2005) (same). "Substantial assistance occurs when a defendant affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur." *Lerner*, 459 F.3d at 295 (citation omitted). "'Substantial assistance requires the plaintiff to allege that the actions of the aider/abettor proximately caused the harm on which the primary liability is predicated'. . . . That is, the injury must 'be a direct or reasonably foreseeable result of the conduct.'" *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 345 (2d Cir. 2018); *Bigio v. Coca-Cola Co.*, 675 F.3d 163, 173-174 (2d Cir. 2012) (allegation that defendants "knowingly and substantially assisted the principal violations committed by their subsidiaries, affiliates, and co-conspirators," are conclusory and insufficient to "state a claim" for aiding and abetting); *Kirschner,* 648 F. Supp. 2d at 544 (S.D.N.Y. 2009) (allegations required are that "defendants rendered 'substantial assistance' such that they 'affirmatively assist[ed], help[ed] conceal, or by virtue of failing to act when required to do so enable[d] the [underlying harm] to proceed'").

As detailed herein, there are no specific allegations about Rimôn assisting any conversion.

There are a few conclusory unsupported allegations the Law Firm Defendants (as a group that is alleged to include Rimôn) that are facially insufficient to meet the pleading standard. Those allegations are that (a) the conversion has been "substantially assisted" by the Law Firm Defendants" who have acted in violation of the Plan and Confirmation Order, among other orders, in order to sow doubt as to whether Eletson is under the New Board's control and facilitate the conversion (Cplt. ¶189); (b) the Law Firm Defendants "have each made various filings and arguments seeking to overturn the Confirmation Order and/or obstruct implementation of the Plan (*id.* ¶197); (c) the Law Firm Defendants have "substantially assisted" the Former D&Os conversion (*id.* ¶199); (d) the Law Firm Defendants "have substantially assisted in the conversion of the Converted Funds and the Converted Personal Property by proximately causing such conversion" by "filing the various legal challenges to the legitimacy of existing ownership and management of Holdings" (*id.* ¶211); and (e) that "upon information and belief", the Law Firm Defendants "have also been knowingly paid with the converted funds." (*id.* ¶198).

The fact that Plaintiffs used the words "substantially assist" and "proximately caused" but provide no facts or other details is precisely the type of conclusory pleading that is insufficient to allege substantial assistance. The only specific allegation against Rimôn is that it filed a Notice of Appeal and has been involved in subsequent proceedings now being considered by the Second Circuit. As part of the undifferentiated group of Law Firm Defendants, it is alleged that Rimôn (like the other Law Firm Defendants) made other unspecified filings and arguments to courts and passively received money that Plaintiffs "believe", with no factual basis, to have been from what they call Converted Funds.

Even if the passive receipt of payment for legal services could constitute "aiding and abetting conversion" (which it cannot), the Complaint does not plead any actual facts regarding

the source of the payments to Rimôn.  Further, it does not even attempt to establish any tracing of

the unidentified "funds" that Plaintiffs allege were converted by Rimôn as Plaintiffs' property.  Nor

can the filing of legal proceedings, even if ultimately unsuccessful, be considered aiding and

abetting actions occurring elsewhere that are not alleged to be part of the legal proceedings.

Indeed, based upon Plaintiffs' own allegations, Rimôn did not take any affirmative action with

regard to any alleged conversion (which happened in undisclosed ways and at undisclosed times).

There is no sufficient plausible allegation of substantial assistance including proximate causation.

Thus, the aiding and abetting conversion claim against Rimôn should be dismissed with prejudice.

*See, e.g., Lerner*, 459 F.3d at 295; *SPV*, 882 F.3d at 345; *Bigio*, 675 F.3d at 173-174.

## VII.    PLAINTIFFS' CLAIM FOR BREACH OF CONTRACT SHOULD BE DISMISSED

For a breach of contract claim, a plaintiff must plead plausible facts to support (a) the

existence of an agreement, (b) plaintiffs' performance, (c) defendant's failure to perform, and (d)

damages resulting thereby.  *Up State Tower Co., LLC v. Town of Cheektowaga*, No. 24-165-CV,

2025 WL 444207, at *1 (2d Cir. Feb. 10, 2025) (affirming dismissal of breach of contract claim).

The existence of an agreement requires allegations demonstrating, *inter alia*, mutual assent to

terms of such agreement.  *CAC Grp., Inc. v. Maxim Grp., LLC*, No. 12 CIV. 5901 KBF, 2012 WL

4857518, at *3-4 (S.D.N.Y. Oct. 10, 2012), *aff'd*, 523 F. App'x 802 (2d Cir. 2013) ("mutual assent

is essential to the formation of a contract" and no contract "if there was no assent or acceptance";

claim dismissed); s*ee also Annabi v. New York University*, No. 22-CV-3795 (LJL), 2023 WL

6393422, at *6 (S.D.N.Y. Sept. 29, 2023) (claim dismissed; "enforceable contract" requires "'an

offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound' . . . . Mutual

assent is manifested in 'a meeting of the minds.'") (citations omitted).  Plaintiffs have not alleged

a breach of contract claim against Rimôn and cannot do so.

