Lawrence M. Rolnick
Richard A. Bodnar
Frank T.M. Catalina
Justin B. Harris
ROLNICK KRAMER SADIGHI LLP
PENN 1, Suite 3401
One Pennsylvania Plaza
New York, New York 10119
Tel.: 212.597.2800
Fax: 212.597.2801
E-mail: lrolnick@rksllp.com
rbodnar@rksllp.com
fcatalina@rksllp.com
jharris@rksllp.com

*Counsel for Defendants Majority Shareholders*
*and Elafonissos Shipping Corporation*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>ELETSON HOLDINGS INC. *et al.*,<br><br>Debtors. [1] | Chapter 11<br>Case No. 23-10322 (JPM)<br>(Jointly Administered) |
| ELETSON HOLDINGS INC.; ELETSON CORPORATION; ELETSON CHARTERING INC.; EMC INVESTMENT CORPORATION; KASTOS SPECIAL MARITIME ENTERPRISE; FOURNI SPECIAL MARITIME ENTERPRISE; KINAROS SPECIAL MARITIME ENTERPRISE; and KIMOLOS II SPECIAL MARITIME ENTERPRISE,<br><br>Plaintiffs, | Adv. Pro. No. 25-01120 (JPM)<br><br>Return Date:  TBD<br>Responsive Papers Due:  12/23/2025 |

---

[1] Prior to November 19, 2024, the Debtors in these cases were: Eletson Holdings Inc., Eletson Finance (US) LLC, and Agathonissos Finance LLC.  On [March 5, 2025], the Court entered a final decree and order closing the chapter 11 cases of Eletson Finance (US) LLC and Agathonissos Finance LLC.  Commencing on [March 5, 2025], all motions, notices, and other pleadings relating to any of the Debtors shall be filed in the chapter 11 case of Eletson Holdings Inc.  The Debtor's mailing address is c/o Herbert Smith Freehills Kramer, 1177 Avenue of the Americas, New York, NY 10036.

-against-

VASSILIS KERTSIKOFF; VASILIS
HADJIELEFTHERIADIS; LASCARINA
KARASTAMATI; KONSTANTINOS
HADJIELEFTHERIADIS; IOANNIS ZILAKOS;
EMMANUEL ANDREOULAKIS; ADRIANOS
PSOMADAKIS; PANOS PAXINOS; ELENI
GIANNAKOPOULOU; NIKI ZILAKOU; LASSIA
INVESTMENT COMPANY; GLAFKOS TRUST
COMPANY; FAMILY UNITY TRUST
COMPANY; ELAFONISSOS SHIPPING
CORPORATION; KEROS SHIPPING
CORPORATION; REED SMITH LLP; LEX
GROUP LIBERIA LLC; DANIOLOS LAW FIRM;
JOHN MARKIANOS-DANIOLOS; and RIMON
P.C.,

                    Defendants.

---

**NOTICE OF THE MOTION OF DEFENDANTS LASSIA INVESTMENT COMPANY, GLAFKOS TRUST COMPANY, FAMILY UNITY TRUST COMPANY, AND ELAFONISSOS SHIPPING COMPANY TO DISMISS THE COMPLAINT**

**PLEASE TAKE NOTICE** that, upon the accompanying Memorandum of Law, and as well as the Declaration of Justin Harris and the exhibit attached thereto, and upon all prior pleadings and proceedings had herein, Defendants Lassia Investment Company, Glafkos Trust Company, Family Unity Trust Company, and Elafonissos Shipping Company move this Court, before the Honorable John P. Mastando, at the United States Bankruptcy Courthouse, One Bowling Green., New York, NY, for an Order dismissing the Complaint (Dkt. No. 1), dated July 30, 2025, pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, and 12(b)(6) for failure to state a claim upon which relief can be granted, and granting such other and further relief as the Court deems just and proper.

Dated: November 24, 2025
New York, New York

Respectfully submitted,

*/s/ Lawrence M. Rolnick*

Lawrence M. Rolnick
Richard A. Bodnar
Frank T.M. Catalina
Justin B. Harris
Rolnick Kramer Sadighi LLP
PENN 1, Suite 3401
One Pennsylvania Plaza
New York, New York 10119
Tel.: 212.597.2800
Email: lrolnick@rksllp.com
rbodnar@rksllp.com
fcatalina@rksllp.com
jharris@rksllp.com

*Counsel for Defendants Majority Shareholders and Elafonissos Shipping Corporation*

Lawrence M. Rolnick
Richard A. Bodnar
Frank T.M. Catalina
Justin B. Harris
ROLNICK KRAMER SADIGHI LLP
PENN 1, Suite 3401
One Pennsylvania Plaza
New York, New York 10119
Tel.: 212.597.2800
Fax: 212.597.2801
E-mail: lrolnick@rksllp.com
rbodnar@rksllp.com
fcatalina@rksllp.com
jharris@rksllp.com

*Counsel for Defendants Majority Shareholders*
*and Elafonissos Shipping Corporation*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>ELETSON HOLDINGS INC. *et al.,*<br><br>Debtors. [2] | Chapter 11<br>Case No. 23-10322 (JPM)<br>(Jointly Administered) |
| ELETSON HOLDINGS INC.; ELETSON CORPORATION; ELETSON CHARTERING INC.; EMC INVESTMENT CORPORATION; KASTOS SPECIAL MARITIME ENTERPRISE; FOURNI SPECIAL MARITIME ENTERPRISE; KINAROS SPECIAL MARITIME ENTERPRISE; and KIMOLOS II SPECIAL MARITIME ENTERPRISE,<br><br>Plaintiffs, | Adv. Pro. No. 25-01120 (JPM)<br><br>Return Date:  TBD<br>Responsive Papers Due:  12/23/2025 |

---

[2] Prior to November 19, 2024, the Debtors in these cases were: Eletson Holdings Inc., Eletson Finance (US) LLC, and Agathonissos Finance LLC.  On [March 5, 2025], the Court entered a final decree and order closing the chapter 11 cases of Eletson Finance (US) LLC and Agathonissos Finance LLC.  Commencing on [March 5, 2025], all motions, notices, and other pleadings relating to any of the Debtors shall be filed in the chapter 11 case of Eletson Holdings Inc.  The Debtor's mailing address is c/o Herbert Smith Freehills Kramer, 1177 Avenue of the Americas, New York, NY 10036.

-against-

VASSILIS KERTSIKOFF; VASILIS
HADJIELEFTHERIADIS; LASCARINA
KARASTAMATI; KONSTANTINOS
HADJIELEFTHERIADIS; IOANNIS ZILAKOS;
EMMANUEL ANDREOULAKIS; ADRIANOS
PSOMADAKIS; PANOS PAXINOS; ELENI
GIANNAKOPOULOU; NIKI ZILAKOU; LASSIA
INVESTMENT COMPANY; GLAFKOS TRUST
COMPANY; FAMILY UNITY TRUST
COMPANY; ELAFONISSOS SHIPPING
CORPORATION; KEROS SHIPPING
CORPORATION; REED SMITH LLP; LEX
GROUP LIBERIA LLC; DANIOLOS LAW FIRM;
JOHN MARKIANOS-DANIOLOS; and RIMON
P.C.,

Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF LASSIA INVESTMENT COMPANY, GLAFKOS TRUST COMPANY, FAMILY UNITY TRUST COMPANY, AND ELAFONISSOS SHIPPING COMPANY TO DISMISS THE COMPLAINT

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ................................................................ 1

BACKGROUND ...................................................................................... 2

    A.    THE PARTIES AND BANKRUPTCY FILING ....................................... 2

    B.    THE BANKRUPTCY PLAN AND CONFIRMATION ORDER ............. 4

    C.    THE CONDUCT OF UNREORGANIZED HOLDINGS' SHAREHOLDERS AFTER ENTRY OF THE CONFIRMATION ORDER ................................................................................................ 6

    D.    THE ADVERSARY PROCEEDING ........................................................ 8

ARGUMENT ............................................................................................ 9

    I.    THE COURT LACKS PERSONAL JURISDICTION OVER ELAFONISSOS ... 9

    A.    LEGAL STANDARD ............................................................................. 9

    B.    DUE PROCESS PRECLUDES FINDING PERSONAL JURISDICTION .... 10

    C.    ELAFONISSOS' CONTACTS WITH THE U.S. ARE INSUFFICIENT ....... 10

    D.    EXERCISING JURISDICTION OVER ELAFONISSOS WOULD BE UNREASONABLE ............................................................................... 13

    II.    PLAINTIFFS FAIL TO STATE A CLAIM AGAINST ANY OF THE MAJORITY SHAREHOLDERS OR ELAFONISSOS ...................................... 15

    A.    LEGAL STANDARD ........................................................................... 15

    B.    THE COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT (COUNT 3) ...................................................................... 16

        1.    Plaintiff's claim concerns breach of a Court order, not a contract 16

        2.    The contract does not bind Defendants yet, as the conditions precedent to its Effective Date remain unfulfilled and unwaived. 17

    C.    THE COMPLAINT FAILS TO STATE CLAIMS FOR CONVERSION OR TORTIOUS INTERFERENCE WITH CONTRACT (COUNTS 1, 2, AND 4) AGAINST THESE DEFENDANTS ....................................................................................... 20