First, Plaintiffs have not alleged the existence of an agreement between any of them and

Rimôn.  In fact, as an initial matter, they have not alleged the existence of any contract at all.  The

purported contract is alleged to be the "Plan" (Cplt. ¶213) which is defined in Paragraph 7 as the

"chapter 11 plan for the Debtors" which was confirmed by the Court November 4, 2024 order.  *Id.*

¶¶7, 44).  However, a court order confirming a plan and the plan itself are not a contract for which

there is an independent action for a breach.  While some courts have analogized a plan to a contract

for purposes of plan interpretation, it is not an actual contract pursuant to contract law principles.

*See, e.g.*, *In re Frontier Ins. Group, Inc.*, 585 B.R. 685, 693 (Bankr. S.D.N.Y. 2018), *aff'd*, 598

B.R. 87 (S.D.N.Y. 2019) ("References to chapter 11 plans as contracts or agreements—while

useful for purposes of interpreting plans … are only by analogy, however.") (citation omitted).

The plan is not a contract that can be enforced with a breach of contract claim.

> The binding effect of a chapter 11 plan is in fact premised on statutory and common
> law claim preclusion. That is, for the debtor, its creditors and holders of interests,
> the chapter 11 plan is the crucible by which the parties' claims and rights in property
> dealt with by the plan are transformed and governed post-confirmation—a "super-
> contract"—not because it is signed by all of the parties with claims against the
> debtor and holders of interests affected by the plan who participated in the case, but
> because of applicable provisions of the Bankruptcy Code and principles of *res
> judicata*.

*Id.; see also Bel Air Tollgate Pshp v. Bel Air Square Joint Venture* (*In re Bel Air Square Joint*

*Venture*), No. 95-1404, 1996 WL 19152, at *2 (2d Cir. Jan. 16, 1996) ( "[t]he provisions of a

confirmed Chapter 11 reorganization plan bind each and every creditor, regardless of whether the

plan impairs the creditor's claim, and regardless of whether the creditor accepted the plan."); *In re*

*18th Ave. Realty, Inc.*, No. 03-14480(RDD), 2010 WL 1849403, at *4–5 (Bankr. S.D.N.Y. May 7,

2010); *Cavadi v. Bank of Am., N.A.*, No. CV-07-224-PB, 2008 WL 901403, at *3 (D.N.H. Apr. 1,

2008) (rejecting argument that violating a court order created a private right of action because the

order "created a constructive contract" and noting "the appropriate method for dealing with a

party's alleged violation of a court order is not to seek contract damages for violation of an

imaginary covenant, but rather to invoke the court's contempt powers"); *In re MTE Holdings LLC*, No. 19-12269 (CTG), 2021 WL 3743201, at *7 (Bankr. D. Del. Aug. 17, 2021) (appropriate method of seeking enforcement of court order is through a sanctions motion, as codified, in the bankruptcy context, in 11 U.S.C. § 105(a)).

Second, even if the Plan were a contract, the cases that discuss using a contract analogy in connection with a bankruptcy plan are clear that, even then, the analogy is that the plan only binds debtors and creditors. *See, e.g., In re Frontier Ins. Grp., Inc.*, 585 B.R. at 693 ("[i]t is often stated that a chapter 11 plan is a new contract between the debtor and its creditors, albeit one signed only by the plan proponent"); *In re Levelbest, LLC*, No. 19-11673, 2023 WL 187631, at *6 (Bankr. N.D.N.Y. Jan. 13, 2023); *In re Ditech Holding Corp.*, 606 B.R. 544, 586 (Bankr. S.D.N.Y. 2019). Rimôn is neither. Moreover, Rimôn was not involved in this matter at all on November 4, 2024; the allegation here is that it became involved on January 16, 2025 when it filed a Notice of Appeal. Thus, Rimôn could not become bound by a contract it did not sign and, at best, is alleged to have been binding as a contract on a client that Rimôn is not alleged to have had at the time the purported contract was formed. Without a binding contract, there can be no claim for a breach of contract.