1.   Plaintiffs' improper group pleading violates Rule 8...................... 20

2.   The conversion pleadings are insufficient ..................................... 24

3.   The tortious interference with contract pleadings are insufficient 26

III.   PLAINTIFFS' CLAIMS AGAINST THE MAJORITY SHAREHOLDERS AND ELAFONISSOS SHOULD BE DISMISSED WITH PREJUDICE BECAUSE AMENDMENT WOULD BE FUTILE............................................. 28

CONCLUSION...................................................................................................... 29

## <u>TABLE OF AUTHORITIES</u>

<u>PAGE(s)</u>

**Cases**

*Am. Fed'n of State, Cnty. & Mun. Emps. Dist. Council 37 Health & Sec. Plan v. Bristol-Myers Squibb Co.*,
 948 F. Supp. 2d 338 (S.D.N.Y. 2013) ................................................................. 15, 25, 27

*Am. Girl, LLC v. Zembrka*,
 118 F.4th 271 (2d Cir. 2024) ......................................................................................... 9

*Amsterdam Key Assocs. LLC v. Blakely (In re 477 W. 142nd St. Housing, Dev. Fund Corp.)*,
 2020 WL 3067733 (Bankr. S.D.N.Y. Jun. 8, 2020) ..................................................... 19

*Aquiline Cap. Partners LLC v. FinArch LLC*,
 861 F. Supp. 2d 378 (S.D.N.Y. 2012) ..................................................................... 14, 15

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ............................................................................................. 15, 25, 27

*Atuahene v. City of Hartford*,
 10 F. App'x 3 (2d Cir. 2001) ....................................................................................... 20

*Axiom Inv. Advisors, LLC by & through Gildor Mgmt., LLC v. Deutsche Bank AG*,
 234 F. Supp. 3d 526 (S.D.N.Y. 2017) .......................................................................... 16

*Bardwil Indus. Inc. v. Kennedy*,
 No. 19 CIV. 8211 (NRB), 2020 WL 5633159  (S.D.N.Y. Sept. 21, 2020) ..................... 20

*Bell Atlantic Corp. v. Twombly*,
 550 U.S. 544 (2007) ..................................................................................................... 15

*Brown v. Lockheed Martin Corp.*,
 814 F.3d 619 (2d Cir. 2016) ........................................................................................ 11

*Citadel Equity Fund Ltd. v. Aquila, Inc.*,
 168 Fed. App'x 474 (2d Cir. 2006) .............................................................................. 19

*Daimler AG v. Bauman*,
 571 U.S. 117 (2014) ..................................................................................................... 11

*Electra Aviation, Inc. v. European Org. for the Safety of Air Navigation (In re EAL (Delaware) Corp.)*,
 No. 93-578-SLR, 1994 WL 828320 (D. Del. Aug. 3, 1994) ......................................... 12

*Eletson Holdings, Inc. v. Levona Holdings Ltd.*,
 731 F. Supp. 3d 531 (S.D.N.Y. 2024) ............................................................................ 3

*Fei v. WestLB AG,*
No. 07CV8785(HB)(FM), 2008 WL 594768 (S.D.N.Y. Mar. 5, 2008) ......................... 28

*Foman v. Davis,*
371 U .S. 178 (1962) ............................................................................................... 28

*Gayle v. Home Box Off., Inc.,*
No. 17-cv-5867 (JMF), 2018 WL 2059657 (S.D.N.Y. May 1, 2018) ............................ 28

*Geswaldo v. Gottlieb,*
No. 1:24-CV-02543 (AT) (SDA), 2025 WL 763995 (S.D.N.Y. Jan. 14, 2025).............. 16

*Goetz v. Ainsworth Pet Nutrition, LLC,*
768 F. Supp. 3d 645 (S.D.N.Y. 2025)........................................................................ 15

*Goodyear Dunlop Tires Ops., S.A. v. Brown,*
564 U.S. 915 (2011).................................................................................................. 11

*Housey v. Proctor & Gamble Co.,*
No. 22-888-cv, 2022 WL 17844403 (2d Cir. Dec. 22, 2022)...................................16, 17

*In re Aluminum Warehousing Antitrust Litig.,*
No. 12-md-2481, 2015 WL 1344429 (S.D.N.Y. Mar. 23, 2015) ................................... 23

*In re Glob. Fertility & Genetics, New York, LLC,*
663 B.R. 584 (Bankr. S.D.N.Y. 2024).................................................................... 18

*In re Lehigh Valley Pro. Sports Clubs, Inc.,* No. 00-11296DWS,
2000 WL 567905 (Bankr. E.D. Pa. May 5, 2000) ........................................................ 18

*In re Nelkin & Nelkin P.C.,*
662 B.R. 550 (Bankr. S.D. Tex. 2024) ...................................................................... 18

*In re Sledziejowski,*
No. 13-22050 (RDD), 2016 WL 6155929 (Bankr. S.D.N.Y. Oct. 21, 2016).................... 9

*In re Stein & Day Inc.,*
83 B.R. 221 (Bankr. S.D.N.Y. 1988) .......................................................................... 17

*Int'l Shoe v. Wash.,*
326 U.S. 310 (1945).................................................................................................. 10

*Interpharm, Inc. v. Wells Fargo Bank, Nat. Ass'n,*
655 F.3d 136 (2d Cir. 2011)...................................................................................... 16

*Kirch v. Liberty Media Corp.,*
449 F.3d 388 (2d Cir. 2006)...................................................................................... 27

*Kirschner v. Bennett*,
    648 F. Supp. 2d 525 (S.D.N.Y. 2009)..............................................................................25

*Lehman Brothers Special Financing Inc. v. Bank of America National Association (In re Lehman Brothers Holdings Inc.)*,
    535 B.R. 608 (Bankr. S.D.N.Y. 2015)..............................................................................12

*Monica v. CEVA Grp. (In re CIL Ltd.)*,
    582 B.R. 46 (Bankr. S.D.N.Y. 2018).........................................................................10, 14

*O'Neill v. Asat Tr. Reg. (In re Terrorist Attacks on September 11, 2001)*,
    714 F.3d 659 (2d Cir. 2013).................................................................................................9

*Pac. M. Int'l Corp. v. Raman Int'l Gems, Ltd.*,
    888 F. Supp. 2d 385 (S.D.N.Y. 2012)...............................................................................24

*Piuggi v. Good for You Prods. LLC*,
    739 F. Supp. 3d 143 (S.D.N.Y. 2024)...............................................................................16

*Plusgrade L.P. v. Endava Inc.*,
    No. 1:21-CV-1530 (MKV), 2023 WL 2402879 (S.D.N.Y. Mar. 8, 2023).......9, 13, 20, 23

*Remcoda, LLC v. Ridge Hill Trading (Pty) Ltd.*,
    No. 21 CIV. 979 (ER), 2023 WL 2647854 (S.D.N.Y. Mar. 27, 2023) ...........................26

*Sama v. Mullaney (In re Wonderwork, Inc.)*,
    611 B.R. 169 (Bankr. S.D.N.Y. 2020)...............................................................................20

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
    474 B.R. 76 (S.D.N.Y. 2012).............................................................................................12

*SPV Osus Ltd. v. UBS AG*,
    882 F.3d 333 (2d Cir. 2018)...............................................................................................11

*State St. Bank & Tr. v. Salovaara*,
    326 F.3d 130 (2d Cir. 2003)...............................................................................................19

*Tanusantoso v. Barr*,
    962 F.3d 694 (2d Cir. 2020)...............................................................................................19

*Weiss v. Barc, Inc.*,
    No. 12-cv-7571, 2013 WL 2355509 (S.D.N.Y. May 29, 2013) .........................................9

*Williams v. Taylor*,
    529 U.S. 362 (2000)...........................................................................................................19

*Wolo Mfg. Corp. v. ABC Corp.*,
    349 F. Supp. 3d 176 (E.D.N.Y. 2018) ..........................................................................9, 13

*Zembrka v. Am. Girl, LLC.*,
    145 S. Ct. 1130 (2025) ................................................................................................. 9

**Rules**

Fed. R. Bankr. P. 7008 .................................................................................................... 15

Fed. R. Civ. P. 8(a) ........................................................................................................ 15

## PRELIMINARY STATEMENT

Pursuant to Fed. R. Bankr. P. 7012(b) and Fed. R. Civ. P. 12(b)(2) and 12(b)(6), Defendants Lassia Investment Company ("Lassia"), Glafkos Trust Company ("Glafkos"), Family Unit Trust Company ("Family Unity") (collectively, the "Majority Shareholders"), and Elafonissos Shipping Corporation ("Elafonissos") submit the following motion to dismiss the complaint (Dkt. No. 1,[3] the "Complaint").

This is an at-best shotgun pleading that pleads precious few facts and egregiously relies on group pleading to lump together twenty separate, diverse Defendants, throws them all together and asks each Defendant (and this Court) to accept it because, "Well, someone in there is liable." There's good reason why this kind of pleading is not allowed under binding precedent and simple due process.

None of Plaintiffs' claims against Lassia, Glafkos, Family Unity, or Elafonissos should survive this motion. The Court lacks personal jurisdiction over Elafonissos, a Liberian corporation with operations in Greece and no presence whatsoever in the United States. Plaintiffs' reliance on vague, group-pled allegations of "minimum contacts" cannot substitute for the required showing of specific facts, and their attempt to tether jurisdiction to the bankruptcy proceedings fails because Elafonissos neither controlled nor authorized those filings. Exercising jurisdiction here would offend due process by imposing an unreasonable burden on a foreign entity with no U.S. ties.