Third, even if the Court determines that the Plan is a contract and for some reason Rimôn is a party to that contract, there is no adequate allegation of any breach or even any specification of any alleged breach by Rimôn. The only specific allegation against Rimôn is that it filed a Notice of Appeal. That Appeal has led to a process where the Second Circuit is now considering that appeal after denying Reorganized Holdings' motion to dismiss. This cannot be a breach. As part of the undifferentiated group of Law Firm Defendants, it is alleged that Rimôn (like the other Law Firm Defendants) made other unspecified filings and arguments to courts and passively received money that Plaintiffs believe with no factual basis to have been from what they call Converted

26

Funds.  None of that can be a breach of contract either and there is no basis to call acting and being paid to represent clients a "breach of contract".  This is particularly true where the filings and arguments are part of a legitimate litigation process.  Plaintiffs try to mislead this Court by acting as if this Court has found that Rimôn (or any of the Defendant Law Firms) have been found to be acting inappropriately.  Specifically, Plaintiffs allege in Paragraph 1 of the Complaint that "[t]he breaches of contract are equally clear: this Court has held on at least four occasions that the Defendants are in ongoing breach of the chapter 11 plan—a binding contract."  This is clearly wrong.  This Court has not found that Rimôn or any of the Law Firm Defendants have done anything wrong.  While Plaintiffs have moved the Court to sanction Reed Smith, Rimôn, and the Daniolos Law Firm (three of the four Law Firm Defendants), the Court has denied those motions. There has been no breach by Rimôn and no plausible or actionable breach has been alleged.

Finally, Plaintiffs not plausibly plead in a non-conclusory fashion that any purported breach by Rimôn was the "but for" cause of Plaintiffs' damages.  *See House of Europe Funding I, Ltd*., *v. Wells Fargo Bank, N.A*., No. 13 CIV. 519 RJS, 2014 WL 1383703, at *10-11 (S.D.N.Y. Mar. 31, 2014) (dismissing breach of contract claim because "conclusory" allegations of "financial harm" are insufficient to allege plaintiffs "bore any of the loss" from defendant's breach).

The breach claim against Rimôn should be dismissed with prejudice for these reasons.

## VIII.  PLAINTIFFS' CLAIM FOR TORTIOUS  INTERFERENCE WITH CONTRACT SHOULD BE DISMISSED

The elements of tortious interference with contractual relations are "(1) the existence of a valid contract between the plaintiff and a third party, (2) defendant's knowledge of that contract, (3) defendant's intentional procurement of the third-party's breach of the contract without justification, (4) actual breach of the contract, and (5) damages resulting therefrom." *McKenzie-Morris v. V.P. Recs. Retail Outlet, Inc.*, No. 1:22-CV-1138-GHW, 2022 WL 18027555, at *7

(S.D.N.Y. Dec. 30, 2022) (dismissing tortious interference with contract claim); *see also Manbro Energy Corp. v. Chatterjee Advisors, LLC*, No. 20 CIV. 3773 (LGS), 2021 WL 2037552, at *7 (S.D.N.Y. May 21, 2021) (complaint "alleges no facts that plausibly show that each of the three Secondary Defendants procured the breach, that they did so intentionally and that their actions were the "but for" cause of the alleged breach", only allegations attempting so were "conclusory and not entitled to be assumed true"[;] "These allegations are insufficient."); *State St. Glob. Advisors Tr. Co. v. Visbal*, 431 F. Supp. 3d 322, 351–52 (S.D.N.Y. 2020) (tortious interference claim dismissed); *Oddo Asset Mgmt. v. Barclays Bank PLC,* 19 N.Y.3d 584, 594–95 (N.Y. 2012).

"The Second Circuit in both *International Minerals & Resources, S.A. v. Pappas,* 96 F.3d 586, 595 (2d Cir. 1996) and *Jews for Jesus, Inc. v. Jewish Community Relations Council of New York,* 968 F.2d 286, 292 (2d Cir. 1992) noted that to determine whether the interference was 'without justification' or 'improper,' the New York Court of Appeals has balanced the factors set forth in *Restatement (Second) of the Law of Torts* (1979), §767, which include the nature of the conduct of the person who interferes, the interest of the party being interfered with, the relationship between the parties, the motive and interests sought to be advanced by the one who interferes, the social interests in protecting the freedom of action of that person, the contractual interests of the party interfered with and the proximity or remoteness to the interference of the conduct complained of." *Cerveceria Modelo, S.A. De C.V. v. USPA Accessories LLC*, No. 07 CIV. 7998 (HB), 2008 WL 1710910, at *4 (S.D.N.Y. Apr. 10, 2008) (dismissing tortious interference claim).