Equally fatal are problems with Plaintiffs' substantive claims. Plaintiffs' breach of contract claim fails twice over. First, it confuses a contract with a Court order: the duties Plaintiffs cite appear only in the Confirmation Order, not in the reorganization plan (the "Plan"), which imposes

---

[3] "Dkt." refers to the docket in this adversary proceeding; "Bankr. Dkt." refers to the related bankruptcy matter, Case No. 23-10322 (JPM); and "Ex. A" refers to the bankruptcy plan ("Plan") attached as an exhibit to the accompanying declaration.

no obligations on Related Parties.  Second, even if such duties existed, the Plan is not yet effective.

Its Effective Date depends on unfulfilled, unwaivable conditions precedent, including resolution

of appeals and foreign recognition of the reorganization Plan.  Petitioning Creditors' unilateral

"waiver" cannot override these protections, which were designed to prevent premature

implementation.  Until those conditions are satisfied, the Plan binds no one, and Plaintiffs cannot

manufacture liability where none exists.

Plaintiffs' tort claims fare even worse, relying on sweeping, conclusory assertions and

improper group pleading that fails to identify any specific misconduct by the Majority

Shareholders or Elafonissos.  The Complaint never alleges facts showing they possessed converted

property, aided its transfer, or interfered with contracts.  Instead, the Complaint lumps the mass of

Defendants together and sprinkles in some conclusory allegations to obscure the reality that the

alleged misconduct belongs to other parties, not these Defendants, which should never have been

roped into this case in the first place.

Because Plaintiffs cannot establish jurisdiction, cannot state a viable contract claim, and

cannot plead tort claims with the requisite specificity, their Complaint is legally defective in every

respect.  The Court should dismiss all claims against the Majority Shareholders and Elafonissos in

their entirety and with prejudice.

## **BACKGROUND**

### A.  The Parties And Bankruptcy Filing

Eletson Holdings Inc. ("Holdings" or the "Company") is an "international gas shipping

company," incorporated in Liberia and then reincorporated in the Marshall Islands, that holds all

or virtually all of its assets in Greece.  (Compl. ¶ 7; Bankr. Dkt. No. 483, Ex. A at. 5.)  At the time

of the Company's bankruptcy, Lassia, Glafkos, and Family Unity each owned about 31% of the

Company's equity, and Elafonissos owned about 4%.  (Compl. ¶¶ 25-28.)  All four companies are

Liberian, with registered addresses in Liberia.  (*Id.*)  None has or had any presence in the United States, and none held a majority stake that enabled it to control Holdings.  (*Id.* ¶¶ 5, 7, 25-28.)

On March 7, 2023, Murchinson Ltd. ("Murchinson"), a Canadian investment firm (Bankr. Dkt. No. 483, Ex. A at. 6-7, 20) forced Holdings into bankruptcy.  (*See* Compl. ¶ 37.)  Three creditors,[4] including Pach Shemen, LLC ("Pach Shemen"), a Murchinson-controlled shell company (Bankr. Dkt. No. 483, Ex. A at. 21, 61), filed an involuntary Chapter 7 bankruptcy petition against the Company.  (Compl. ¶ 37; Bankr. Dkt. 1.)  Within the prior three months, in an arbitration before former New York Supreme Court Justice Ariel Belen, the Company won a preliminary injunction stopping yet another Murchinson-controlled shell company, Levona Holdings Ltd. ("Levona"), from selling off the Company's assets and filed claims alleging that Levona secured its interest in entities that owned Company vessels through "coercion, fraud, . . . and other wrongdoing."  *Eletson Holdings, Inc. v. Levona Holdings Ltd.*, 731 F. Supp. 3d 531, 553-54 (S.D.N.Y. 2024) (citations omitted).  In response, Murchinson created Pach Shemen, which "purchased $183,851,546 in bonds of Holdings for $2,000,000," plus $500,000 if Levona received a favorable arbitration outcome, in January 2023 and used the bonds to bring about Eletson's bankruptcy in March 2023.  *Id.* at 554 (citations omitted).  Justice Belen found that the Murchinson entities "violated" an injunction by "directing the commencement of the involuntary bankruptcy," which they hoped "would strip the arbitrator of jurisdiction" or act "as a hedge against a potential [arbitration] loss."  *Id.* at 563 (citations omitted).[5]

---

[4] Pach Shemen; VR Global Partners, L.P.; and Alpine Partners (BVI), L.P., filed the petition (Bankr. Dkt. No. 1), which was later joined by other creditors (collectively, the "Petitioning Creditors").  (Bankr. Dkt. No. 1212 at 4, 5 n.2.)

[5] Ultimately, Justice Belen awarded Holdings and other entities $43,455,122.21 in compensatory damages, $43,455,122.21 in punitive damages, and $9,590,222.99 in attorneys' fees and costs from "Levona, and . . . Murchinson and Pach Shemen as Levona's alter egos."  *Eletson Holdings, Inc. v. Levona Holdings Ltd.*, 731 F. Supp. 3d 531, 563-64 (S.D.N.Y. 2024) (citations omitted).

3

On September 25, 2023, the Court converted the cases to a Chapter 11 bankruptcy, and on November 4, 2024, the Court issued an order rejecting a reorganization plan proposed by the Debtors and confirming one proposed by the Petitioning Creditors (the "Confirmation Order"). (Compl. ¶¶ 39, 43.)   Now ostensibly in control of reorganized Holdings, the Murchinson-controlled entities used the bankruptcy, as Justice Belen predicted, to try to eliminate their arbitral liability by filing a voluntary stipulation of dismissal of the confirmation of the $97 million award *to Holdings*—purportedly *on Holdings' behalf*.   (No. 1:23-cv-07331-LJL, Dkt. No. 350).   The dismissal is currently on appeal to the Second Circuit.  (No. 25-1313 (2d Cir.), Dkt. No. 50.)

### B.  The Bankruptcy Plan And Confirmation Order

In recognition of the vital, delicately coordinated fuel-shipping services Holdings provides, the Petitioning Creditors' Plan included "[c]onditions [p]recedent" that maintained the *status quo*, including the Company's management, until after the reorganization was completely final in the United States and abroad, where the Company operates.  (Ex. A § 9.1.)  Specifically, the Plan expressly provides that, even if the plan were "confirmed," its "[e]ffective [d]ate" would not occur until after fulfillment of the following conditions:

- The "Confirmation Order shall have become a Final Order," defined as an order from which "*any appeal* that has been or may be taken . . . has been *resolved* by the highest court to which the order . . . was appealed, . . . and no further appeal, . . . review, or rehearing has been or can be taken or granted" (*id.* §§ 1.77, 9.1(a) (emphasis added));

- The "Debtors or Plan Proponents. . . shall have obtained *all governmental* and third-party approvals that are necessary to implement and effectuate this Plan (and all applicable waiting and *appeal periods have expired*)" (*id.* § 9.1(f) (emphasis added));

- "*[A]ll* actions, documents, certificates, and agreements necessary to implement the Plan shall have been effected . . . and, to the extent required, ***filed with the applicable government units*** in accordance with ***applicable law***" (*id.* § 9.1(l) (emphasis added)).

The conditions referred to "all governmental. . . approvals," "applicable government units," and "applicable law"—not those of the U.S.—because the Plan expressly accepted that

reorganizing the Company, then-incorporated in Liberia and with its assets and operations in Greece, would require compliance with foreign law.  (*See, e.g.*, Ex. A §§ 5.1, 5.2(b) (contemplating transactions requiring filings under "foreign law"), 11.3 (recognizing bankruptcy court may be "without jurisdiction" over certain "matters arising out of the Plan").)  Indeed, in the accompanying (court-approved) disclosure statement, the Petitioning Creditors pledged to "***make every effort to ensure*** that any Confirmation Order entered by the bankruptcy court and the steps taken pursuant to the Confirmation Order to implement the Plan ***are recognized and are effective in all applicable jurisdictions***."  (Bankr. Dkt. No. 849 § IX.B.3 (emphasis added).)  They also advised all interested parties of the risk that "***a foreign court*** may refuse to recognize the effect of the Confirmation Order."  (*Id.* (emphasis added).)  Satisfying the Plan's conditions precedent would ultimately require acts in foreign courts and jurisdictions.

But Murchinson and its affiliates had other plans. On November 19, 2024, just 15 days after the bankruptcy court entered the Confirmation Order and 12 days after unreorganized Holdings filed a notice of appeal, the Petitioning Creditors filed a "notice of Effective Date," unilaterally declaring "all conditions precedent . . . satisfied or waived."  (Compl. ¶¶ 45, 55.) Section 9.2 of the Plan permits waiver "without notice, leave or order of the Bankruptcy Court or any formal action[—]***other than proceedings to confirm or consummate this Plan***."  (Ex. A § 9.2 (emphasis added).)    However, when the Petitioning Creditors invoked Section 9.2, the Confirmation Order appeal was pending, and proceedings required for foreign recognition of the order had not yet begun.  The Petitioning Creditors did not commence proceedings for Liberian recognition of the reorganization until January 7, 2025 (Compl. ¶ 91), did not commence recognition proceedings in Greece until February 3, 2025 (*id.* ¶ 92), and the Confirmation Order is still on appeal—and therefore not yet a "Final Order"—today (No. 25-176 (2d Cir.)).  According

to the Plan's very terms, "waiver" was not permitted, and the conditions precedent and the Effective Date did not and—still have not—occurred. This Court has nonetheless recognized the Murchinson entities as controlling Holdings (an issue which is on appeal), and they have gone forward with numerous actions to change the status quo that existed at the time of the Confirmation Order.