Here, Plaintiffs have not made a single allegation that ties Rimôn to the alleged tortious interference at all and certainly no adequate allegation of knowledge or intentional procurement. Specifically, Plaintiffs allege that the relevant contracts for this claim of "Plaintiffs' subsidiaries, Kastos and Fourni" who it is alleged "have valid ongoing contracts" with Novum "consisting of

28

the Novum Charterparties and their amendments and addenda." Novum is alleged to have "agreed

to make Charterparty Payments to the Berenberg Account under the First Charterparty Addenda."

Cplt. ¶218. However, the details of these contracts are presented at paragraphs 120-188 of the

Complaint and neither Rimôn nor the Law Firm Defendants are mentioned in those paragraphs at

all. There is no alleged connections between Rimôn and either Kastos or Fourni or their contracts

or the sequence of events alleged in paragraphs 120-188. Yet, astonishingly, and with no basis,

Plaintiffs (in characteristically intentionally sloppy fashion) allege that "Defendants have had

actual knowledge of the existence of those contracts and had actual knowledge of the specific

terms relating to the banking instructions" and that:

> Defendants, through their wrongful conduct as described above, have intentionally
> procured Novum's breaches of the contracts without justification by engaging in a
> wrongful scheme to have Novum change the banking instructions to remit
> Charterparty Payments to accounts controlled by the Former D&Os. Indeed, the
> Novum Charterparties were breached when Novum agreed to change the banking
> instructions to accounts controlled by the Former D&Os. Further, it was
> Defendants' objective, through their intentional conduct with Novum, to procure
> such a breach in order to have control over the Converted Funds.

Complaint ¶¶219-20. First, this is a paradigmatic example of a conclusory threadbare group

pleading that merely mimics the words from the pleading standard and pleads conclusions rather

than facts. Second, even worse, by making that allegation against all twenty defendants, they

contradict the specific paragraphs that only mention some of the defendants (and even then do not

state a claim). The claim is clearly deficient against Rimôn as there are no specific allegations

relating to (a) Rimôn, (b) its alleged "actual knowledge" of the contracts that Plaintiffs' claim were

breached or (c) the nature, extent, and timing of its alleged conduct that purportedly procured the

alleged breach. There are no non-conclusory actionable claims of knowledge of these contracts,

intentional procurement of breach, or causation of damages. *Taboola, Inc. v. Ezoic Inc.*, No. 17

CIV. 9909 (PAE) (KNF), 2020 WL 1900496, at *10 (S.D.N.Y. Apr. 17, 2020) (dismissing

counterclaim because plaintiffs' "conclusory assertions of knowledge" of the contract were insufficient). Without more, Plaintiffs' allegations merely present a legal conclusion that cannot survive a motion to dismiss. *In re George Washington Bridge Bus Station Dev. Venture LLC*, No. 19-13196 (DSJ), 2022 WL 4653117, at *13 (Bankr. S.D.N.Y. Sept. 30, 2022) (dismissing claim for tortious interference as "allegations are too conclusory and speculative"). A defendant cannot be liable for interfering with a contract it does not know exists. *See, e.g., Medtech Prods. Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778, 796-97 (S.D.N.Y. 2008) (dismissing tortious interference claim where pleadings were "wholly conclusory" that defendant "knew of the contracts at issue" and in any event, conclusory pleadings were "hardly consistent with the conclusory claim" that defendant "had actual knowledge of the contracts with which it allegedly interfered"). The few allegations in the Complaint about Rimôn are limited to different issues. The claims for tortious interference with contract against Rimôn should be dismissed with prejudice.

**CONCLUSION**

For the foregoing reasons, Rimôn respectfully requests that the Court dismiss the Complaint against Rimôn with prejudice.

DATED: November 24, 2025
      New York, New York

RIMÔN, P.C.

/s/ *Michael S. Lazaroff*
Michael S. Lazaroff
400 Madison Ave, Suite 11D
New York NY 10017
(646) 738-4151a
michael.lazaroff@rimonlaw.com

Anthony C. Acampora
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300
anthony.acampora@rimonlaw.com

*Rimôn, P.C.*