The Plan mentioned a group of the Debtors' "Related Parties," which it defined to include "current and former . . . equity holders," including the Majority Shareholders and Elafonissos. (Compl. ¶ 51 n.2 (quoting Ex. A § 1.124).) Nowhere, however, did the Plan impose *any* obligations on the Related Parties. (*See generally* Ex. A.) The Confirmation Order "required all relevant parties to cooperate in good faith to implement and consummate the Plan" (Compl. ¶ 44), but neither that requirement nor any similar provision appeared in the Plan (*see generally* Ex. A).

### C. The Conduct Of Unreorganized Holdings' Shareholders After Entry Of The Confirmation Order

According to the Complaint, after the Court entered the Confirmation Order, the "Former Minority Shareholders," defined to include Elafonissos and Keros Shipping Corporation, and the "Former Majority Shareholders," defined to include Lassia, Galfkos, and Family Unity, repeatedly exercised their legal rights abroad given the failures of the conditions precedent in the Confirmation Order (Compl ¶ 7). The Complaint provides its own, biased narrative of the actions of the parties here, including the following allegations:

- In November 2024, the "Former Minority Shareholders" petitioned a Greek court for the appointment of a provisional board of directors for the Company. (Compl. ¶ 65.) The court granted the petition, but only temporarily. (*Id.* ¶ 67 n.4.)

- In February 2025, the "Former Minority Shareholders" and the provisional board submitted an application to intervene in reorganized Holdings' petition for Greek recognition of

the reorganization, and a law firm claiming to act of behalf of a number of parties, including Elafonissos, filed a motion opposing the recognition proceeding.  (*Id.* ¶¶ 93-97.)  Both requests appear to remain pending.  (*Id.*)

- On March 18, 2025, Elafonissos and the "Former Majority Shareholders" exercised their rights under Liberian law to have a Liberian court consider whether efforts to change the Company's registration were allowed—efforts which ended on March 28 (ten days later) when the Liberian court dismissed the action .  (*Id.* ¶¶ 99-101.)

- In April 2025, Glafkos, Lassia, and Family Unity filed what seems to be a still unresolved complaint challenging the registration of Reorganized Holdings and affiliated entities in the Marshall Islands.  (*Id.* ¶ 104.)

The Complaint also alleges that the Majority Shareholders did not "assist" reorganized Holdings with registering it as the Company's new owner.  In particular, Plaintiffs allege that each one refused reorganized Holdings' request to update the Liberian International Ship & Corporate Registry ("LISCR") to reflect its ownership of the Company.  (Compl. ¶ 75.)  Plaintiffs also allege that Lassia and Family Unity "certified to the Court" that they had "'no knowledge'" of unreorganized Holdings' address of record ("AOR"), and Glafkos' certification referred the Court to Vasilis Hadjieleftheriadis's, which "confirm[ed] . . . that he 'advised the current AOR of the order of the New York Bankruptcy Court.'"  (*Id.* ¶ 83.)

Outside of these allegations, the Complaint does not attribute any specific conduct to the "Former Majority Shareholders," the "Former Minority Shareholders," or to any of the individual entities these groups comprise.  (*See generally id.*)  Plaintiffs plead general and conclusory assertions, such as "the Former D&Os and the Former Shareholders have taken affirmative and unauthorized actions in violation of the Confirmation Order" and "the Former D&Os and the

Former Shareholders have paid some of the Converted Funds to themselves and their insiders" (*id.*
¶¶ 201, 204); however, the Complaint attributes all other specific misconduct—including *every*
act or omission that allegedly contributed to Plaintiffs' claims of conversion, aiding and abetting
conversion, and tortious interference with contract—to other Defendants (*see, e.g.*, *id.* ¶¶ 189-99
(explaining how just "[t]he Fake EHI Attorneys [a]ided and [a]betted the [c]onversion")) or, in a
prime example of group-pleading, to all twenty Defendants, without differentiation or explanation
(*see, e.g.*, ¶¶ 116 (alleging that "Defendants engaged in a scheme to convert Plaintiffs' assets," in
a Complaint section that spans paragraphs 116 to 188, but never mentions conduct by any of the
Majority Shareholders or Elafonissos).)

### D.  The Adversary Proceeding

On July 30, 2025, Reorganized Holdings and its affiliates filed the instant Complaint
against twenty Defendants, including the Majority Shareholders, minority shareholders,
unreorganized Holdings' directors and officers, and law firms.  (Compl. ¶¶ 2-3.)

Concerning personal jurisdiction, the Complaint alleges each Defendant "maintained
minimum contacts with the United States . . . [through] the Debtors' voluntary commencement of
the Chapter 11 Cases (*as authorized by their controlling parties*), the Debtors' participation in the
Chapter 11 Cases, and the *Defendants' individual participation in the Chapter 11 Cases*."  (*Id.* ¶
5.)  The Complaint never mentions how Elafonissos in particular, holding less than 4% of
unreorganized Holdings' equity, managed to "control[]" or "authorize[]" the Chapter 11 cases or
otherwise participated in the cases.  (*Id.* ¶¶ 5, 7.)  Nor does it make any further allegations that the
Liberian corporation (*id.* ¶ 28), which—according to a sworn declaration submitted in connection
with Elafonissos' objection to Court's attempt to exercise personal jurisdiction over it—has "no
presence," "no office, no employees, and no assets in the United States" and "does not conduct

business in the United States" (Bankr. Dkt. No. 1569-2 ¶¶ 2-3), ever took any actions in or had

any contacts with the U.S (*see generally* Compl.).

On September 2, 2025, Plaintiffs filed waivers of service of the summons signed by the

Majority Shareholders and Elafonissos.  (Dkt. Nos. 20-23.)  Each affirmed that the party waiving

service "will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue

of the action," except for "objections to the absence of summons or of service."  (*Id.*)

## ARGUMENT

## I.    THE COURT LACKS PERSONAL JURISDICTION OVER ELAFONISSOS

### A.  Legal Standard

"To survive a motion to dismiss for lack of personal jurisdiction," plaintiffs "must make a

*prima facie* showing that jurisdiction exists over the defendant."  *Am. Girl, LLC v. Zembrka*, 118

F.4th 271, 276 (2d Cir. 2024) (quotation omitted), *cert. denied sub nom. Zembrka v. Am. Girl,

LLC.*, 145 S. Ct. 1130 (2025).  "[G]roup pleading is not permitted."  *Plusgrade L.P. v. Endava

Inc.*, No. 1:21-CV-1530 (MKV), 2023 WL 2402879, at *5 (S.D.N.Y. Mar. 8, 2023).  The "showing

must include an averment of facts that, if credited by the ultimate trier of fact[,] would be sufficient

for establishing jurisdiction" over the defendant.  *Id.*  In judging Plaintiffs' showing, the Court

"will not draw argumentative inferences in [P]laintiff[s'] favor[,] . . . nor must [it] accept as true a

legal conclusion couched as a factual allegation."  *In re Sledziejowski*, No. 13-22050 (RDD), 2016

WL 6155929, at *3 (Bankr. S.D.N.Y. Oct. 21, 2016) (quoting *O'Neill v. Asat Tr. Reg. (In re

Terrorist Attacks on September 11, 2001)*, 714 F.3d 659, 673 (2d Cir. 2013)).  Further, "mere

conclusory allegations are insufficient to support" the requisite showing.  *Wolo Mfg. Corp. v. ABC

Corp.*, 349 F. Supp. 3d 176, 196 (E.D.N.Y. 2018) (quoting *Weiss v. Barc, Inc.*, No. 12-cv-7571,

2013 WL 2355509, at *1 (S.D.N.Y. May 29, 2013)).

### B. Due Process Precludes Finding Personal Jurisdiction

Plaintiffs have not, and cannot, show that Elafonissos has contacts with the U.S. sufficient to confer jurisdiction here. As a foreign entity with no presence in the U.S., Elafonissos is not subject to the Court's general jurisdiction. Also, the Court lacks specific jurisdiction because Plaintiffs do not allege Elafonissos has not taken any specific action in, or directed any specific action at, the U.S. relating to the subject matter of the action. Indeed, the *only* relevant conduct that Plaintiffs actually attribute to Elafonissos was committed was overseas (the rest is pled in conclusory fashion, or group pleading, and thus insufficient). Even if Elafonissos had sufficient contacts, however, exercising personal jurisdiction over it here would be unreasonable, offending due process, given the totality of the circumstances.

"[F]iling a waiver of service," as Plaintiffs have done here, "establishes personal jurisdiction" if "exercising jurisdiction is consistent with the United States Constitution and laws." Fed. R. Bankr. P. 7004(f). The condition is met if the exercise "would be consistent with the Due Process Clause of the Fifth Amendment." *Monica v. CEVA Grp. (In re CIL Ltd.)*, 582 B.R. 46, 70 (Bankr. S.D.N.Y. 2018) (quotation omitted). "That analysis has two components: (i) whether the defendants have the requisite 'minimum contacts' with the relevant forum such that the exercise of personal jurisdiction 'does not offend traditional notions of fair play and substantial justice,' and (ii) whether the exercise of jurisdiction is reasonable in the circumstances." *Monica*, 582 B.R. at 70 (quoting *Int'l Shoe v. Wash.*, 326 U.S. 310, 316 (1945)). Both components prevent the Court from exercising jurisdiction over Elafonissos.

### C. Elafonissos' contacts with the U.S. are insufficient

Sufficient contacts may grant the Court general jurisdiction over a defendant where they are "the defendant's general business contacts with the forum," and they may grant the Court specific jurisdiction over a defendant where the "suit aris[es] out of or relate[s] to the defendant's

contacts with the forum." *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 343 (2d Cir. 2018) (quotation omitted).

Elafonissos does not have the requisite "minimum contacts" with the U.S. necessary for the Court to exercise general or specific jurisdiction over it. To be subject to general jurisdiction, a "corporation's affiliations with the State [must be] so continuous and systematic as to render it essentially at home in the forum State." *SPV Osus Ltd.*, 882 F.3d at 343 (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)). Here, Elafonissos is a Liberian Corporation with its principal offices in Greece and no office, employees, assets, or business in the United States. (Bankr. Dkt. No. 1569 ¶¶ 2-3.) Thus, like the foreign entities in *SPV Osus*, which "lack[ed] any presence in New York at all," the Court lacks general jurisdiction over Elafonissos. 882 F.3d at 343-44 ("[A]side from the truly exceptional case, a corporation is at home and subject to general jurisdiction only in its place of incorporation and principal place of business." (quoting *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 629 (2d Cir. 2016)).

Nor is Elafonissos subject to specific jurisdiction. "[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *SPV Osus Ltd.*, 882 F.3d at 344 (quoting *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "A court must look to 'whether there was some act by which the defendant purposefully availed itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *SPV Osus Ltd.*, 882 F.3d at 344 (quoting *Goodyear*, 564 U.S. at 924). "[T]he defendant's suit-related conduct must create a *substantial connection* with the forum State." *SPV Osus Ltd.*, 882 F.3d at 344 (emphasis added) (quoting *Walden*, 571 U.S. at 284). Here, however, the only specific conduct Plaintiffs attribute to Elafonissos occurred in Greece or Liberia—commencing a Liberian action that ended ten days

after it was filed and filing requests in a Greek proceeding that seem to remain undecided.  (Compl. ¶¶ 65, 93-97, 99-101.)  There is no U.S. connection, let alone a substantial one.

Further, whether Elafonissos's activities in Greece affect or relate in some way to the bankruptcy matter or Plaintiffs' breach of contract claim is irrelevant for the Court's personal jurisdiction analysis.  Indeed, in *Lehman Brothers Special Financing Inc. v. Bank of America National Association (In re Lehman Brothers Holdings Inc.)*, the court rejected the plaintiff's argument that, because the complained-of actions would constitute a violation of the automatic stay, the bankruptcy court had specific jurisdiction over the foreign defendant.  535 B.R. 608, 623 (Bankr. S.D.N.Y. 2015); *see also id.* at 620 ("[T]he foreseeability of causing harm in the forum state, without more, is not enough to establish minimum contacts." (citing *Walden*, 571 U.S. at 289-90)).  Critically, as is the case here, the court explained it "[could not] rest its finding of jurisdiction over the defendant on the very subject of the dispute."  *Lehman Bros.*, 535 B.R. at 624 (citing *Electra Aviation, Inc. v. European Org. for the Safety of Air Navigation (In re EAL (Delaware) Corp.)*, No. 93-578-SLR, 1994 WL 828320, at *16 (D. Del. Aug. 3, 1994) ("Because the question of whether the automatic stay was violated is the underlying dispute in the case, the alleged violation cannot constitute the basis for personal jurisdiction.")).  Similarly, the mere fact that Plaintiffs dispute Elafonissos's actions abroad as violating the Plan or related orders does not confer specific jurisdiction.  Personal jurisdiction is a threshold issue; regardless of the underlying issue being adjudicated, a court cannot enforce an order against a party over whom it lacks jurisdiction.  *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 474 B.R. 76, 82 (S.D.N.Y. 2012).

Plaintiffs do make the blanket, clearly insufficient claim that the Court has specific jurisdiction over "[e]ach of the Defendants."  (Compl. ¶ 5.)  The Complaint asserts, without further

support or explanation, that Defendants have "minimum contacts with the United States . . . ,

including by the Debtors' voluntary commencement of the Chapter 11 Cases (as authorized by

their controlling parties), the Debtors' participation in the Chapter 11 Cases, and the Defendants'

individual participation in the Chapter 11 Cases." (*Id.*) But there are ***twenty Defendants*** here, and

"group pleading is not permitted" to "allege personal jurisdiction." *Plusgrade L.P.* 2023 WL

2402879, at *5. Also, the only specific conduct the allegation mentions was ***not by Elafonissos***,

but by other Defendants—those that "***control[led]***" the Debtors sufficiently to "***authorize[]***" their

commencing the Chapter 11 bankruptcy. (Compl. ¶ 5 (emphasis added).) With less than 4% of

unreorganized Holdings's equity, Elafonissos lacked that control. (*Id.* ¶ 28.) Plaintiffs add the

catchall, group-pled assertion, masquerading as a Defendant-specific allegation, that "Defendants'

***individual[ly]*** participat[ed] in the Chapter 11 Cases" (*id.* ¶ 5 (emphasis added)), but the Complaint

never articulates how Elafonissos participated. That simply isn't enough. *Wolo Mfg. Corp.*, 349

F. Supp. 3d at 196 ("mere conclusory allegations are insufficient to support" jurisdiction).[6] In

sum, Plaintiffs claimed that Elafonissos has sufficient contacts, but have not and cannot shown it.

### D. Exercising jurisdiction over Elafonissos would be unreasonable

Plaintiffs' failure to show contacts sufficient for the Court to exercise even specific

jurisdiction over Elafonissos decides this issue—Elafonissos must be dismissed. Nevertheless,

even if Elafonissos had the "substantial connection" to the U.S. necessary for this Court to exercise

personal jurisdiction, the Court should refrain, as doing so would be unreasonable and offend

"traditional notions of fair play and substantial justice."

---

[6] Even looking beyond the Complaint—which this Court should decline to do as Plaintiffs are masters of their own Complaint—Elafonissos's limited connection to the bankruptcy matter has largely revolved around its objections to and appeals of the Court's improper exercise of jurisdiction over it. (*See, e.g.*, No. 25-cv-06182-LJL (S.D.N.Y.), Dkt. No. 4 at 2.)

Assuming *arguendo* that minimum contacts exist (they do not), the court "must then evaluate whether exercising personal jurisdiction is 'reasonable'" based on, *inter alia*, "(1) [t]he burden . . . on the defendant; (2) the interests of the forum . . . in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief." *In re CIL Ltd.*, 582 B.R. at 71 (citations omitted).

Here, Elafonissos's burden is significant and far outweighs Plaintiffs' and the forum's interests in the allegations against it. As set forth above, Elafonissos is a Liberian corporation doing business in Greece that held shares in yet another Liberian corporation and does not even have any alleged ties to the U.S. outside of this bankruptcy matter, which it has repeatedly and consistently challenged as lacking jurisdiction. (*See* Bankr. Dkt. No. 1569 ¶¶ 2-3; No. 25-cv-06182-LJL (S.D.N.Y.), Dkt. No. 4 at 2.) Defending itself in this proceeding, potentially including a trial, would be especially "time-consuming and financially onerous" for Elafonissos. *See Aquiline Cap. Partners LLC v. FinArch LLC*, 861 F. Supp. 2d 378, 391 (S.D.N.Y. 2012) (finding no personal jurisdiction over foreign company in breach of contract case). Moreover, compelling Elafonissos to do so would be unfair and unnecessary because the only allegations against it are that Elafonissos was involved in legal proceedings abroad (in fora where it actually *may be* subject to jurisdiction) in violation of the Confirmation Order. (*See* Compl. ¶¶ 65, 66, 93-97, 99-101**).** Such allegations do not relate to Plaintiffs' claims for conversion or tortious interference, and do not support their final claim for breach of contractual duties under the Plan, since the Plan did not impose any duties on Elafonissos or other "Related Parties." (*See generally* Ex. A.) Plaintiffs and the Court have little to no interest in adjudicating these claims against Defendants like Elafonissos, which the Complaint ropes into this controversy primarily through group-pleading.

Under these circumstances, hailing Elafonissos into this forum would not comport with "traditional notions of fair play and substantial justice." *See Aquiline Cap. Partners* LLC, 861 F.

Supp. 2d at 391 (finding "mere fact" of "foreseeable consequences" in forum insufficient to comport with fair play and substantial justice standard).

## II.    PLAINTIFFS FAIL TO STATE A CLAIM AGAINST ANY OF THE MAJORITY SHAREHOLDERS OR ELAFONISSOS

### A.    Legal Standard

To survive dismissal, the Complaint must make "a short and plain statement of the claim showing that the pleader is entitled to relief." *Am. Fed'n of State, Cnty. & Mun. Emps. Dist. Council 37 Health & Sec. Plan v. Bristol-Myers Squibb Co.*, 948 F. Supp. 2d 338, 344 (S.D.N.Y. 2013) (quoting Fed. R. Civ. P. 8(a)(2)); *see also* Fed. R. Bankr. P. 7008 (applying Rule 8 in adversary proceedings). Under Rule 12(b)(6), this means Plaintiffs "must plead sufficient factual allegations 'to state a claim to relief that is plausible on its face.'" *Bristol-Myers*, 948 F. Supp. 2d at 344 (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "[F]acial plausibility" exists where alleged "factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[L]abels and conclusions," or "'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Bristol-Myers*, 948 F. Supp. 2d at 344 (quoting *Iqbal,* 556 U.S. at 678). Nor do "naked assertion[s] devoid of further factual enhancement." *Bristol-Myers*, 948 F. Supp. 2d at 344 (quoting *Iqbal,* 556 U.S. at 678).

Dismissal is required where the allegations "'could not raise a claim of entitlement to relief'" or "'where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Goetz v. Ainsworth Pet Nutrition, LLC*, 768 F. Supp. 3d 645, 651 (S.D.N.Y. 2025) (quoting *Iqbal*, 556 U.S. at 679, and *Twombly*, 550 U.S. at 558).

On a motion to dismiss a complaint that includes a breach of contract claim, "courts look not only at the sufficiency of the complaint but also at the contract itself, which by definition is

integral to the complaint." *Axiom Inv. Advisors, LLC by & through Gildor Mgmt., LLC v. Deutsche Bank AG*, 234 F. Supp. 3d 526, 533 (S.D.N.Y. 2017) (citing *Interpharm, Inc. v. Wells Fargo Bank, Nat. Ass'n*, 655 F.3d 136, 141 (2d Cir. 2011)); *see also Geswaldo v. Gottlieb*, No. 1:24-CV-02543 (AT) (SDA), 2025 WL 763995, at *1 (S.D.N.Y. Jan. 14, 2025), *report and recommendation adopted*, No. 24 CIV. 2543 (AT) (SDA), 2025 WL 636091 (S.D.N.Y. Feb. 27, 2025) (collecting cases). Such contracts "control" over "inconsistent" allegations. *Housey v. Proctor & Gamble Co.*, No. 22-888-cv, 2022 WL 17844403, at *2 (2d Cir. Dec. 22, 2022).

## B. The Complaint Fails To State A Claim For Breach of Contract (Count 3)

### 1. Plaintiff's claim concerns breach of a Court order, not a contract

Plaintiffs do not assert a cognizable breach of contract claim. Though they purport to base their claim on the bankruptcy Plan—"a contract, which is binding on . . . each of the Defendants" (Compl. ¶¶ 213-15)—they allege only that Defendants violated terms of the Court order confirming the Plan, rather terms of the Plan itself. With no contract duties, there is no contract claim.

To state a claim for breach of contract, Plaintiffs "must identify what provisions of the contract were breached as a result of the acts at issue." *Piuggi v. Good for You Prods. LLC*, 739 F. Supp. 3d 143, 167 (S.D.N.Y. 2024) (citation omitted). But Plaintiffs do not, and cannot, because the allegedly breached provisions are not contractual. In Count 3, the Complaint alleges that Defendants have breached "their obligations under the Plan," which "required certain performance from all Related Parties, including, among other things, to cooperate in good faith to implement and consummate the Plan and to not take any actions inconsistent with the Plan or the Confirmation Order." (*Id.* ¶¶ 213-14.) But as the Complaint itself states elsewhere, it was the Confirmation Order that included those terms—not the Plan. (*Id.* ¶ 44 ("The Confirmation Order . . . (1) required all relevant parties to cooperate in good faith to implement and consummate the Plan; [and] (2)

directed the Debtors . . . to not 'take any actions inconsistent with the Plan or th[e] Confirmation

Order.'")).) These alleged duties simply do not appear in the Plan. In fact, no part of the Plan

imposes any obligations on Related Parties, like the Majority Shareholders and Elafonissos (*see*

*generally* Ex. A), and its provisions "control" over the Complaint's inconsistent allegations to the

contrary. *Housey v. Proctor & Gamble Co.*, No. 22-888-cv, 2022 WL 17844403, at *2 (2d Cir.

Dec. 22, 2022).

As Plaintiffs well know, they have been making motions to "enforce" the Confirmation

Order via sanctions and similar relief (almost all on appeal). That is the procedural vehicle for

enforcing duties in an order, not a claim for breach of contractual duties, which the order does not

impose. (*See, e.g., id.* ¶¶ 75-81 (discussing sanctions orders); *cf. In re Stein & Day Inc.*, 83 B.R.

221, 226 (Bankr. S.D.N.Y. 1988) (noncompliance with a so-ordered stipulation can result in

contempt because it is a court order, even if it is also an agreement). Accordingly, dismissal of

this claim is proper.

### 2. The contract does not bind Defendants yet, as the conditions precedent to its Effective Date remain unfulfilled and unwaived

Because the Complaint does not identify any breached contract provisions, its contract

claim does not lie. Should the Court set aside this fatal flaw, however, the claim would still fail

because the contract—the Plan—is not yet in effect and binding on Defendants.

Though Plaintiffs allege the Plan became "effective" on November 19, 2024, when the

Petitioning Creditors filed a notice confirming all of conditions precedent to the Plan's Effective

Date were "waived or satisfied" (Compl. ¶ 45), the conditions remain pending even now. The Plan

expressly provides that its Effective Date will not occur until after, *inter alia*, (i) "any appeal" of

the Confirmation Order "has been resolved by the highest court to which the order . . . was

appealed" (Ex. A §§ 1.77, 9.1(a)); (ii) the parties "have obtained all governmental and third-party

approvals . . . necessary to implement" the Plan (*id.* § 9.l(f)); and (iii) "all actions [and] documents necessary to implement the Plan shall have been effected . . . and, to the extent required, filed with the applicable government units in accordance with applicable law" (id. § 9.1(l).)   The first condition is not satisfied:  unreorganized Holdings' appeal of the Confirmation Order is currently pending before the Second Circuit.  (No. 25-0176 (2d Cir.).)  Likewise, the second and third conditions required the Murchinson-controlled creditors to obtain Greek recognition the Plan as "necessary to implement" it, but the Complaint suggests that process continues too.  (Compl. ¶¶ 92-98.)  Accordingly, the Plan could only take effect if these unsatisfied conditions were waived.

They were not.  *First*, by the Plan's very terms, any purported waiver of these conditions was invalid because, though others could be waived, "proceedings to confirm or consummate this Plan"—like the appeal and foreign recognition proceedings—could not.  (Ex. A § 9.2(a).) Plaintiffs may dispute this interpretation; however, the provision is clear, and even if it were not, any ambiguities in the Plan must be construed against the Plan's authors—the Petitioning Creditors—which now control reorganized Holdings and this suit.  *See, e.g.*, *In re Nelkin & Nelkin P.C.*, 662 B.R. 550, 559-60 (Bankr. S.D. Tex. 2024).

Plans can, and do, contemplate unwaivable conditions precedent.  *See, e.g.*, *In re Lehigh Valley Pro. Sports Clubs, Inc.*, No. 00-11296DWS, 2000 WL 567905, at *2 n.8 (Bankr. E.D. Pa. May 5, 2000) (finding a condition precedent to a plan's effective date "unwaivable"); *In re Glob. Fertility & Genetics, New York, LLC*, 663 B.R. 584, 607 (Bankr. S.D.N.Y. 2024) (similar).  Indeed, construing the provision that delays the Plan's "[e]ffective [d]ate" until after the "resol[ution]" of "any appeal" of the Confirmation Order as waivable would make no sense.  (Ex. A §§ 1.77, 9.1(a)). Bankruptcy plans have winners and losers, losers will appeal, and winners will want to reap the fruits of their victories by implementing the plan despite any appeal.  If the provision is waivable,

*it will be waived*—and, therefore, hollow and superfluous in violation of the rule against surplusage. *See State St. Bank & Tr. v. Salovaara*, 326 F.3d 130, 139 (2d Cir. 2003) ("It is well-settled that courts should avoid . . . interpretations that render provisions superfluous . . . [and] 'give effect, if possible, to every clause and word' . . . ." (citation omitted)); *Tanusantoso v. Barr*, 962 F.3d 694, 700 (2d Cir. 2020) (noting the "rule against surplusage" is "'a cardinal principle' for interpreting text" (quoting *Williams v. Taylor*, 529 U.S. 362, 404 (2000)). The better reading is the plain reading—the condition precedent cannot be waived, so the Plan is not effective until foreign and appellate "proceedings to confirm or consummate" it end. (Ex. A §§ 1.77, 9.1, 9.2(a)).

*Second*, because the conditions precedent are part of a contract that binds "the Debtor, its creditors and its equity holders," the Majority Shareholders and Elafonissos were entitled to rely on, and did reasonably rely on, that unwaivable conditions. *Amsterdam Key Assocs. LLC v. Blakely (In re 477 W. 142nd St. Housing, Dev. Fund Corp.)*, 2020 WL 3067733, at *9 (Bankr. S.D.N.Y. Jun. 8, 2020) (citation omitted). It is elementary that parties to a contract are entitled to rely on its terms, including conditions precedent, and that one party may not unilaterally waive rights in a contract inuring to the benefit of its counterparty—such as the provisions conditioning the Plan's effectiveness on the exhaustion of appeals of the Plan's confirmation and foreign recognition. *See Citadel Equity Fund Ltd. v. Aquila, Inc.*, 168 Fed. App'x 474, 476 (2d Cir. 2006). The Majority Shareholders and Elafonissos, as unreorganized Holdings' equity-holders, are "parties" to the "contract" that is the Plan, and the conditions precedent clearly benefitted them, as the conditions would prevent a loss of their equity if the Confirmation Order was overturned on appeal or found to be contrary to the laws of essential jurisdictions abroad. As a result, the Petitioning Creditors did not have the authority unilaterally to waive the unsatisfied conditions.

Not waived or satisfied, the conditions precedent to the Plan's Effective Date remain in place, and the Plan does not yet restrict Defendants' conduct as Plaintiffs claim.[7]

### C. The Complaint Fails To State Claims For Conversion Or Tortious Interference With Contract (Counts 1, 2, And 4) Against These Defendants

#### 1. Plaintiffs' improper group pleading violates Rule 8

With respect to each of Plaintiffs' tort claims, the Complaint fails to provide the Majority Shareholders and Elafonissos with the requisite notice of their alleged misconduct. Rule 8 "requires, at a minimum, that a complaint give each defendant 'fair notice of what the plaintiff's claim is and the ground upon which it rests.'" *Plusgrade L.P. v. Endava Inc.*, No. 1:21-CV-1530 (MKV), 2023 WL 2402879, at *3 (S.D.N.Y. Mar. 8, 2023) (quoting *Atuahene v. City of Hartford*, 10 F. App'x 3, 34 (2d Cir. 2001)). By "group pleading," or "'lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct,' a complaint fails to satisfy th[at] minimum pleading standard." *Sama v. Mullaney (In re Wonderwork, Inc.)*, 611 B.R. 169, 198-99 (Bankr. S.D.N.Y. 2020) (quoting *Atuahene*, 10 F. Appx. at 34); *see also Bardwil Indus. Inc. v. Kennedy*, No. 19 CIV. 8211 (NRB), 2020 WL 5633159, at *2 (S.D.N.Y. Sept. 21, 2020) (similar (citation omitted)). In other words, the Complaint must clarify "exactly who is alleged to have done what to whom, to provide each [Defendant] with fair notice as to the basis of the claims against him or her [or it], as distinguished from collective allegations against all the bad actors." *Sama*, 611 B.R. at 199 (quotation omitted). Here, however, the Complaint's tort allegations fail to do so.

To the extent the Complaint alleges that the Majority Shareholders or Elafonissos had anything to do with the torts, it does not do so by referring to any individual Defendant—or even

---

[7] This issue—the effectiveness of the Plan and whether the conditions precedent were waived—is on appeal to the Second Circuit.

the commonly used collective terms "Former Majority Shareholders" and "Former Minority Shareholders." Instead, the Complaint refers to all twenty Defendants as a whole or, in rare cases, to the five "Former Shareholders" as a whole, without alleging any facts at all that distinguish the conduct of Elafonissos or any of the Majority Shareholders from the broader group's.

For example, the Complaint never articulates what parts, if any, these particular Defendants played in the alleged conversion. Plaintiffs' summarize their conversion claim as "Defendants['] . . . scheme to convert Plaintiffs' assets for the Former D&Os' benefit" by "refusing to turn over property of the estate to reorganized Holdings" and "changing bank instructions for payments due under certain charterparties." (Compl. ¶¶ 116, 201.) In particular, they allege that: (i) revenue from the Company's charter contracts is flowing "into bank accounts under the control of *one or more Defendants* . . . as a result of the *Former D&Os' and the Former Shareholders'* improper and unauthorized actions"; (ii) "[t]he *Former D&Os and the Former Shareholders* have exercised dominion over the Converted Funds and the Converted Personal Property"; and (iii) "*Defendants* have not complied with demands for the turnover or return of the converted property." (*Id.* ¶¶ 201-03 (emphasis added).) Further, Plaintiffs assert a claim for aiding and abetting conversion by alleging "*each of the Defendants* . . . have had actual knowledge of the Former D&Os' and the Former Shareholders' effort to convert" property, and the "*other Defendants* . . . have substantially assisted in the Conversion." (*Id.* ¶¶ 210-11 (emphasis added).)

*Nowhere* in the 222-paragraph Complaint, however, do Plaintiffs specify that Glafkos, Lassia, Family Unity, or Elafonissos possessed, controlled, or even had access to converted property, funds, or accounts holding them; what action any of them took to convert the items or to "substantially assist in" the conversion; what facts indicate any of them "had actual knowledge" of the conversion; or what demands for the return of converted items any of them refused. Instead,

the conversion allegations include these Defendants only while complaining of conduct Plaintiffs attribute to a ***minimum of fifteen Defendants*** (ten "Former D&Os" and five "Former Shareholders")—without ever indicating why Glafkos, Lassia, Family Unity, or Elafonissos is in the group. (*See, e.g.*, *id.* ¶¶ 116, 119, 127, 133, 137, 172, 178, 182-83, 201-03.) The Complaint leaves each of the Majority Shareholders and Elafonissos completely and impermissibly in the dark about precisely what roles, if any, they played in the alleged conversion.

With respect to the tortious interference with contract claim, the group pleading is even more egregious. The Complaint alleges that "***Defendants*** have had actual knowledge of the existence of" Plaintiffs' contracts with Novum and "of the specific terms relating to the banking instructions," and that "***Defendants*** . . . procured Novum's breaches of the contracts"—the change of banking instructions to accounts "controlled by the Former D&Os"—as "it was ***Defendants'*** objective . . . to have control over the Converted Funds." (*Id.* ¶¶ 218-21 (emphasis added).) In the roughly 68 paragraphs that concern the Novum contracts, the Complaint never mentions Glafkos, Lassia, Family Unity, or Elafonissos. (*Id.* ¶¶ 120-81, 217-22.) Or the "Former Majority Shareholders" or "Former Minority Shareholders." (*Id.*) Or even the "Former Shareholders." (*Id.*) Instead, insofar as the Complaint attributes the tortious interference to these particular Defendants at all, it does so solely by referring to them as members of the ***twenty*** Defendants, without distinguishing among them. (*Id.* ¶¶ 127, 133, 137, 172, 78 217-22.) No facts suggest that Glafkos, Lassia, Family Unity, or Elafonissos in particular "had actual knowledge" of the Novum contracts or their banking terms, that any of them participated in the change of banking accounts, or that any of them intended to or did control related funds. (*See generally id.* ¶¶ 120-81, 217-22.) Lumping the Majority Shareholders and Elafonissos together with the many other Defendants has unfairly and impermissibly deprived them of due notice.

This group pleading appears to be Plaintiffs' deliberate attempt to extend the tort claims from certain parties for which they at least claim a factual basis to assert the claims to separate parties for which there is no such basis. Tellingly, the *body* of the Complaint alleges facts suggesting the Former D&Os acted to divert to Novum payments to "accounts controlled by the Former D&Os," but while asserting the tortious interference count, the Complaint alleges, without any additional facts, that all "Defendants" did it and that they did it "in order to have control over the Converted Funds." (*Compare id.* ¶ 125, *with id.* ¶ 220.) No factual allegations suggest, for example, that *Elafonissos* (which certainly is not a former director or officer of anything) contributed to the change in banking information or controlled the accounts. (*See generally id.* ¶¶ 120-81, 217-22.) But Plaintiffs conflated Defendants to extend the reach of their tort claims.

This tactic is wildly improper. The association or "affiliation" of "'separate legal entities . . . does not alter [the Rule 8] pleading requirement' that [each] defendant is entitled to notice of the claims brought against it." *Plusgrade L.P.*, 2023 WL 2402879, at *4 (quoting *In re Aluminum Warehousing Antitrust Litig.*, No. 12-md-2481, 2015 WL 1344429, at *2 (S.D.N.Y. Mar. 23, 2015)). Where, as is the case here, there are no allegations that "corporate formalities have been ignored as between *each and every* defendant, such that all defendants may joined for the purposes of group pleading," adhering to their "legal separateness" is "appropriate[] and routine[]." *Plusgrade L.P.*, 2023 WL 2402879, at *4 (quotation omitted) (holding that a 200-paragrah complaint "ambiguously stat[ing] that the alleged misconduct was carried out by 'defendants,' or by numerous defendants placed into makeshift groups" failed to provide fair notice). Indeed, the alternative—treating Reed Smith, other law firms, the "Former Shareholders," and ten individuals all as *one*—is implausible. And the facts on the ground further confirm this. The Majority Shareholders have acted (via counsel) in this matter as to certain motions and acts; Elafonissos

(via counsel) has taken no position or a different position in some instances; and Keros (to pick another Defendant) has not appeared, is not represented by undersigned counsel, and has not acted as either the Majority Shareholders or Elafonissos has in this matter.  But Plaintiffs threw everyone into  a single bucket and said, "Good enough, someone in there is liable."  That is not the law and raises fundamental due process issues.

Because the Complaint's improper group pleading denies the Majority Shareholders and Elafonissos the notice Rule 8 entitles them to, dismissal of the Plaintiffs' tort claims against them is necessary.

### 2.    The conversion pleadings are insufficient

Even if the Court disregards the significant Rule 8 violations, it should still dismiss the conversion and aiding and abetting conversion claims against the Majority Shareholders and Elafonissos.  First, instead of alleging facts sufficient to satisfy requisite elements of both claims, the Complaint asserts conclusions, which at least as to these Defendants, utterly lack support.  Second, the property belonged to Defendants.  Because the Plan is not yet in effect, the property never transferred from unreorganized Holdings to reorganized Holdings and Plaintiffs, so there was no conversion or aiding and abetting of conversion.  (*See supra* § II.B.2.)

To plead conversion, Plaintiffs "must allege" facts showing that, *inter alia*, Defendants "exercised dominion or a right of ownership over property belonging to another" and "refused" a demand for the return of the property by the rightful owner.  *Pac. M. Int'l Corp. v. Raman Int'l Gems, Ltd.*, 888 F. Supp. 2d 385, 396 (S.D.N.Y. 2012) (citations omitted).

Rather than allege facts, the Complaint repeats general, boilerplate legal conclusions about Defendants as a group, including that they, or some portion of them, "engaged in a scheme to convert assets," "refused to turn property" over to Plaintiffs, "improperly s[ought] to redirect the Charterparty Payments . . . to accounts controlled by Defendants,"  and "improperly convert[ed]

the funds due to Kinaros and Kimolos" (*e.g.*, compl. ¶¶ 116, 172, 183); however, the Complaint does not allege *facts* that suggest Glafkos, Lassia, Family Unity, or Elafonissos possessed or exercised any rights over the purported converted property after Plaintiffs purportedly became its new owner. The Complaint fails the basic test of telling the Majority Shareholders and Elafonissos the who, what, when, where, and how, of their liability—as opposed to simply asserting all Defendants are liable because Plaintiffs say so. Concluding the "why" of liability without providing the basic pleading of facts to fill in the steps before is not enough. *See Bristol-Myers*, 948 F. Supp. 2d at 344 (quoting *Iqbal,* 556 U.S. at 678) ("naked assertion[s] devoid of further factual enhancement" are insufficient to state a claim).

Furthermore, the facts alleged belie any claim that the Majority Shareholders or Elafonissos possessed or controlled the property at issue. None held close to a majority stake in the Company such that its property ever naturally fell under their control. (Compl. ¶ 7.) And where the Complaint does show any Defendants controlling the property at issue, those Defendants are individuals—not Glafkos, Lassia, Family Unity, or Elafonissos. (*See, e.g.*, *id.* ¶¶ 119 (alleging an individual Defendant "is in possession of the Converted Personal Property"), 125 (alleging an agent of the individual Defendants sent emails directing the Company's creditors to submit payment to a new account under their control), 151 (alleging an individual Defendant tried to exercise rights under a Novum contract).) Accordingly, the conversion claim fails.

The aiding and abetting allegations are similarly deficient. A claim for aiding and abetting conversion requires *inter alia* that the aider-and-abettor have "actual knowledge of the violation" and "substantial[ly] assist[]" the violator. *Kirschner v. Bennett,* 648 F. Supp. 2d 525, 533 (S.D.N.Y. 2009). But Plaintiffs failed to plead *any* factual matter that indicates Glafkos, Lassia, Family Unity, or Elafonissos satisfy either element. As to their "actual knowledge," the Complaint

asserts only the bare legal conclusion that "each of the Defendants . . . have ***had actual knowledge***
of the Former D&Os' and the Former Shareholders' efforts to convert" property, without any
accompanying fact showing or implying that the Majority Shareholders or Elafonissos had it.
(Compl. ¶ 210 (emphasis added).)  As to "substantial assistance," the Complaint does not even do
that.  Rather, in outlining the aiding an abetting count, the Complaint alleges that "Defendants . . .
assisted in the conversion . . . by providing the appearance of ***legality and legitimacy*** to the rogue
and unauthorized actions of the Former D&Os and the Former Shareholders," making it clear that
claim applies to all Defendants in name only, while its substance solely concerns the law firm
Defendants.  (*Id.* ¶ 211 (emphasis added).)  There is no suggestion, or reason to believe, that the
Company's shareholders would somehow lend the Company additional "legality," but a section of
the Complaint titled "The Fake EHI Attorneys Aided and Abetted the Conversion" indicates the
law firms may have, by making "various filings and arguments seeking to overturn the
Confirmation Order."  (*Id.* ¶¶ 189-99.)

The aiding and abetting claim also fails because the Complaint includes the Majority
Shareholders and Elafonissos both as primary tortfeasors and the accomplices, even though "one
cannot aid and abet oneself in the commission of a tort."  *Remcoda, LLC v. Ridge Hill Trading
(Pty) Ltd.*, No. 21 CIV. 979 (ER), 2023 WL 2647854, at *17 (S.D.N.Y. Mar. 27, 2023) (dismissing
aiding and abetting claim premised on defendant's own alleged tortious conduct).

### 3.    The tortious interference with contract pleadings are insufficient

To state a claim for tortious interference with contract, a plaintiff must allege the following
and more:  (i) the existence of a valid contract between the plaintiff and a third party; (ii) the
defendant's knowledge of that contract; (iii) the defendant's intentional procurement of the
third-party's breach of the contract without justification; (iv) an actual breach of the contract.

*Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006).  But the facts alleged do not satisfy these elements.

*First*, only very general, conclusory allegations suggest that any of the Majority Shareholders or Elafonissos knew about the contracts or tried to induce breaches, as elements three and four require.  Specifically, the Complaint alleges that "Defendants have had actual knowledge of the existence of" Plaintiffs' contracts with Novum and "of the specific terms relating to the banking instructions," that "Defendants . . . procured Novum's breaches of the contracts" as "it was Defendants' objective . . . to have control over the Converted Funds," and "Defendants were improperly seeking to redirect the Charterparty Payments due under the Novum Charterparties to accounts controlled by Defendants." (*Id.* ¶¶ 172, 218-21.)  Unaccompanied by factual support, such "naked assertion[s]" do not suffice.  *Bristol-Myers*, 948 F. Supp. 2d at 344 (quoting *Iqbal,* 556 U.S. at 678).  As a result, regardless of whether Plaintiffs rightfully control these contracts, they have failed to state a claim for tortious interference against the Majority Shareholders and Elafonissos.

*Second*, because the Plan is not yet in effect, Reorganized Holdings does not exist, and the charterparty contracts are as they were—between unreorganized Holdings and its counterparties. (*See supra* § II.B.2.)  That is, the claim is premised on contracts that are not, as the Complaint alleges, between Plaintiffs and third parties, as the claim's first element requires.  Likewise, in this context, Defendants' alleged revision of the contracts' banking terms merely represents an agreed-on amendment between contracting parties, rather than the breach as the claim's fourth element requires.

III.     **PLAINTIFFS' CLAIMS AGAINST THE MAJORITY SHAREHOLDERS AND ELAFONISSOS SHOULD BE DISMISSED WITH PREJUDICE BECAUSE AMENDMENT WOULD BE FUTILE**

"Amended pleadings that would clearly not prevail or improve the position of a party will be rejected." *Fei v. WestLB AG*, No. 07CV8785(HB)(FM), 2008 WL 594768, at *2 (S.D.N.Y. Mar. 5, 2008) (citing *Foman v. Davis,* 371 U .S. 178 (1962)).  Here, Plaintiffs' claims fail because they have no substantive basis for the Court's exercise of personal jurisdiction over Elafonissos or their purported causes of action against these Defendants, and as such, "better pleading will not cure" them.  *Gayle v. Home Box Off., Inc.*, No. 17-cv-5867 (JMF), 2018 WL 2059657, at *4 (S.D.N.Y. May 1, 2018).

Plaintiffs try to paper over the lack of factual matter tying Elafonissos to the U.S., and the Majority Shareholders and Elafonissos to the tort claims, through widespread group pleading; however, if Plaintiffs had any reasonable, factual basis for alleging personal jurisdiction or tortious conduct, it would already be in the Complaint.  It is not because they have none.  More hopeless still, however, is Plaintiffs' contract claim for breach—not of a contract—but of a Court order. The claim is not cognizable.  Re-drafting cannot save the claim, just as it cannot conjure additional factual support for the tort allegations.

Therefore, at least with respect to the Majority Shareholders and Elafonissos, the Complaint should be dismissed with prejudice and without leave to amend.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss Plaintiffs' Complaint.

Dated: November 24, 2025         Respectfully submitted,
New York, New York

*/s/ Lawrence M. Rolnick*
Lawrence M. Rolnick
Richard A. Bodnar
Frank T.M. Catalina
Justin Harris
Rolnick Kramer Sadighi LLP
PENN 1, Suite 3401
One Pennsylvania Plaza
New York, New York 10119
Tel.: 212.597.2800
Email: lrolnick@rksllp.com
rbodnar@rksllp.com
fcatalina@rksllp.com
jharris@rksllp.com

*Counsel for Defendants Majority Shareholders and
Elafonissos Shipping Corporation*

29